JEFFREY A. BARTOS*
JOHN J. GRUNERT*
Guerrieri, Bartos & Roma, P.C.
1900 M Street, NW, Suite 700
Washington, DC 20036
Telephone: (202) 624-7400
jbartos@geclaw.com
jgrunert@geclaw.com

SCOTT YOUNG (10695)
CHRISTOPHER W. DROUBAY (12078)
SNOW CHRISTENSEN & MARTINEAU
10 Exchange Place, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 521-9000
rsy@scmlaw.com
cwd@scmlaw.com

JOHN H. MORSE III*
Associate General Counsel
Association of Flight Attendants-CWA, AFL-
CIO
501 Third St NW
Washington, DC 20001
Telephone: (202) 989-9393
jmorse@afacwa.org

*Counsel for Association of Flight Attendants-CWA, Shane Price, Tresa Grange, and Brandon Finley*

* *Pro Hac Vice application to be filed*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

_____
)
ASSOCIATION OF FLIGHT )
ATTENDANTS-CWA, AFL-CIO, )
SHANE PRICE, TRESA GRANGE, and )
BRANDON FINLEY, )
)
   Plaintiffs, )  Case No. 2:23cv723
)  Jury Trial Demanded
  v. )
)
SKYWEST, INC., )
SKYWEST AIRLINES, INC., and )
SKYWEST INFLIGHT ASSOCIATION, )
)
   Defendants. )
_____)

## COMPLAINT

Plaintiffs the Association of Flight Attendants-CWA, Shane Price, Tresa Grange, and Brandon Finley bring this action against Defendants SkyWest, Inc., SkyWest Airlines, Inc. and the SkyWest Inflight Association for violations of the Railway Labor Act, 45 U.S.C. § 151, *et seq.* ("RLA") and the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 401, *et seq.* ("LMRDA"), and allege as follows:

1.     This lawsuit is filed to remedy SkyWest Airlines' extraordinary violations of the Railway Labor Act and interference with its Flight Attendants' federal right to seek collective bargaining representation. The Railway Labor Act protects the rights of airline (and railroad) employees to organize for purposes of collective bargaining. It is unlawful under the RLA for an air carrier like SkyWest to "interfere in any way" with such organizing efforts, "or to influence or coerce employees in an effort to induce them … not to join … any labor organization." 45 U.S.C. § 152, Fourth. It is also a form of interference, and therefore unlawful, for SkyWest "to use the funds of the carrier in maintaining or assisting or contributing to any labor organization, labor representative, or other agency of collective bargaining, or in performing any work therefor…" 45 U.S.C. § 152, Fourth.

2.     Despite these prohibitions, SkyWest unlawfully uses carrier funds to maintain and operate Defendant SkyWest Inflight Association, which it claims is the representative for its Flight Attendant employees. SIA has acknowledged in one of its Handbooks that "SkyWest … funds the SkyWest Inflight Association." SkyWest had a similar arrangement with a pilots' association, leading a federal court to conclude that "SkyWest's unlimited funding of SAPA appears, on its face, to violate the RLA." *SkyWest Pilots ALPA Org. Comm. v. SkyWest Airlines, Inc.*, No. C-07-2688CRB, 2007 WL 1848678, at *17 (N.D. Cal. June 27, 2007)

3.      In addition, SkyWest has violated, and continues to violate, this and related provisions of the RLA by terminating two flight attendants, Shane Price and Tresa Grange, in retaliation for their support of efforts to obtain a union representation election at SkyWest and to address voting irregularities with the SkyWest Inflight Association ("SIA").

4.      In a legally certified bargaining unit, Mr. Price and Ms. Grange would have received a full-throated defense on their behalf. Instead, in interfering with the activities of the so-called union, SkyWest management pressed for information and used that information from the purported union to terminate Mr. Price and Ms. Grange. They did so in an effort to silence flight attendants advocating on behalf of their peers over issues of mutual concern and to avoid a duly-certified union election.

5.      SkyWest's retaliation against Mr. Price and Ms. Grange violates the Railway Labor Act. This unlawful retaliation causes substantial injury to them, and to the thousands of other SkyWest Flight Attendants whose rights under that Act are chilled by such draconian employer action. SIA's independent mistreatment of Mr. Price and Ms. Grange is also unlawful.

6.      Independently, SIA and SkyWest have failed to comply with clear federal mandates to report in detail how SkyWest had funded and supported SIA.

7.      This lawsuit seeks to rectify the harms caused by SkyWest and SIA; to restore Mr. Price and Ms. Grange to their employment; and to vindicate the legal rights of all SkyWest Flight Attendants under federal law to form a union without fear of retaliation.

## PARTIES

8.      Plaintiff AFA, based in Washington, D.C., is an unincorporated labor organization representing nearly 50,000 Flight Attendants at 19 airlines throughout the United States. The AFA is openly supporting a union organizing campaign among SkyWest Flight Attendants.

9.     Plaintiff Shane Price began his career as a SkyWest Flight Attendant in 2014. At the time of his recent termination, Mr. Price was based in Salt Lake City, Utah, and was at all relevant times an active advocate for a union representation election at SkyWest.

10.     Plaintiff Tresa Grange began her career as a SkyWest Flight Attendant in 1999. At the time of her recent termination, Ms. Grange was based in Salt Lake City, Utah, and was at all relevant times an active advocate for a union representation election at SkyWest.

11.     Plaintiff Brandon Finley has worked for SkyWest since 2004 and is currently a SkyWest Flight Attendant, based in Seattle, Washington.   Mr. Finley has been and is an active advocate for a union representation election at SkyWest.

12.     Defendant SkyWest, Inc. is a holding company which owns 100% of Defendant SkyWest Airlines, Inc. Both entities are headquartered in St. George, Utah. SkyWest Airlines engages in commercial aviation throughout the United States, Mexico, and the Caribbean. SkyWest maintains facilities and operations within this judicial district. SkyWest Airlines, Inc. is a carrier by air subject to the Railway Labor Act.

13.     Defendant SkyWest Inflight Association ("SIA") is an organization created and wholly funded by SkyWest, Inc. and/or SkyWest Airlines, Inc. SIA holds itself out as the "designated collective bargaining representative under the Railway Labor Act" for SkyWest Flight Attendants. However, SIA has never been elected by SkyWest flight attendants to represent them, nor has it ever been certified by the National Mediation Board as the exclusive bargaining representative of flight attendants. SIA is also based in this judicial district.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337. Venue is proper pursuant to 28 U.S.C. § 1391 because the Defendants do business in this judicial district,

4

and a substantial portion of the events giving rise to the claims herein occurred in this judicial district.

## STATUTORY FRAMEWORK

**The Railway Labor Act.**

15.     The Railway Labor Act ("RLA") governs labor relations in the rail and air industries. Among its purposes are "to forbid any limitation upon freedom of association among employees or any denial … of the right … to join a labor organization;" and "to provide for the complete independence of carriers and of employees in the matter of self-organization to carry out the purposes of this chapter." 45 U.S.C. § 151a.

16.     Section 2, Third of the RLA, 45 U.S.C. § 152, Third, governs the designation of employee representatives at RLA-covered air carriers and provides that:

> Representatives … shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives. Representatives of employees for the purposes of this chapter need not be persons in the employ of the carrier, and no carrier shall, by interference, influence, or coercion seek in any manner to prevent the designation by its employees as their representatives of those who or which are not employees of the carrier.

17.     Section 2, Fourth of the RLA, 45 U.S.C. § 152, Fourth, governs employees' rights to organize and prohibits carriers from interfering with that right. It provides that:

> Employees shall have the right to organize and bargain collectively through representatives of their own choosing… No carrier … shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, or to use the funds of the carrier in maintaining or assisting or contributing to any labor organization, labor representative, or other agency of collective bargaining, or in performing any work therefor…or to influence or coerce employees in an effort to induce them … not to join … any labor organization.

18.     Sections 2, Third and Fourth are applicable to air carriers and their employees pursuant to 45 U.S.C. § 181.

19.     In addition, when air carriers and employees agree to a collective bargaining agreement, such agreements must include a provision for final and binding arbitration by a neutral arbitrator over issues arising out of contracts or work rules, including terminations. 45 U.S.C. § 184.

**The Labor Management Reporting and Disclosure Act.**

20.     An independent federal labor law, the LMRDA, places significant obligations on entities which, like SIA, purport to represent employees in relation to their employer, as well as and on employers like SkyWest.

21.     Among other things, the LMRDA requires an entity claiming it is the collective bargaining representative of employees to file annual reports with the U.S. Department of Labor when they are voluntarily recognized by an employer. 29 U.S.C. § 431. Employers are likewise required to file such reports. *Id.*, § 433.

22.     Such labor organization reports are required to show, among other things, "receipts of any kind and the sources thereof." 29 U.S.C. § 431(b). The required "Report of employers" is likewise required to show "any payment … to any labor organization", as well as "any expenditure… where an object thereof, directly or indirectly, is to interfere with, restrain, or coerce employees in the exercise of the right to organize and bargain collectively through representatives of their own choosing." 29 U.S.C. § 433(a)(1), (3).

23.     Such reports are publicly available, and an organization covered by the statute is also required to "make available to all of its members" the information required to be contained in

such reports and to allow represented employees to "examine any books, records and accounts necessary to verify such report." 29 U.S.C. § 431(c).

24.     One of the purposes of these requirements is to "protect employees' rights to organize, choose their own representatives, bargain collectively, and otherwise engage in concerted activities for their mutual aid and protection." 29 U.S.C. § 401. As Congress declared, "it is essential that labor organizations, employers, and their officials adhere to the highest standards of reporting and ethical conduct in administering the affairs of their organizations." *Id.*

## ALLEGATIONS

### SIA - The "Company Union" at SkyWest.

25.     SkyWest employs approximately 4,100 Flight Attendants who work from bases across the United States. Unlike employees at most other air carriers in the United States, SkyWest Flight Attendants currently do not have a federally certified collective bargaining representative. Instead, in an unorthodox and legally spurious arrangement, SkyWest created, funds, and controls the operations of the SkyWest Inflight Association ("SIA"). SkyWest holds SIA out as the "designated" collective bargaining representative of its Flight Attendants, but there has never been an election for SIA to represent SkyWest Flight Attendants, and there has never been a certification of SIA as the collective bargaining representative.

26.     Moreover, SIA does not comply with the federal laws which govern the operations of true labor organizations. Federal law requires that even a voluntary recognized labor organization must file annual reports which include detailed information regarding all sources of income, all payments to officers and representatives, and all other expenditures of the organization. Employers like SkyWest are also required to file reports reflecting payments to labor organizations. But publicly available Labor Department records, available online via the Office of

Labor Management Standards ("OLMS"), reflect that no such reports have ever been filed by SIA or SkyWest in relation to SIA.

27.     The core purpose of a labor organization is to represent the interests of union members and represented employees in their dealings with management on issues of wages, rules, and working conditions. SIA, however, does not provide such representation, but instead operates as an extension of SkyWest management thus subverting the representational process and harming SkyWest flight attendants.

28.     The top three SIA officers are paid monthly salaries by SkyWest in addition to *per diem* expense coverage even though they do not work as flight attendants while in office.   On information and belief, SkyWest funds all of SIA's expenditures, including all salaries and institutional expenses such as website and email domain fees, and even SIA pins and merchandise. SkyWest funds the "elections" held by SIA. SIA's sole source of income is SkyWest, the employer.

29.     In addition, SIA meetings are regularly attended by SkyWest management, and SkyWest's legal department has advised SIA regarding the drafting of its Bylaws.

30.     While SIA representatives have from time to time engaged in negotiations with SkyWest regarding the terms and conditions of flight attendant employment, former SIA insiders report that these meetings consist generally of management instructing SIA exactly what they are allowed to "request" and nothing more.

31.     Even though SIA meets none of the legal prerequisites of a "labor organization" under federal law, SkyWest publicly contends to the flight attendants that SIA is the exclusive bargaining representative for SkyWest Flight Attendants and that the SkyWest Flight Attendant Policy Manual is a "collective bargaining agreement" under the Railway Labor Act. Recently, SIA and SkyWest have advanced that argument in federal court in an effort to prevent SkyWest Flight

Attendants from receiving the benefit of certain California labor laws (an effort the U.S. District Court in the Northern District of Illinois, has for the time being denied). SkyWest did convince at least one state court that SIA was in fact the federal collective bargaining representative, and now contends that this matter is settled as a matter of law.

### Flight Attendant Opposition to the Company Union.

32.     Frustrated with the sham representation of SIA, SkyWest Flight Attendants launched a campaign to obtain lawful, transparent, and effective union representation under the Railway Labor Act and began collecting election authorization cards to submit to the National Mediation Board, for the purpose of obtaining an election with AFA on the ballot.  Mr. Finley was one of the earliest and most active leaders in this campaign.

33.     Plaintiffs Price and Grange have also played prominent roles in that organizing effort, and their support of AFA and opposition to SkyWest's operation of SIA was well known to Defendants.

34.     Since November 2022, Mr. Price has been a visible part of the campaign for a union representation election at SkyWest. He served as a "base advocate," hosting visibility events at airports around the country to increase support for a union to represent SkyWest flight attendants. AFA posts pictures of these events on its social media channels. SkyWest management has observed Mr. Price engaged in those activities.

35.     In Spring, 2023, Mr. Price also drafted an AFA publication in response to messaging distributed by SkyWest management entitled "Don't be Deceived" that directly contradicted several claims put forth by management and was widely distributed on social media, websites, and in paper form.

36.     On or about April 2023, Mr. Price flew with a "lead" SkyWest flight attendant who actively discouraged Mr. Price from supporting AFA. "Lead" flight attendants at SkyWest are selected and trained by management for the purpose of monitoring SkyWest flight attendant's performance.

37.     Ms. Grange was a nearly 25-year Flight Attendant with SkyWest until SkyWest terminated her on or about September 13, 2023.

38.     Ms. Grange was repeatedly recognized by SkyWest management as a model flight attendant and previously selected her to serve as a service instructor and new hire instructor to train other flight attendants. She also served in various roles with SIA, but she became dissatisfied with her ability to move issues flight attendants cared about and felt the group was controlled by management. She did not continue as a SIA representative.

39.     Ms. Grange's negative experience with SIA led her to support an election by which AFA could become the flight attendants' representative. She wore an AFA union pin while working, passed out AFA representation cards among coworkers, and engaged in public advocacy at airport locations—all protected activity under the law.

**Whistleblowers Expose the SIA "Election" of 2023 as Deeply Flawed.**

40.     SIA's by-laws provide that it will conduct elections every three years for certain positions, and every four years for others. Elections are to be conducted by a third party "election vendor." It has long been rumored that SIA elections and ratification votes were not consistent with the will of the flight attendants.

41.     In the most recent election for SIA, conducted in August 2023, a third-party vendor named "Vote Now" was contracted to run the election. SkyWest management paid for "Vote Now" to run SIA's election..

42.     The election procedure provided for flight attendants to vote over a one week period. In order to vote in that election for their purported "representative," SkyWest flight attendants were instructed to log in to their employer SkyWest's website to receive voting credentials and be redirected to the "Vote Now" website to cast their ballot.

43.     Some months prior to the election, Mr. Price discovered that SIA's publicly accessible website (www.oursia.org) contained publicly accessible folders, which included documents listing all SkyWest flight attendants and the numerical codes for each flight attendant to be used to vote in SIA elections.

44.     During the 2023 election, multiple flight attendants claimed on social media that they had attempted to vote, but that the Vote Now voting system indicated that they had already voted and did not allow them to vote.

45.     Mr. Price became concerned that because the voting credentials were available to SIA leadership, SkyWest management, and even anyone who visited the SIA website, the SIA election was neither secure nor confidential.

46.     The election was scheduled to close at 9:00 a.m. on August 14, 2023. However, SIA announced that the election would be extended until noon due to "glitches." When the election was supposed to close, the results noticeably remained unpublished.

47.     After SIA announced the extension of voting, and to address issues of mutual concern among SkyWest flight attendants who publicly voiced their concerns on social media about the legitimacy of the voting system, Mr. Price then took it upon himself to determine whether or not the SIA voting was secure. He logged onto the Vote Now site using the link which had been provided directly to him, and then explored whether the voter identification numbers available to SkyWest management, to SIA officers, and to the public could be used to display a ballot and

11

potentially vote. He did not cast any ballots, but instead merely logged in to determine if this could be done. When he learned that, in fact, the voting site was unsecure and subject to the very manipulation his co-workers had claimed, he made a video demonstrating the vote's security inadequacies.

48.     The following day, after voting had closed, Ms. Grange posted Mr. Price's video on social media.

49.     SIA then cancelled the election and shut down its website.

**SIA Collaborates with SkyWest to Terminate the Whistleblowers.**

50.     Nearly a month after the election was cancelled, on September 13, 2023, two SkyWest managers met Mr. Price as he deboarded a plane at the Salt Lake City airport and immediately brought him to a basement room in the airport to interrogate him over what they said was an investigation over "the latest SIA election."

51.     During the meeting, upon questioning by the SkyWest managers, Mr. Price forthrightly admitted that he made and posted the video on social media.

52.     When Mr. Price asked why SkyWest management would investigate an issue with the SIA election, the managers indicated that his actions represented a "security leak" and said that "even if" the SkyWest flight attendants had a union they would still investigate.

53.     SIA Secretary DeeAnn Woods was also present at this meeting to supposedly represent Mr. Price. In a transparently pre-arranged process, the two managers left the room for approximately 45 minutes, leaving Ms. Woods alone with Mr. Price. Rather than try to protect Mr. Price's job, Ms. Woods focused on his AFA organizing activity, pointedly asking him how many flight attendants at SkyWest had signed authorization cards with AFA and arguing with him about the merits of having a labor union representative. Ms. Woods contended that if AFA were

successful then SkyWest would reduce flight attendant pay and impose inferior working conditions.

54.     When the managers returned, they terminated Mr. Price for unspecified "conduct."

55.     SkyWest management also met with and terminated Ms. Grange for her criticism of the SIA election and the posting of what they described as "confidential SkyWest information."

56.     SIA Secretary DeeAnn Woods was also present for Ms. Grange's meeting, but rather than advocate for her, instead undermined her forthright explanations of engaging in concerted activity by refuting arguments that Ms. Grange made in her own defense.

57.     SkyWest management disclosed during this meeting that SIA representatives had gathered and provided evidence to SkyWest for its use in terminating Ms. Grange, which SkyWest management relied upon in terminating her.

58.     After they were terminated, Mr. Price and Ms. Grange pursued all available opportunities for appeal under the SkyWest Policy Manual. This includes a *pro forma* review by an "appeals review committee" which can make a finding in favor of the company or the flight attendant, but whose findings are subject to reversal by management. Management can reverse that finding as long as it provides a written reason for its decision. There is no provision for review by a neutral arbitrator.

59.     Following their terminations, Mr. Price and Ms. Grange followed all internal appeal steps available to them under the Policy Manual. Since the only "review" available is subject to unilateral decision by SkyWest management, and given SIA's hostility to Mr. Price and Ms. Grange, such review is undoubtably futile.

**COUNT 1**

**VIOLATION OF RAILWAY LABOR ACT-
SKYWEST FUNDING AND CONTROL OF SIA**

**(ALL PLAINTIFFS v. SKYWEST CORPORATE DEFENDANTS)**

60.     Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-59 of this Complaint.

61.     Section 2, Third of the RLA, 45 U.S.C. § 152, Third, governs the designation of employee representatives at RLA-covered air carriers and provides that such "Representatives … shall be designated by the respective parties without interference, influence, or coercion by either party …. Representatives of employees … need not be persons in the employ of the carrier, and no carrier shall, by interference, influence, or coercion seek in any manner to prevent the designation by its employees as their representatives of those who or which are not employees of the carrier."

62.     Section 2, Fourth of the RLA, 45 U.S.C. § 152, Fourth, governs employees' rights to organize and prohibits carriers from interfering with that right. It provides that: "it shall be unlawful for any carrier … to use the funds of the carrier in maintaining or assisting or contributing to any labor organization, labor representative, or other agency of collective bargaining, or in performing any work therefor…or to influence or coerce employees in an effort to induce them … not to join … any labor organization."

63.     Sections 2, Third and Fourth are applicable to air carriers and their employees pursuant to 45 U.S.C. § 181.

64.     SkyWest, Inc. and/or SkyWest Airlines' provision of all the funding for SIA and support for the operations of SIA violates RLA Section 2, Third and Fourth and causes injury to the Plaintiffs.

## COUNT 2

### VIOLATION OF RAILWAY LABOR ACT-
### TERMINATIONS OF SHANE PRICE AND TRESA GRANGE

### (ALL PLAINTIFFS v. SKYWEST CORPORATE DEFENDANTS)

65.     Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-64 of this Complaint.

66.     SkyWest's termination of Mr. Price and Ms. Grange was motivated by anti-union animus and was designed to undermine and interfere with the AFA's, Mr. Price's, and Ms. Grange's union organizing efforts, including the right of Mr. Price and Ms. Grange and other SkyWest flight attendants, including Mr. Finley, to choose a representative and to join a labor organization of her choice, in violation of RLA Section 2, Third and Fourth.

## COUNT 3

### VIOLATION OF RAILWAY LABOR ACT-
### FAILURE TO PROVIDE FOR BINDING ARBITRATION

### (MR. PRICE, MS. GRANGE and MR. FINLEY v. SKYWEST AIRLINES AND SIA)

67.     Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-66 of this Complaint.

68.     The Railway Labor Act requires that "it shall be the duty of every carrier and of its employees, acting through their representatives .. to establish a board of adjustment of jurisdiction not exceeding the jurisdiction which may be lawfully exercised by … boards of adjustment under the authority of section 153 of this title." 45 U.S.C. § 184. Such a board has jurisdiction, at

minimum, to consider disputes "growing out of grievances or out of the interpretation or application of agreements concerning … rules." 45 U.S.C. § 153 *First* (i) and 153, *Second.*

69.     Such arbitration boards play a vital role in protecting the rights of employees to challenge employer actions such as terminations.

70.     SkyWest and SIA contend that the SkyWest Policy Manual is a collective bargaining agreement under the Railway Labor Act. Without conceding that this document is, as a matter of law, a valid collective bargaining agreement, Plaintiffs assert that if the Court were to accept SkyWest and SIA's legal characterization of the document, then those parties have violated Section 204 of the RLA, 45 U.S.C. § 184, by failing to establish a mechanism by which a neutral arbitrator could review their terminations.

71.     By failing to provide a mechanism for arbitration of their termination, SkyWest and SIA have injured Mr. Price, Ms. Grange, and Mr. Finley.

**COUNT 4**

**BREACH OF DUTY OF FAIR REPRESENTATION**

**(MR. PRICE AND MS. GRANGE v. SIA)**

72.     Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-71 of this Complaint.

73.     By holding itself out and acting as the exclusive collective bargaining representative for SkyWest flight attendants and as party to an enforceable collective bargaining agreement under the Railway Labor Act, the SkyWest Inflight Association has a duty of fair representation toward all SkyWest flight attendants under federal law.

74.     SIA's duty includes a duty to refrain from conduct which is arbitrary, discriminatory or in bad faith with respect to any representational functions it undertakes.

16

SIA breached that duty toward Mr. Price and Ms. Grange by reporting them to SkyWest management for investigation and discipline, and then collaborating with SkyWest management in their terminations.

75. SIA took those actions to retaliate against Mr. Price and Ms. Grange for their support of the AFA, their criticisms of SIA, and their exposure of SIA's flawed election system. Such motives are unlawfully discriminatory and in bad faith, and therefore in violation of the duty of fair representation.

## COUNT 5

## VIOLATIONS OF LABOR MANAGEMENT REPORTING AND DISCLOSURE ACT

## (ALL PLAINTIFFS v. ALL DEFENDANTS)

76. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-75 of this Complaint.

77. The Labor Management Reporting and Disclosure Act requires entities which purport to represent employees in collective bargaining pursuant to a voluntary recognition by the employer, as well as the employers which make such a voluntary recognition, to file annual reports with the U.S. Department of Labor. 29 U.S.C. §§ 431 (report of labor organizations) and 433 (report of employers).

78. Such labor organization reports are required to show, among other things, "receipts of any kind and the sources thereof." 29 U.S.C. § 431(b). The required "Report of employers" is likewise required to show "any payment … to any labor organization", as well as "any expenditure… where an object thereof, directly or indirectly, is to interfere with, restrain, or coerce employees in the exercise of the right to organize and bargain collectively through representatives of their own choosing." 29 U.S.C. § 433(a)(1), (3).

79.     Such reports are publicly available, and an organization covered by the statute is also required to "make available to all of its members" the information required to be contained in such reports and to "examine any books, records and accounts necessary to verify such report." 29 U.S.C. § 431(c).

80.     One of the purposes of these requirements is to "protect employees' rights to organize, choose their own representatives, bargain collectively, and otherwise engage in concerted activities for their mutual aid and protection." 29 U.S.C. § 401. As Congress declared, "it is essential that labor organizations, employers, and their officials adhere to the highest standards of reporting and ethical conduct in administering the affairs of their organizations." *Id.*

81.     Based on the Labor Department's public records, neither SIA nor SkyWest have ever filed any of the reports required by the statute to be filed with respect to SIA.

82.     By failing to file the required documents with the Department of Labor, SkyWest and SIA have caused injury to Plaintiffs and have violated, and continue to violate the LMRDA.

**PRAYER FOR RELIEF**

WHEREFORE, AFA, Shane Price, Tresa Grange, and Brandon Finley respectfully request that this Court provide the following relief:

(1) An Order directing SkyWest Airlines to immediately cease and desist from its violations of Section 2, Third and Fourth of the RLA, and enjoining SkyWest from further violations of the RLA;

(2) An Order restoring Plaintiffs Price and Grange to their prior positions at SkyWest Airlines;

(3) An Order declaring that SIA has breached its duty of fair representation toward Plaintiffs Price and Grange;

(4) An Order directing all Defendants, jointly and severally, to provide full make-whole relief to Mr. Price and Ms. Grange, including lost wages, fringe benefits and to compensate for all other pecuniary losses suffered by here, with applicable prejudgment interest;

(5) A Declaration that SkyWest's termination of Plaintiffs Price and Grange due to their representational activities and opposition to SIA, violates Section 2, Third and Fourth of the RLA;

(6) A Declaration that SkyWest has unlawfully interfered with the flight attendants' AFA organizing campaign by its financial support for SIA;

(7)  A Declaration that SkyWest and SIA have been, and are, in violation of the reporting requirements of the LMRDA; and

(8) Such other and further relief including damages, attorneys' fees and costs that the Court may deem just and proper.

DATED this 11th day of October, 2023.

SNOW CHRISTENSEN & MARTINEAU

/s/ Scott Young
Scott Young
Christopher W. Droubay

/s/ Jeffrey A. Bartos
Jeffrey A. Bartos*
John J. Grunert*
Guerrieri, Bartos & Roma, P.C.
1900 M Street, NW, Suite 700
Washington, DC 20036

John H. Morse III*
Associate General Counsel
Association of Flight Attendants-CWA, AFL-CIO
501 Third St NW
Washington, DC 20001
*Counsel for Association of Flight Attendants-CWA,
Shane Price, Tresa Grange, and Brandon Finley*

* *Pro Hac Vice application to be filed*