Erik A. Christiansen, USB #7372
Christina M. Jepson, USB #7301
Sarah Jenkins Dewey, USB #15640
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
EChristiansen@parsonsbehle.com
CJepson@parsonsbehle.com
SDewey@parsonsbehle.com
ecf@parsonsbehle.com

Gregg M. Formella (pro hac vice)
**GREGG M. FORMELLA JD**
300 State St.
P.O. Box 92141
Southlake, TX 76092
gregg.formella@gmail.com

*Attorneys for Defendant SkyWest InFlight
Association*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ASSOCIATION OF FLIGHT ATTENDANTS, AFL-CIO; SHANE PRICE; TRESA GRANGE; and BRANDON FINLEY,<br><br>Plaintiffs,<br><br>vs.<br><br>SKYWEST INC.; SKYWEST AIRLINES INC.; SKYWEST INFLIGHT ASSOCIATION,<br><br>Defendants. | **SKYWEST INFLIGHT ASSOCIATION'S MOTION TO AMEND COUNTERCLAIMS AND JOIN ADDITIONAL PARTIES**<br><br>Case No. 2:23-cv-723-DBB-DBP<br><br>The Honorable David Barlow<br><br>Chief Magistrate Judge Dustin B. Pead |

## <u>TABLE OF CONTENTS</u>

RELIEF SOUGHT AND GROUNDS THEREFOR ...................................................................... 1

BACKGROUND ........................................................................................................................ 2

ARGUMENT ............................................................................................................................. 7

I.      GOOD CAUSE EXISTS TO MODIFY THE SCHEDULING ORDER. .......................... 8

II.     SIA SATISFIES RULE 15(A)'S LIBERAL STANDARD FOR AMENDMENT ......... 11

        A.      SIA's Motion is timely......................................................................................... 11

        B.      Amendment poses no risk of undue prejudice ...................................................... 11

        C.      SIA's request to amend is made in good faith and not for any dilatory
                motive ................................................................................................................... 13

        D.      SIA's proposed new counterclaims are not futile. ............................................... 14

III.    THE COURT SHOULD JOIN GAILEN DAVID AND JACQUE CROSSLEY ............ 14

        A.      Joinder is required under Rule 19(a)..................................................................... 15

        B.      David and Crossley's joinder is also proper under Rule 20................................... 16

CONCLUSION........................................................................................................................ 18

i

## RELIEF SOUGHT AND GROUNDS THEREFOR

SkyWest Inflight Association ("SIA") is the lawfully authorized and recognized labor representative for the roughly 4,600 Flight Attendants employed by SkyWest Airlines. The Association of Flight Attendants ("AFA") would like to displace and replace SIA. When AFA and a few of its supporters filed this action, it appeared AFA itself was disposed to use exclusively legal means to try to displace SIA, even if some of AFA's supporters were willing to go further. Discovery has exposed a far different and highly troubling reality. Documents produced by Plaintiffs in March and April 2025—months after they were first due and which were baselessly stamped as "CONFIDENTIAL"—revealed for the first time that AFA and its "Mobilization Coordinator" Gailen David were directly involved with the illegal acts of certain AFA supporters (two of whom were charged criminally in January 2025) and that those illegal acts went further than SIA was previously aware. These documents also revealed that another SkyWest Flight Attendant and AFA supporter, Jacque Crossley, played an instrumental role in these illegal actions. These documents also revealed that Gailen David, a campaign organizer with AFA, played an instrumental role in obtaining stolen SIA information and distribution the information at AFA. With this information now in hand, SIA moves the Court under Federal Rules of Civil Procedure 13(h), 15(a), 16(b)(4), 19(a), and 20(a) to modify the Amended Scheduling Order to allow SIA to amend its Counterclaims to assert new counterclaims against Plaintiffs and add Gailen David and Jacque Crossley as Counterclaim Defendants.

4922-0234-0416.v14

## BACKGROUND

### *The first rumblings and SIA's initial investigation*

In mid-August 2023, SIA held a regularly scheduled election in accordance with its bylaws. Proposed Am. Countercl. ("PAC") ¶¶ 16–17.[1] On August 14, 2023, Vote-Now, SIA's third-party vote administrator, reported issues with the web-based balloting system. *Id.* ¶ 20. One day later, Grange—a SkyWest Flight Attendant and AFA supporter—posted a video showing how to access SIA members' confidential voting passwords to vote in the election. *Id.* ¶ 63. Following an investigation, SIA learned that Price—another SkyWest Flight Attendant who supports AFA—and Erika Robertson, another now-former Flight Attendant, improperly and fraudulently utilized other Flight Attendants' voter credentials to access and/or cast ballots on Vote-Now. *Id.* ¶ 69. Price admitted to improperly accessing and obtaining this confidential member information (the "Confidential Member Information") by manipulating the URLs for SIA's website to "hack" into non-public areas. *Id.* ¶¶ 19, 70. Price also admitted to creating the video Grange had publicly posted. *Id.* ¶¶ 37–38. These actions effectively invalidated SIA's August 2023 election, requiring a new vote to be scheduled. *Id.* ¶ 81. This is bad enough. But what SIA has learned about AFA's involvement in this misconduct since this lawsuit was initiated is even more troubling.

---

[1] SIA's Proposed Amended Counterclaims and a redlined version are attached as Exhibits A and B, respectively. *See* DUCivR 15-1(a). SIA's Proposed Amended Counterclaims maintain the core of SIA's original counterclaims while addressing the substantial number of new facts that have come to light through discovery and have led to SIA's motion for leave to amend and add new parties as Counterclaim Defendants. SIA's Proposed Amended Counterclaims also updates, for example, the number of Flight Attendants who are currently members in SIA, as well as other non-substantive edits for readability and clarity.

***Plaintiffs file this lawsuit, bringing SIA's investigation within federal discovery rules***

In October 2023, roughly two months after the disrupted August 2023 election, AFA, Price, Grange, and one other AFA-supporting SkyWest Flight Attendant, Brandon Finley, filed this action against SIA. ECF No. 1. Given the filing of this lawsuit, SIA's investigation necessarily transitioned to discovery under the Federal Rules of Civil Procedure. Within these confines, SIA could not serve discovery until the parties conducted the Rule 26(f) conference, *see* Fed. R. Civ. P. 26(d), which was held on April 18, 2024. ECF No. 59-1. On June 4, 2024, the Court entered a Scheduling Order setting July 1, 2024, as the deadline to move to amend pleadings and add parties. ECF No. 64 at ¶ 3. After Plaintiffs filed their First Supplemental Complaint on July 10, 2024, ECF No. 68, the parties stipulated to amend the Scheduling Order. *See* ECF No. 88 (Dec. 23, 2024 Amended Scheduling Order). The amended (and currently operative) Scheduling Order kept the deadlines to amend and add parties in place, as those deadlines had already passed, but extended the close of fact and expert discovery until August 7 and December 8, 2025, respectively, and set a conference on February 10, 2026, to schedule a trial date if the parties do not intend to file dispositive motions. *Id.* at ¶¶ 2(j), 3(a)–(b), 5. After the First Supplemental Complaint was filed and the Amended Scheduling Order was entered, the State of Utah brough criminal charges against Price and Grange for unlawful possession of IDs and unlawful computer access/action/attack on or about January 13, 2025. *See* Ex. C.

***Plaintiffs' discovery responses reveal deeper misconduct and AFA's involvement***

SIA served its first and second sets of discovery requests on Plaintiffs on December 23, 2024, and February 18, 2025. *See* Ex. D. Plaintiffs' first responses were thus due by January 22, 2025. *See* Fed. R. Civ. P. 34. Plaintiffs asked for repeated extensions and did not produce a

partial set of documents until March 14, 2025.[2] *See* Ex. E. Plaintiffs' initial production included over 10,000 pages. In response to SIA's second set of discovery requests, Plaintiffs produced an additional 500-plus pages on March 20, 2025, and more than 300 pages on April 28, 2025. In the middle of the first 10,000 pages were roughly 100 pages containing emails that suggested that AFA might not be an innocent bystander but an active participant in the wrongdoing against SIA. Emails in this production showed that while Price did not inform SIA of his access to its Confidential Member Information, he did inform AFA Campaign Representative Gailen David and another AFA-supporting flight attendant, Jacque Crossley:

---

**SIA info**
5 messages

Shane Price <sdp4444@gmail.com>                              Thu, Apr 13, 2023 at 2:13 PM
To: Gailen David <gdavid@afacwa.org>, Jacque Crossley <jacque.crossley@live.com>

Here are the links to the SIA documents.

This is the link for the root file:
https://oursia.org/wp-content/uploads/

From there you can click on the year, then month. In each month's folder they have all the documents and images they upload to the website for that month. For example, here the link for this month:
https://oursia.org/wp-content/uploads/2023/04

Here is the link for last month:
https://oursia.org/wp-content/uploads/2023/03/

In every folder there is always one if not more "SIA_Members" list published in a .csv file. In the folder you can see what date it was uploaded. So, this month there are two so far. One was uploaded on the 2nd and one on the 11th. Those files don't have links but, if you click on them, they will download and you can view them on your computer.

Also every month they publish an updated "2023-Flight-Attendant-Gone-List" as a PDF. I believe that is a list of flight attendants that have left the company. Here is a link to the latest:
https://oursia.org/wp-content/uploads/2023/04/2023-Flight-Attendant-Gone-List.pdf

---

PAC ¶ 25. David later responded to Price with a request: "Can we quietly download this information every month?" PAC ¶ 27. This raised concerns for the first time that AFA might

---

[2] Plaintiffs produced documents in response to SkyWest on February 28, 2025, and there was overlap between the documents produced in response to Defendants' discovery requests.

have used SIA's Confidential Member Information. This also revealed for the first time that Price's hacking and downloading of information was not an isolated incident but had in fact begun as early as April 2023 and been repeated on a regular basis thereafter, with AFA's involvement.

The March 14, 2025, production also contained both text messages and WhatsApp messages between Price, Grange, Crossley, David, and two other AFA-supporting SkyWest Flight Attendants discussing how best to "blow up" the SIA election. PAC ¶¶ 39–42. David was a passive participant in the WhatsApp thread. *See id.* These documents showed that Crossley was key in coordinating how to (mis)use SIA's Confidential Member Information. *See, e.g.*, PAC ¶¶ 26, 34.

SIA's concerns about AFA's potential misuse of SIA's Confidential Member Information were substantiated on April 28, 2025, when Plaintiffs produced an email from David forwarding the links and instructions to access SIA's Confidential Member Information to other AFA agents to see how it could be used to AFA's advantage:

From: **Gailen David** <gdavid@afacwa.org>
Date: Fri, Apr 14, 2023 at 10:11 AM
Subject: Fwd: SIA info
To: Theresa O'Donnal <todonnal@cwa-union.org>
Cc: Steve Ekerberg <sekerberg@afacwa.org>

Hi Theresa!

Congrats on Spirit!

Our SkyWest activists are working on clarifying their comparison needs and I will keep you posted.

In the meantime, our amazingly talented SkyWest Flight Attendant, Shane Price, forwarded this to me, who recently got us an up-to-date SkyWest seniority list.

Please see if any of this info he has located may be useful for compiling data on SkyWest.

Thanks,
Gailen

PAC ¶ 29.

***SIA takes action to prosecute its newly discovered claims***

Once SIA began to identify these documents for what they were, SIA could not immediately proceed with this Motion because Plaintiffs stamped these documents as "CONFIDENTIAL." Under the Standard Protective Order ("SPO") governing this case, documents are CONFIDENTIAL when they contain "trade secrets or nonpublic proprietary confidential technical, scientific, financial, business, health, or medical information[.]" *See* SPO for cases filed after Dec. 1, 2023 at ¶ (A)(1); ECF No. 71. These documents—emails and WhatsApp messages between David, Price, Grange, Finley, and Crossley about how to steal and misuse SIA's Confidential Member Information—clearly do not fall within that definition. However, because Plaintiffs identified them as "CONFIDENTIAL," the SPO prevented SIA

from using the information in those documents—the information SIA needs to plead its Amended Counterclaims—in a publicly filed pleading while that designation remains. *See* SPO ¶ (B)(1).

Accordingly, on April 7, 2025, less than a month after receiving Plaintiffs' first document production, SIA challenged this improper designation. *See* Apr. 7, 2025 ltr. from S. Dewey to S. Young, et al., attached as Ex. F. Plaintiffs did not attempt to defend the propriety of their designation of these documents, and on April 11, 2025, Plaintiffs agreed to remove that designation. *See* Apr. 11, 2025 email from J. Grunert to G. Formella, et al., attached as Ex. G. This Motion followed only five weeks after Plaintiffs de-designated the documents they produced on March 14, 2025, and only three weeks after Plaintiffs produced David's email reflecting AFA's misuse of SIA's confidential information.

SIA now seeks leave to add counterclaims for conversion, trespass to chattels, civil conspiracy, and tortious interference with contract; to add AFA as a Defendant to SIA's counterclaims for violation of the Computer Fraud and Abuse Act ("CFAA") and tortious interference; and to join Gailen David and Jacque Crossley as new parties and Counterclaim Defendants to SIA's counterclaims for violation of the CFAA, civil conspiracy, and tortious interference.

## ARGUMENT

When a party seeks to amend a pleading after that deadline has passed, they must satisfy the standards for modifying a scheduling order under Rule 16(b)(4) as well as the standards for

amendment under Rule 15(a).[3] *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240, 1241 (10th Cir. 2014) (citations omitted). And because SIA also seeks to add two new parties as Counterclaim Defendants, Rule 13(h) requires SIA to satisfy the requirements for joinder under either Rule 19 or 20. SIA meets these standards.

## I.    **GOOD CAUSE EXISTS TO MODIFY THE SCHEDULING ORDER.**

A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "[T]his standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" *Gorsuch*, 771 F.3d at 1240 (citation omitted). The Court has "considerable discretion" in deciding what satisfies this standard. *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988 (10th Cir. 2019) (quotation marks and citation omitted); *Bylin v. Billings*, 568 F.3d 1224, 1232 (10th Cir. 2009) (citations omitted)). "'[G]ood cause' is likely to be found when the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party." *Tesone*, 942 F.3d at 988 (cleaned up) (quotation marks and citation omitted). Thus, while Rule 16's standard will normally not be met if the party "knew of the underlying conduct but simply failed to raise" their claims, the Tenth Circuit has recognized that Rule 16's standard is satisfied when a party "learns new information through discovery[.]" *Gorsuch*, 771 F.3d at 1240 (citations omitted). And while the potential for prejudice to the other party may be a relevant consideration, it is not by itself determinative. *See*

---

[3] Although relief is sought after the deadline's expiration, Rule 6(b)(1)(B) does not apply. *See Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1249 n.2 (10th Cir. 2015) (citations omitted). In any case, this would not affect the outcome of this Motion, since the Tenth Circuit has recognized that that standard and the applicable one under Rule 16(b)(4) differ only "marginally." *Id.*

*Tesone*, 942 F.3d at 988 (citations omitted).[4] Instead, "the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.* at 988 (quotation marks and citation omitted).

Good cause exists here because SIA has been diligent and only recently learned of the facts supporting its proposed amendments through discovery in this case. As detailed above, SIA began investigating the circumstances surrounding its August 2023 election immediately, and through that investigation learned about Price's wrongful access of SIA's Confidential Member Information. However, SIA's investigation was restricted once Plaintiffs filed this lawsuit in October 2023. Once the dust settled on Plaintiffs' amended pleading and the usual pleading-stage motion practice, the parties jointly agreed in December 2024 to extend the schedule, when the deadlines to amend pleadings and add parties had already passed and so were not included in the Amended Scheduling Order. *See* ECF Nos. 87, 88. SIA proceeded expeditiously with discovery, serving requests in December 2024. But, of course, when SIA received the documents serving as the basis for SIA's new Proposed Amended Counterclaims and the addition of Gailen David and Jacque Crossley in March 2025, the deadline to amend and add parties had long passed. *See* ECF No. 88.

---

[4] Although *Tesone* mentions possible prejudice as a "relevant consideration" under Rule 16(b)(4), *Tesone*, 942 F.3d at 988, 990 (citations omitted), Tenth Circuit cases addressing this scenario—including *Tesone*—typically focus exclusively on the movant's explanation for delay, *see id.* at 990–91; *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1019–22 (10th Cir. 2018); *Birch v*, 812 F.3d at 1248–49; *Gorsuch*, 771 F.3d at 1241–42. *Accord C.R. Bard, Inc. v. Med. Components, Inc.*, No. 212CV00032RJSDAO, 2021 WL 1842539, at *4 (D. Utah May 7, 2021) ("'Rule 16(b) does not focus on . . . the prejudice to the opposing party.'" (citation omitted)). The makes sense, since prejudice is evaluated under the Rule 15(a) analysis.

While SIA received the documents providing the basis for SIA's new Proposed Counterclaims and the addition of Gailen David and Jacque Crossley as parties in March and April 2025, some time was require for SIA to review those documents; assess whether AFA, David, Crossley, Grange, and Price's actions merited new counterclaims; contact Plaintiffs to discuss whether the key documents were appropriately designated as "CONFIDENTIAL," limiting SIA's ability to reference them; and review additional documents produced during that time by Plaintiffs.

Good cause supports the timing of this request, including with respect to when SIA learned of the basis for its new counterclaims and the timing of this Motion. As detailed above, SIA did not have the information upon which its proposed Amended Counterclaims are based until March and April 2025. This Motion follows roughly two months after SIA first obtained this information, and only three weeks after Plaintiffs' most recent partial production of documents, which included additional facts supporting SIA's Proposed Amended Counterclaims.

Although it is somewhat unclear whether SIA must show there is no risk of undue prejudice, *see supra* 8 n.4, as explained below, that risk is not present here. On the other hand, there is a substantial risk of unfairness if the Court denies leave to amend. Among other things, this would require SIA to file a separate case, resulting in substantial and unnecessary delay and duplicative costs, as well as a significant and avoidable waste of judicial resources. SIA also risks losing these claims against Plaintiffs, to the extent a subsequent court finds these claims to constitute compulsory counterclaims under Rule 13(a). *See Avemco Ins. Co. v. Cessna Aircraft Co.*, 11 F.3d 998, 1000 (10th Cir. 1993) ("[I]f a compulsory counterclaim is not brought, the claim is later barred." (citations omitted)).

4922-0234-0416.v14

## II.    SIA SATISFIES RULE 15(A)'S LIBERAL STANDARD FOR AMENDMENT

Rule 15(a) governs amendments and requires SIA to obtain the Court's leave to amend. *See* Fed. R. Civ. P. 15(a). Rule 15(a) directs the Court to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "The purpose of the Rule is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quotation marks and citation omitted). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin*, 568 F.3d at 1229 (quotation marks and citation omitted). None of these reasons are present here.

### A.    SIA's Motion is timely

Rule 15(a) permits amendment at any stage before trial. *See Minter*, 451 F.3d at 1205 (citations omitted). Thus, "[l]ateness does not of itself justify the denial of the amendment." *Id.* (quotation marks and citation omitted). Rather, the Tenth Circuit "focuses primarily on the reasons for the delay." *Id.* at 1206 (citation omitted). As explained above, SIA has good reasons for seeking to amend now. *See id.* at 1205 n.4 (recognizing the "rough similarity" between Rule 16(b)(4)'s "good cause" standard and the "undue delay" analysis under Rule 15).

### B.    Amendment poses no risk of undue prejudice

This is the "most important" factor. *Id.* at 1207. "Courts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment." *Id.* at 1208 (quotation marks and citation omitted). This most often occurs "when the amended claims arise out of a subject matter different from what was set forth in the

11

complaint and raise significant new factual issues." *Id.* (citations omitted). "The non-moving party bears the burden of proof on the issue of prejudice under Rule 15(a)(2)." *C.R. Bard*, 2021 WL 1842539, at *5 (citation omitted). Plaintiffs cannot show undue prejudice here.

SIA's proposed counterclaims will not unfairly affect Plaintiffs' preparation of their defenses. SIA seeks to add AFA, David, and Crossley as counterclaim defendants and add claims for conversion, trespass to chattels, civil conspiracy, and tortious interference. These claims stem from the same transaction and general set of facts alleged in SIA's original counterclaim, *i.e.*, Price's hacking of SIA's Confidential Member Information, which is what led to the firing that Plaintiffs take issue with in their Complaint. *See* ECF No. 68. The difference is that SIA has now learned more about the full extent of the misconduct, including that it involved Price quietly downloading the information repeatedly and earlier than previously known, and AFA, David, and Crossley's involvement. This is no sea change from the case as it already existed. Allowing SIA to amend its Counterclaim will neither prevent nor inhibit Plaintiffs from pursuing any defense.

At most, Plaintiffs might need some additional discovery. This, "without more, does not constitute undue prejudice." *Phase v. Eisenberg*, No. 122CV00035DBBJCB, 2023 WL 5046809, at *3 (D. Utah Aug. 8, 2023) (citation omitted). Plenty of time remains to complete whatever additional discovery Plaintiffs might reasonably need. Fact discovery is open for roughly another two-and-a-half months, expert discovery is open until December 2025, and a trial date will not be set until February 2026 at the earliest.[5] *See* ECF No. 88. Any "significant prejudice" is

---

[5] SIA plans to request an extension of discovery and for leave to serve additional written discovery and to conduct additional depositions. SIA does not object to reasonable modifications

"unlikely" in these circumstances. *See also Salt Lake City Corp. v. ERM-W., Inc.*, No. 2:11-CV-1174 TS, 2014 WL 2946593, at *2 (D. Utah June 30, 2014). Any legitimate concerns Plaintiffs might raise about timing or discovery can be ameliorated by reasonable amendments to the scheduling order. *See Hydro Eng'g, Inc. v. Petter Invs., Inc.*, No. 2:11-CV-139 TS, 2012 WL 2872628, at *3 (finding no undue prejudice when trial was not scheduled to begin for nearly a year and movant did not object to amending the scheduling order).[6]

To be sure, Plaintiffs will have more claims to defend and thus more work. But this "does not establish the requisite prejudice." *Orchestrate HR, Inc. v. Blue Cross & Blue Shield of Kansas, Inc.*, No. 19-CV-4007-HLT-TJJ, 2021 WL 2515025, at *4 (D. Kan. June 18, 2021); *Bylin*, 568 F.3d at 1230 ("[T]ime, money, and effort alone is not grounds for a finding of prejudice." (citations omitted)). Any possible prejudice is the same type of inconvenience that accompanies any amendment. This does not prevent amendment. *See Hydro*, 2012 WL 2872628, at *3 (explaining that amendment always involves "some prejudice" but that the Court's focus is on "whether there is any *undue* prejudice").

## C.  SIA's request to amend is made in good faith and not for any dilatory motive

Plaintiffs also bear the burden on this factor. *See Openwater Safety IV, LLC v. Great Lakes Ins. SE*, 435 F. Supp. 3d 1142, 1153 (D. Colo. 2020) (citation omitted). To warrant denial of leave to amend, bad faith "must be apparent from evidence of record[.]" *Phase*, 2023 WL

---

to the scheduling order to account for any legitimate concerns Plaintiffs might raise regarding discovery or the schedule. SIA is optimistic the parties can agree on a joint stipulated proposal.

[6] Moreover, as detailed above, Plaintiffs bear a share of responsibility for the timing of SIA's request. *Cf. Orchestrate*, 2021 WL 2515025, at *4 (noting non-movant's "contributions to the slow pace of this litigation" in finding no prejudice).

5046809, at *3 (quotation marks and citation omitted). SIA brings this Motion in good faith and without any dilatory motive, and there is no evidence to support such an allegation.

### D. SIA's proposed new counterclaims are not futile.

"A proposed amendment is futile if the amended [pleading] would be subject to dismissal." *AKH Co., Inc. v. Universal Underwriters Ins. Co.*, No. 13-2003-JAR-KGG, 2018 WL 2008860, at *4 (D. Kan. Apr. 30, 2018) (citation omitted). Courts must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the" amending party. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (citation omitted). Thus, issues of futility are often better suited for dispositive motions. *See Complete Merch. Sols., LLC v. Fed. Trade Comm'n*, No. 219CV00963HCNDAO, 2020 WL 4192294, at *3 (D. Utah July 21, 2020) ("[I]t is within the court's discretion to decline to engage in a futility analysis in the context of a motion to amend if the court determines the futility arguments would be more properly addressed in dispositive motions." (citations omitted)). The counterclaims SIA seeks to add here are not futile. If Plaintiffs wish to raise a futility challenge, that issue is better suited to a dispositive motion.

## III. THE COURT SHOULD JOIN GAILEN DAVID AND JACQUE CROSSLEY

Rule 13 allows new parties to be added to counterclaims and states that their addition is governed by Rules 19 and 20. *See* Fed. R. Civ. P. 13(h). Courts typically construe Rule 13(h) "liberally in an effort to avoid multiplicity of litigation, minimize the circuity of actions, and foster judicial economy." Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1434 (3d ed.) ("Wright & Miller")). Joinder of David and Crossley as Counterclaim

Defendants to SIA's claims for violation of the CFAA, civil conspiracy, and tortious interference and is proper under both Rules 19 and 20.

### A. Joinder is required under Rule 19(a).

Rule 19(a) provides for joinder of persons who are "subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction" if the person to be joined is necessary for the Court to "accord complete relief among existing parties[.]" Fed. R. Civ. P. 19(a)(1). Both David and Crossley qualify as required parties under this rule. David resides in Florida but has come to Utah to campaign for AFA. Crossley resides in California and her employment is based out of Salt Lake City, Utah. They are both subject to service, and, since jurisdiction is based on 28 U.S.C. §§ 1331, 1337, and 1367, their joinder will not destroy the Court's subject-matter jurisdiction. Although joint tortfeasors and co-conspirators are "generally not" required parties, *Casas Off. Machines, Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 677 (1st Cir. 1994) (citations omitted), courts have recognized they may be required parties when they "'emerge[] as an active participant' in the allegations made in the complaint that are 'critical to the disposition of the important issues in the litigation,'" *Laker Airways, Inc. v. Brit. Airways, PLC*, 182 F.3d 843, 848 (11th Cir. 1999); *see also Burns v. Femiani*, 786 F. App'x 375, 379–80 (3d Cir. 2019). David and Crossley meet this standard.

David was AFA's agent in this scheme. After Price and Crossley shared that Price had hacked SIA's website and could access SIA's Confidential Member Information, David asked Price to "quietly download" that information each month, which Price agreed to do. David also forwarded the links and instructions to access SIA's Confidential Member Information to at least two other AFA employees. David was also a passive participant on the WhatsApp Message

thread when Price, Crossley, and Grange decided to publish the Confidential Member Information and how it could be used to compromise the SIA election.

Crossley was the driving force behind the conspiracy to steal SIA's Confidential Member Information and use it for AFA's benefit. Crossley coordinated the exchange of SIA's confidential information between Price and AFA Rep David in April 2023. She told Grange that Price could access "SIA voter codes" and directed the actions of both Price and Grange as they chose to make and publish the video to undermine the election. She brought the information regarding Price's access to the Confidential Member Information to the larger AFA-supporter WhatsApp thread, which included David. In short, she was at the center of the conduct that led to the termination of Price and Grange. The Court should therefore find that David and Crossley are required parties under Rule 19.

### B. David and Crossley's joinder is also proper under Rule 20

Rule 20(a) permits joinder of a person as a defendant where "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "The purpose of the rule is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." Wright & Miller, § 1652 (citations omitted). In addition, under the Federal Rules of Civil Procedure "joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) (citation omitted). "Accordingly, courts liberally construe the joinder provisions of Rule 20." *SourceRock Energy*

*Partners, LP v. Redhawk Advisors, LLC*, No. 21-1299-TC-ADM, 2022 WL 1125565, at *2 (D. Kan. Apr. 15, 2022) (citations omitted).

David and Crossley may properly be joined as counterclaim defendants under Rule 20(a). SIA's counterclaims against David and Crossley arise from the same transaction or occurrence as its CFAA and civil conspiracy counterclaims against Plaintiffs. Indeed, SIA seeks to add David and Crossley as counterclaim defendants to the very same counterclaims SIA brings against current Counterclaim Defendants. David, Crossley, and the relevant Counterclaim Defendants were co-conspirators. David asked Price to "quietly download" SIA's Confidential Member Information for AFA and shared that information with other AFA employees. Crossley introduced Price to David and later was the driving force behind Price and Grange's attempt to undermine and "expose" SIA with the video revealing SIA's Confidential Member Information. *See, e.g.*, PAC ¶ 34. This set in motion the chain of events that culminated in Price's and Grange's dismissal for which Plaintiffs bring their own claims. This falls comfortably within Rule 20(a)'s broad coverage. *See AKH*, 2018 WL 2008860, at *6 ("'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." (citation omitted)); Wright & Miller, § 1653 (explaining that the "transaction" requirement is "to be read as broadly as possible" (citations omitted)).

Indeed, most of the evidence and testimony relevant to SIA's counterclaims against David and Crossley will be the same with respect to Plaintiffs and the case's essential factual background in general, such that requiring a separate case and trial would result in needless delay and waste. This evidence and testimony will include, for example, that Price and Crossley had

access to SIA's Confidential Member Information as early as April 2023 and shared this information with AFA through David, who in turn shared it within AFA, as well as the fact that Crossley, Price, and Grange planned to expose SIA by publishing Price's video online. These overlaps support joinder. *See AKH*, 2018 WL 2008860, at *6 (citation omitted). This satisfies Rule 20(a)'s first prong.

Rule 20(a)'s "common question" prong is also satisfied. The "common question" requirement is not a rigid test but is instead a "flexible concept" that is "to be read as broadly as possible whenever doing so is likely to promote judicial economy." Wright & Miller, § 1653 (citations omitted). Common questions here will include, at least, whether Price, Grange, AFA, David and Crossley violated the CFAA and conspired to unlawfully obtain SIA's confidential information and use it against SIA and for AFA's benefit.

David and Crossley's joinder also satisfies the discretionary factors courts sometimes consider: "whether the amendment will result in undue prejudice, whether the request was unduly and inexplicably delayed, [and whether it] was offered in good faith." *See Allen v. Pinery, LLC*, No. 17-CV-00688-MSK-STV, 2017 WL 11685633, at *3 (D. Colo. July 28, 2017) (citation omitted). As explained above, these factors support joinder.

## CONCLUSION

For the foregoing reasons, the Court should grant this Motion and allow SIA to file its Amended Counterclaims and add Gailen David and Jacque Crossley as Counterclaim Defendants.

DATED May 20, 2025.

/s/ *Christina M. Jepson*
Erik A. Christiansen
Christina M. Jepson
Sarah Jenkins Dewey
PARSONS BEHLE & LATIMER

Gregg M. Formella
GREGG M. FORMELLA JD

*Attorneys for Defendant SkyWest InFlight Association*

## **CERTIFICATE OF SERVICE**

I certify that on May 20, 2025, I caused a true and correct copy of the foregoing **SKYWEST INFLIGHT ASSOCIATION'S MOTION TO AMEND COUNTERCLAIMS AND JOIN ADDITIONAL PARTIES** to be filed using the Court's CM/ECF system, which provided notice to all counsel of record appearing thereon.

/s/  *Christina M. Jepson*

4922-0234-0416.v14