SCOTT YOUNG (10695)
CHRISTOPHER W. DROUBAY (12078)
Spencer Fane LLP
10 Exchange Place, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 521-9000
rsyoung@spencerfane.com
cdroubay@spencerfane.com

JOSHUA SHIFFRIN, *pro hac vice*
GRACE RYBAK, *pro hac vice*
Bredhoff & Kaiser P.L.L.C.
805 15th Street NW, Suite 1000
Washington, D.C. 20005
Telephone: (202) 842-2600
jshiffrin@bredhoff.com
grybak@bredhoff.com

JEFFREY A. BARTOS, *pro hac vice*
JOHN J. GRUNERT, *pro hac vice*
Guerrieri, Bartos & Roma, P.C.
1717 K Street, NW, Suite 900
Washington, DC 20006
Telephone: (202) 624-7400
jbartos@geclaw.com
jgrunert@geclaw.com

*Counsel for Association of Flight Attendants-CWA, Shane Price, Tresa Grange, Brandon Finley , Jacque Crossley, and Gailen David*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| ASSOCIATION OF FLIGHT ATTENDANTS-CWA AFL-CIO, *et al.*, | ) ) ) | **MOTION  TO DISMISS CERTAIN COUNTERCLAIMS AND MEMORANDUM IN SUPPORT** |
| Plaintiffs/Counterclaim Defendants, | ) ) | |
| v. | ) ) | |
| SKYWEST AIRLINES, INC., *et al.*, | ) ) | Case No.2:23-cv-00723-DBB-DBP Judge David Barlow Magistrate Judge Dustin B. Pead |
| Defendants/Counterclaim Plaintiffs. | ) ) | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................ii

RELIEF SOUGHT AND GROUNDS FOR RELIEF……………………………………….....1

FACTUAL AND PROCEDURAL BACKGROUND……………………………………………2

LEGAL STANDARD…………………………...…………………………………………...4

ARGUMENT……...……………………………………………………………………………5

    I.      SIA Fails To State A Claim Against AFA, David, Or Crossley Under The CFAA (Count One)…………………………………...…………………………………...5

          A.  There is No Vicarious or Secondary Liability Under The CFAA………………...6

          B.  SIA Does Not Plausibly Allege Any Direct Liability For David, Crossley Or AFA……………………………………………………………………………….8

    II.     SIA Fails To State A Claim Against Price Or Grange Under The Stored Communications Act (Count Two)……………………………………………..10

          A.  An SCA Claim Requires Allegations That Defendant Wrongly Accessed "Electronic Communications" Maintained In A Communications "Facility."…..10

          B.  The Counterclaim Contains No Allegations From Which It Can Be Plausibly Contended That SIA's Website Was An Electronic Communications Facility, Or That The SIA Information Included Electronic Communications…………...…..12

    III.    SIA Fails to State a Conversion Claim (Count Five)…………………………...13

    IV.    SIA Fails to State a Trespass to Chattels Claim (Count Six)………………….....16

    V.     SIA Fails to State a Tortious Interference with Contractual Relationships Claim (Count Eight)…………………………………………………………………...18

    VI.    SIA Fails to State a Civil Conspiracy Claim (Count Seven)………………...…..20

CONCLUSION……………………………………………………………………...22

i

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Advanced Fluid Systems, Inc. v. Huber*, 28  F. Supp. 3d 306 (M.D. Pa. 2014) .............................. 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................... 4, 5

*Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962 (9th Cir. 2024)........................................ 16

*Brown v. Waddell*, 50 F.3d 285 (4th Cir. 1995)...............................................................11

*Celtig, LLC v. Patey*, 347 F. Supp. 3d 976 (D. Utah 2018)....................................................... 22

*Cent. Bank & Tr. v. Smith*, 215 F. Supp. 3d 1234...............................................................10, 11, 13

*Central Bank of Denver, NA v. First Interstate Bank of Denver, NA,* 511 U.S. 164 (1994)........ 6, 7

*Chavez-DeRemer v. SkyWest Inflight Ass'n*, Case No. 2:24-cv-492; Case No. 2:24-cv-956 (D. Utah) ....................................................................................................... 2

*Cobra Pipeline Co. v. Gas Nat., Inc.*, 132 F. Supp. 3d 945 (N.D. Ohio 2015).............................11

*In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ................................. 10

*Flynn v. Liner Grode*, 2011 WL 2847712 (D. Nev. July 15, 2011).............. **Error! Bookmark not defined.**8

*Garcia v. City of Laredo, TX*, 702 F.3d 788 (5th Cir. 2012) ...................................................11, 12

*Giles Const., LLC v. Tooele Inventory Sol., Inc.*, No. 2:12-CV-37, 2015 WL 3755863 (D. Utah June 16, 2015)........................................................................................... 8

*Glob. Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, 127 F. Supp. 3d 1198 (D. Utah 2015) ................................................................................................ 14

*Hately v. Watts*, 917 F.3d 770 (4th Cir. 2019) ................................................................ 10

*Hernandez v. Path, Inc.*, No. 12-CV-01515 YGR, 2012 WL 5194120 (N.D. Cal. Oct. 19, 2012) ................................................................................................... 18

*Independent Fed'n of Flight Attendants v. Cooper*, 141 F.3d 900 (8th Cir. 1998) ....................... 21

*In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) .................................... 18

*Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210 (10th Cir. 2011) ........................................ 5

*Kirch v. Embarq Management Co.*, 702 F.3d 1245 ........................................................................ 7

*LVRC Holdings LLC v. Brekka*, 581 F.3d 1127 (9th Cir. 2009) .................................................... 8

*Margae, Inc. v. Clear Link Techs., LLC*, 620 F. Supp. 2d 1284 (D. Utah 2009) ........................... 14

*Mitchell v. Wells Fargo Bank*, 355 F. Supp. 3d 1136 (D. Utah 2018) ..................................... 14, 15

*Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir. 2006) ...................... 18

*Podium Corp. v. Chekkit Geolocation Services, Inc.*, 2021 No. 2:20-cv-35; 2021 WL 5772269 (D. Utah Dec. 6, 2021) ......................................................................... 8

*Satcom Sol. & Res. LLC v. Pope*, 2020 No. 19-CV-0210; 2020 WL 4511773; 2020 WL 2188922 (D. Colo. Apr. 20, 2020) ......................................................... 13

*Silver v. City of Albuquerque*, 134 F.4th 1130 (10th Cir. 2025) ................................................... 5

*Snap-On Bus. Sols. Inc. v. O'Neil & Associates, Inc.*, 708 F. Supp. 2d 669 (N.D. Ohio 2010) .... 17

*Soundvision Techs., LLC v. Templeton Group Ltd.*, 929 F. Supp. 2d 1174 (D. Utah 2013) .... 14, 18

*Thomas v. Kaven*, 765 F.3d 1183 (10th Cir. 2014) ........................................................................ 4

*U.S. v. Hansen*, 599 U.S. 762 (2023) ............................................................................................ 7

*Vazirani v. Heitz*, 741 F.3d 1104 (10th Cir. 2013) ...................................................................... 19

*Vox Mktg. Group v. Prodigy Promos*, 556 F. Supp. 3d 1280 (D. Utah 2021) .............................. 17

*Waldrep Bros. Beauty Supply, Inc. v. Wynn Beauty Supply Co., Inc.*, 992 F.2d 59 (4th Cir. 1993) ............................................................................................ 21

**STATE CASES**

*Allred v. Hinkley*, 8 Utah 2d 73; 328 P.2d 726 (Utah1958) ......................................................... 16

*Anderson Dev. Co. v. Tobias*, 2005 UT 36; 116 P.3d 323 (Utah 2005) ....................................... 19

*Broadwater v. Old Republic Sur.*, 854 P.2d 527 (Utah 1993) ..................................................... 16

*Campbell v. Westdahl*, 148 Ariz. 432; 715 P.2d 288 (1985) ....................................................... 19

*CDC Restoration & Const., LC v. Tradesmen Contractors, LLC*, 274 P.3d 317 (Utah App. 2012) .................................................................................................... 20

*Eldridge v. Johndrow*, 2015 UT 21; 345 P.3d 553 (Utah 2015)..................................................... 18

*Estrada v. Mendoza*, 275 P.3d 1024 (Utah App. 2012)................................................................. 20

*Fibro Trust, Inc. v. Brahman Financial, Inc.*, 974 P.2d 288 (Utah 1999).............................. 13, 14

*Harvey v. Ute Indian Tribe of Uintah and Ouray Reservation*, 416 P.3d 401 (Utah 2017).... 18, 19

*Intel Corp. v. Hamidi*, 30 Cal. 4th 1342 (Cal. 2003)................................................................... 16

*Kirkham v. Widdison*, 447 P.3d 89 (Utah App. 2019) ........................................................... 14, 17

*Lysenko v. Sawaya*, 7 P.3d 783 (Utah 2000) ............................................................................... 16

*Nassi v. Hatsis*, 525 P.3d 117 (Utah App. 2023) ................................................................... 17, 18

*Nelson v. Phillips*, 554 P.3d 1075 (Utah 2024) ........................................................................... 21

*Phillips v. Utah State Credit Union*, 811 P.2d 174 (Utah 1991) ....................................... 14, 15, 16

*Politino v. Azzon, Inc.*, 569 S.E.2d 447 (W. Va. 2002).................................................................. 21

*Puttuck v. Gendron*, 199 P.3d 971 (Utah App. 2008)................................................................... 20

*Pyper v. Reil*, 437 P.3d 493 (Utah App. 2018) ........................................................................... 22

*Upasani v. State Farm Gen. Ins. Co.*, 173 Cal. Rptr. 3d 784 (Cal. App. 4th Dist. 2014) ............. 21

*Walker v. Union P. R. Co.*, 844 P.2d 335 (Utah App. 1992)........................................................... 17

*Z's IT Consulting Services, Inc. v. Hunt L. Group, LLC*, 256 N.E.3d 479 (Ill. App. 3d Dist. 2024), *appeal allowed*, 256 N.E.3d 992 (Ill. 2025). ..............**Error! Bookmark not defined.**

**FEDERAL STATUTES**

18 U.S.C. § 2............................................................................................................................ 7

18 U.S.C. § 1030.................................................................................................................. 5, 6

18 U.S.C. § 2510...................................................................................................................11

18 U.S.C. § 2511...............................................................**Error! Bookmark not defined.**

18 U.S.C. § 2520(a) ................................................................................................................ 7

18 U.S.C. § 2701 ...............................................................................................................10, 11

18 U.S.C. § 2707 ................................................................................................................... 10

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 1

**OTHER AUTHORITIES**

Orin S. Kerr, "A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It", 72 Geo. Wash. L. Rev. 1208, 1209–13 (2004) ............................................ 12

Restatement (Second) of Torts § 217 .............................................**Error! Bookmark not defined.**

Restatement (Second) of Torts § 228 cmt. d .................................................................... 15

**RELIEF SOUGHT AND GROUNDS FOR RELIEF**

The Association of Flight Attendants, AFL-CIO ("AFA"), Shane Price, Tresa Grange, Jacque Crossley, and Gailen David (collectively herein, "Counterclaim Defendants") hereby move, pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the bulk of SIA's Counterclaims.

In its Amended Counterclaims, SIA asserts eight counterclaims, under federal and Utah law, against various combinations of the Counterclaim Defendants.  For the reasons set forth below, nearly all of these Counterclaims are subject to dismissal for failure to state a claim upon which relief can be granted. While some of the claims against some of the Counterclaim Defendants are best addressed through summary judgment,[1] the bulk are either barred as a matter of law or do not allege facts that plausibly meet essential elements of the claims.

Accordingly, the Counterclaim Defendants move to dismiss the following Counterclaims against the listed Counterclaim Defendants:

1.    **Computer Fraud and Abuse Act** (as against AFA, David and Crossley);

2.    **Stored Communications Act** (as against Price and Grange);

3.    **Conversion** (as against AFA, David and Price);

4.    **Trespass to Chattels** (as against AFA, David and Price);

5.    **Tortious Interference with Contractual Relationship** (as against AFA, David, Price, Grange and Crossley); and

6.    **Civil Conspiracy** (as against AFA, David, Price, Grange and Crossley).[2]

---

[1] The Counterclaim Defendants are *not* moving to dismiss the following counterclaims against the following parties: Computer Fraud and Abuse Act (as against Price and Grange), Utah Computer Abuse and Data Rcover Act (aginst Price and Grange) and Breach of Contract (against Grange).

[2] For efficiency of argument, the order of claims addressed in in this Motion varies slightly from the order of claims as presented in the Amended Counterclaims.

## FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit arises out of a sustained and unlawful effort by Defendants SkyWest Airlines to interfere with the right of its flight attendants to freely and fairly select their collective-bargaining representative. SkyWest created, funds and controls a sham representative or "company union" for its Flight Attendants, Defendant SkyWest Inflight Association ("SIA"), which it uses to dissuade flight attendants from organizing an independent representative and thereby suppresses their wages and benefits. Plaintiffs allege that SkyWest and SIA have violated the Railway Labor Act and the Labor-Management Reporting and Disclosure Act; and that SIA has violated its federal duty of fair representation.[3]

When SkyWest Flight Attendants sought to elect such an independent representative, the Association of Flight Attendants ("AFA"), they suffered severe retaliation. SkyWest flight attendants Shane Price and Tresa Grange uncovered and publicized corruption in SIA's internal political processes, and were promptly fired by SkyWest with the full support and encouragement of SIA. When AFA brought suit to challenge the illegal arrangement between SkyWest and SIA, and to protect Price and Grange against retaliation, SkyWest and SIA responded with a barrage of counterclaims aimed principally at punishing those who dared to

---

[3] In related litigation pending in this Court, the United States Secretary of Labor has filed two lawsuits against SIA related to its elections. *Chavez-DeRemer v. SkyWest Inflight Ass'n*, Case No. 2:24-cv-492 (D. Utah); *Chavez-DeRemer v. SkyWest Inflight Ass'n*, Case No. 2:24-cv-956 (D. Utah). The two cases, now consolidated, allege that SIA has violated the Labor-Management Reporting and Disclosure Act by disqualifying a member from running in the September 2024 election without due process, providing inadequate safeguards for its elections, failing to hold elections every three years, and improperly disqualifying candidates, among other things. *See* Case No. 2:24-cv-492 (lead case).

challenge the covert SkyWest-SIA arrangement and to protect SkyWest's anti-union business model.[4]

SIA recently received leave to file its Amended Counterclaims, which are made against not only the existing parties to the case, but also against two additional Counterclaim Defendants: Jacque Crossley, a SkyWest flight attendant who has supported the effort to elect AFA as the union representative; and Gailen David, an AFA employee who has worked to help the SkyWest flight attendants' organizing drive.

The Amended Counterclaims center on allegations surrounding SIA's August 2023 election for the SIA Board of Representatives.  SIA alleges that prior to the election, flight attendant and counterclaim defendant Shane Price (a SIA member as well as an AFA supporter) discovered that SIA's website contained an accessible list of names, employee identification numbers and "voting credentials" for SkyWest Flight Attendants. SIA alleges that Mr. Price advised his coworker Jacque Crossley and AFA organizer Gailen David that he could access this information.  Doc. 110 (Amend. Countercl.), ¶¶ 21, 23.  SIA alleges that AFA representatives looked into whether they could or should access the same information, but notably does *not* allege that AFA or any AFA representative did so.  *Id.*, ¶¶ 25-28.

SIA's election of Representatives took place in August 2023.  During that election, SIA admits, a former SIA representative named Erika Robertson corrupted the election by "voting multiple times" for herself "using other Flight Attendant's [voting] credentials."  *Id.*, para. 34. SIA alleges that Price, Grange and Crossley (who were all participants in that election), learned

---

[4] SkyWest and/or SIA also wrongly encouraged state authorities into bringing criminal charges against Price and Grange, which were then voluntarily dismissed once authorities realized there was no evidence to support the charges.  *See* Dkt. No. 107-1, Ex. A (Stipulated Motion to Dismiss with Prejudice); Ex. B. (Order to Dismiss with Prejudice).

"about problems Flight Attendants were having with voting during the election," *id.*, ¶ 38, and then decided to expose problems in SIA's electoral process, settling on providing proof to other SIA members – after the election was over – of how voting could have been manipulated through a video demonstration posted to an online forum by Ms. Grange. *Id.*, ¶¶ 39-73.

Mr. Price and Ms. Grange were subsequently fired by SkyWest. *Id.,* ¶ 79. Together with AFA and fellow flight attendant Brandon Finley, they brought this action against both SkyWest and SIA. SIA filed its Amended Counterclaims on June 27, 2025, asserting the following claims:

1. Federal Computer Fraud and Abuse Act (against AFA, David, Price, Grange, and Crossley);

2. Federal Stored Communications Act (against Price and Grange);

3. Utah Computer Abuse and Data Recovery Act (against Price and Grange):

4. Utah Breach of Contract (against Grange);

5. Utah Conversion (against AFA, David and Price);

6. Utah Trespass to Chattels (against AFA, David and Price);

7. Utah Civil Conspiracy (against AFA, David, Price, Grange and Crossley); and

8. Utah Tortious Interference with Contractual Relationship (against AFA, David, Price, Grange and Crossley).

The Counterclaim Defendants now move to dismiss the bulk of these counterclaims.

## LEGAL STANDARD

"To survive dismissal" under Federal Rule of Civil Procedure 12(b)(6), "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Thomas v. Kaven*, 765 F.3d 1183, 1190 (10th Cir. 2014) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "Although the court must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff 'must still

4

nudge the claim across the line from conceivable or speculative to plausible." *Silver v. City of Albuquerque*, 134 F.4th 1130, 1133 (10th Cir. 2025) (quoting *Iqbal*, 556 U.S. at 678). "[I]n ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

## ARGUMENT

### I.    SIA Fails To State A Claim Against AFA, David, Or Crossley Under The CFAA (Count One).

SIA's first counterclaim is for a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. The original counterclaim was raised against AFA, Price and Grange; the amended counterclaim adds David and Crossley.  Doc. 110 (Amend. Countercl.) ¶¶ 85-88.  The essence of this counterclaim is that Shane Price accessed SIA's website, without authorization, to obtain confidential information behind a "confidential partition." There is no allegation that AFA, David or Crossly directly accessed confidential information without authorization in this manner. Rather, SIA claims only that these parties provide Priced with "support and encouragement."  *Id.* ¶ 86.[5]

This claim fails as a matter of law because there is no liability under the CFAA for "supporting and encouraging" a primary violator of the Act.

### A.    There Is No Vicarious Or Secondary Liability Under The CFAA.

---

[5] While the Counterclaim is unclear regarding Ms. Grange, SIA alleges that she stated in a message that she had "opened" a link which would reveal voter passwords.  *Id.*, ¶ 38.  We intend to demonstrate on summary judgment that there is no factual basis for any liability under the statute as to Ms. Grange (or Mr. Price), but for purposes of this motion are not seeking relief as to this counterclaim against Ms. Grange.

CFAA is a criminal statute which also creates a civil cause of action against someone who has violated the criminal provisions. 18 U.S.C. § 1030(g). The statue criminalizes a range of conduct including "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] … information from any protected computer"; as well as "intentionally access[ing] a protected computer" without authorization, and as a result of such conduct, causing damage and loss.  18 U.S.C. § 1030(a)(5)(B),(C).  The criminal provisions apply to both a person who directly engages in unlawful conduct and a to a person who "conspires to commit … an offense." *Id.*, § 1030(b).  The civil provision provides that "Any person who suffers damages or loss by reason of a violation of this section may maintain a civil action *against the violator* to obtain . . . damages . . . or other . . . relief." 18 U.S.C. § 1030(g) (emphasis added).

CFAA's civil cause of action is available only against "the violator" of the statue.  18 U.S.C. § 1030(g).  Notably, the CFAA does not include liability for encouragement or support, nor for aiding and abetting, nor for the analogous terms, solicitation or facilitation.  Under controlling precedent, the Congressional choice to not include such secondary liability language precludes the claims asserted by SIA against David, Crossley, or AFA.

"Congress has not enacted a general civil aiding and abetting statute … for suits by private parties.  Thus, when Congress enacts a statute under which a person may sue and recover damage from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors." *Central Bank of Denver, NA v. First Interstate Bank of Denver, NA*, 511 U.S. 164, 182 (1994). In the absence of a

generally available right to sue those who aid or abet others in civil violations, "Congress has taken a statute-by-statute approach." *Id.* (collecting examples).[6]

As a matter of statutory interpretation, then, the absence of specific secondary liability language in a civil enforcement regime, "indicates a deliberate congressional choice with which the courts should not interfere." *Id.* at 184.

In *Central Bank of Denver*, the Supreme Court thus held that because the text of section 10(b) of the Securities Exchange Act did "not prohibit aiding and abetting, . . . a private plaintiff may not maintain an aiding and abetting suit under § 10(b)." *Id*. at 191. Based on *Central Bank*'s reasoning, the 10th Circuit similarly held that no secondary liability could be had under the Electronic Communications Privacy Act, 18 U.S.C. § 2511, which prohibits interception of electronic communications. *Kirch v. Embarq Management Co.*, 702 F.3d 1245, 1246-27 (10th Cit. 2012). That statute, not unlike the CFAA, provided civil liability against "the person or entity . . . which engaged in th[e] violation." 18 U.S.C. § 2520(a). Because "the violation" under that statute is the act of intercepting, disclosing or using a communication, the only person potentially liable is the one who intercepts, disclose or uses the communication – not someone who aids and abets that person. "Because the EPCA creates no aiding-and-abetting liability, [a party] is only liable if it itself intercepted th[e] communication." 702 F.3d at 1249.

---

[6]The federal criminal code contains a specific aiding and abetting provision, 18 U.S.C. § 2, which provides that "[w]hoever . . . aids, abets, counsels, commands, induces or procures" the commission of a crime may be "punished as a principal." In *Central Bank of Denver*, the Court read that statute to mean that "those who provide knowing aid to persons committing a federal crime, with the intent to facilitate the crime, are themselves committing a crime." 511 U.S. at 181. The Court analogized "aiding and abetting" liability to a tort doctrine providing liability for "substantial assistance or encouragement" to the direct tortfeasor. *Ibid.* "Encouragement" as a basis for liability is also found in statutes which prohibit solicitation or else "encourag[ing] or induc[ing] a criminal action." *U.S. v. Hansen*, 599 U.S. 762, 776, 771 (2023) (involving federal immigration law). Crucially, no such secondary liability language is found in the CFAA.

Following these cases, one District of Utah court has likewise concluded that there is no liability for "aiding and abetting" under the CFAA. *Podium Corp. v. Chekkit Geolocation Services, Inc.*, No. 2:20-cv-352-JNP-DAO, 2021 WL 5772269, *8 (D. Utah Dec. 6, 2021). Consistent with the rule of lenity applicable to CFAA[7], that court adopted an appropriately narrow reading of potential civil liability and rejected any basis for "liability for acts that are not themselves ... within the meaning of the statute." *Id.*; *see also Flynn v. Liner Grode*, 2011 WL 2847712, *3 (D. Nev. July 15, 2011).[8]

**B.    SIA Does Not Plausibly Allege Any Direct Liability For David, Crossley Or AFA.**

SIA does not allege that David, Crossley, or the AFA intentionally accessed a protected computer, as required for any claim under the CFAA. Rather, SIA alleges only the following:

**Gailen David.**  Mr. David is an AFA employee who was involved in efforts to support the SkyWest flight attendants' union organization drive.  SIA alleges that after Mr. David learned from Price of his ability to access certain SIA information, he asked, "can we quietly download this information every month?"  Doc. 110, ¶¶ 23-24, 26    Mr. David is also alleged to have sent Mr. Price's email with links to others within AFA asking them to "see if any of this info . . . may

---

[7] Even for civil actions set forth in what is primarily a criminal statute, courts apply the rule of lenity to "limit [the statute's] reach .. to the clear import of [its] text and construe any ambiguity against" coverage of the statute. *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134-35 (9th Cir. 2009); *see also Giles Const., LLC v. Tooele Inventory Sol., Inc.*, No. 2:12-CV-37, 2015 WL 3755863, at *3 (D. Utah June 16, 2015) (applying rule of lenity to the CFAA).

[8] As the *Podium Corp.* court acknowledged , some courts outside of this Circuit have held that some form of vicarious liability may be appropriate under the CFAA, *see, e.g. Advanced Fluid Systems, Inc. v. Huber*, 28  F.Supp.3d 306, 327 (M.D. Pa. 2014) (agreeing there is no "aiding and abetting" liability, but holding that the act of inducing another to access a protected computer . . . constitutes 'access' within the meaning of the CFAA").  This approach appears to primarily be used to address situation in which a corporate entity directs an individual to engage in unauthorized access, and then disclaims liability.  To the extent any such case disregards the binding rules of *Central Bank of Denver* or *Kirch*, they should of course not be followed here.

be useful for compiling data on SkyWest." *Id.* ¶ 28. There is no allegation that Mr. David accessed any protected computer.[9]

**AFA** is also not alleged to have accessed any protected computer, but appears only to be included on the theory that Mr. David was AFA's "agent." *Id.*, ¶ 3.

**Jacque Crossley.** SIA alleges that Ms. Crossley was advised by Mr. Price that he could access Confidential Member information, and received an email with links, and that she responded to advise that AFA was looking into whether the information could be given to AFA. *Id.*, ¶¶ 23-25. During the August 2024 SIA election, Ms. Crossley is alleged to have sent and received messages "about the problems Flight Attendants were having with the voting," and to have provided Mr. Price with the names of Flight Attendants to "check" to see if they had already voted or not. *Id.*, ¶¶ 37, 41. She is also alleged to have communicated to Ms. Grange that Mr. Price knew how to access voting passwords and wrote, "We just need to expose them." *Id.*, ¶ 39.

Absent *any* allegation which could plausibly support a claim that Mr. David, Ms. Crossley, or AFA wrongly accessed any SIA protected computer, SIA's CFAA claim fails against each of them as a matter of law. Count I of the Counterclaim, as against Mr. David, Ms. Crossley, and AFA, should be dismissed.

---

[9] SIA alleges that Mr. David was also included in a WhatsApp group chat in which discussion about using Price's information was discussed but concedes that he "did not respond to these comments," but was only "included in the entire discussion" Doc. 110, ¶¶ 44, 57. Likewise, SIA alleges that Ms. Grange asked if Mr. David had "[a]ny advice," but that he did not respond. *Id.*, ¶ 65.

**II.    SIA Fails To State A Claim Against Price Or Grange Under The Stored Communications Act (Count Two).**

SIA's second counterclaim is for violation of the Stored Communications Act, 18 U.S.C. § 2701 *et seq.* The SCA provides that anyone who "intentionally accesses without authorization a facility through which an electronic communication service is provided; or ... intentionally exceeds an authorization to access that facility; and thereby obtains . . . access to a wire or electronic communication while it is in electronic storage in such system" may be held criminally liable. 18 U.S.C. § 2701(a). The elements of a SCA claim are thus: (1) acting "without authorization" or "exceed[ing] an authorization" to access (2) a "facility" (3) that provides an "electronic communication service" (4) thereby obtaining a "wire or electronic communication" (5) while the communication is in "electronic storage." *Id. See generally Cent. Bank & Tr. v. Smith*, 215 F. Supp. 3d 1226, 1234-35 (D. Wyo. 2016) (describing elements of civil SCA claim).

The SCA also contains a civil enforcement provision, under which "any provider of electronic communication service, subscriber, or other person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may, in a civil action, recover from the person or entity … which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2707(a)-(c).

**A.    An SCA Claim Requires Allegations That Defendant Wrongly Accessed "Electronic Communications" Maintained In A Communications "Facility."**

The SCA protects electronic communications, like emails, stored by network or internet service providers in centralized facilities. *See In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 609 (9th Cir. 2020); *Hately v. Watts*, 917 F.3d 770, 782 (4th Cir. 2019) (The SCA protects "intrusions into individual privacy arising from illicit access to ... 'remote computing operations and large data banks that store e-mails.'"). This conforms with the specific terms of

the SCA prohibiting a person from "intentionally access[ing] without authorization a *facility* through which an *electronic communication service* is provided; "and thereby obtain[ing], alter[ing], or prevent[ing] authorized access to a *wire or electronic communication* while it is in *electronic storage in such system*." 18 U.S.C.A. § 2701 (emphasis added).[10] *See generally Brown v. Waddell,* 50 F.3d 285, 289 (4th Cir. 1995) ("The principal purpose of the ECPA amendments to Title III was to extend to 'electronic communications' the same protections against unauthorized interceptions that Title III had been providing for oral' and 'wire' communications via common carrier transmissions."); *Cent. Bank & Tr. v. Smith*, 215 F. Supp. 3d at 1234 (courts "have interpreted the statute to apply to providers of a communication service such as telephone companies, Internet or e-mail service providers, and bulletin board services.").

In short, "the relevant 'facilities' that the [SCA] is designed to protect are not computers that enable the use of an electronic communication service, but instead are *facilities* that are operated by electronic communication service providers and used to store and maintain electronic storage." *Garcia v. City of Laredo, TX*, 702 F.3d 788, 793 (5th Cir. 2012) (emphasis added). "The SCA does not provide a remedy for unauthorized access to *all* digital materials. As the name implies, the statute only covers actions when a party obtains an electronic *communication* while it is in electronic storage." *Cobra Pipeline Co. v. Gas Nat., Inc.*, 132 F. Supp. 3d 945, 949, 951 (N.D. Ohio 2015) (quotation marks omitted) (website content was not a covered "communication[]" or held in electronic storage because it simply "'presents'

---

[10] The Act defines "electronic communication" to mean "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce …" 18 U.S.C.A. § 2510 (12).

information to any user who logs in."); *accord Garcia*, 702 F.3d at 792 ("the words of the statute were carefully chosen: '[T]he statute envisions a *provider* (the ISP or other network service provider) and a *user* (the individual with an account with the provider), with the *user's communications in the possession of the provider.*'") (*quoting* Orin S. Kerr, "A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It", 72 Geo. Wash. L. Rev. 1208, 1209–13 (2004)).

> **B.** **The Counterclaim Contains No Allegations From Which It Can Be Plausibly Contended That SIA's Website Was An Electronic Communications Facility, Or That The SIA Information Included Electronic Communications.**

SIA has not alleged facts which plausibly show a violation of the SCA.  SIA claims that Mr. Price, "knowingly, willingly, and wrongfully . . . .. accessed SIA's . . . website without . . . permission . . ., and . . . downloaded" confidential information "for himself and AFA."  It claims that Ms. Grange, "intentionally and with little if any compunction, encouraged and facilitated such actions by Price."  Doc. 110 ¶¶ 90-92.  SIA alleges that Mr. Price accessed "SIA Confidential Member Information," *id.*, ¶¶ 90, 92, which it says consisted of "names, employee numbers, and passwords used to vote in SIA elections."'  *Id.* ¶ 4.

The SCA claim thus fails as a matter of law as to both Mr. Price and Ms. Grange because SIA has not alleged facts which could plausibly support a claim.  Crucial to an SCA claim is an allegation that a defendant wrongfully accessed a "**facility** through which an electronic communication is provided" and therein accessed a "**stored communication**."  No such allegation is made here.  None of the allegations support even an inference, much less the requisite probability, that the SIA website was a "facility" providing an electronic communications service under the SCA, nor that the list of names and voter codes on the website were "electronic communications" such as an email.  Absent such allegations, there could be no

plausible liability under the SCA for either Mr. Price or Ms. Grange.  *Satcom Sol. & Res. LLC v. Pope*, No. 19-CV-02104-CMA-GPG, 2020 WL 4511773, at *7 (D. Colo. Apr. 20, 2020), *report and recommendation adopted,* 2020 WL 2188922 (D. Colo. May 6, 2020) ("Plaintiff argues that the SCA should be extended to "unauthorized access of Plaintiff's business computer network.' . . . . [T]his argument is unavailing because Plaintiff is not a facility through which an electronic communication service is provided, rather the Plaintiff uses an electronic communication service in order to conduct its business and makes the network available to its employees."); *Cent. Bank & Tr. v. Smith,* 215 F. Supp. 3d 1226, 1234-35 (D. Wyo. 2016) ("To be a facility under the statute, Central Bank & Trust would need to be an electronic communication service provider. . . . There is no allegation that any such facility is involved in this case. Central Bank & Trust is not an internet service provider or analogous to one. Under these alleged facts, the statute does not apply.").

### III. SIA Fails to State a Conversion Claim (Count Five).

Count V of SIA's Amended Counterclaim is for the tort of conversion, and is asserted against AFA, Gailen David and Shane Price.  The crux of this claim is the allegation that Mr. Price, "encouraged" by AFA and Mr. David, "unlawfully downloaded SIA's Confidential Member Information," which consists of "the names, employee identification numbers, and voting credentials (login and password) for every SkyWest Flight Attendant." Amended Counterclaims, Doc. 110, ¶¶ 21, 109-110. SIA contends that these actions "wilfully interfered with SIA's possession of such Confidential Member Information . . ., thereby depriving SIA from using the information," to which it is entitled to "immediate possession."  *Id.* ¶¶ 11-112.

"A conversion is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession." *Fibro*

*Trust, Inc. v. Brahman Financial, Inc.*, 974 P.2d 288, 295-96 (Utah 1999). Conversion "requires such a serious interference with the owner's right that the person interfering therewith may reasonably be required to buy the goods." *Phillips v. Utah State Credit Union*, 811 P.2d 174, 179 (Utah 1991).

This claim fails for multiple independent reasons. First, Utah does not recognize conversion of intangible property, so the claim fails as a matter of law for that reason alone. Second, SIA alleges in conclusory terms that interference by AFA, David, and Price "depriv[ed] SIA from using the information," Doc. 110, ¶ 111, but the facts alleged do not plausibly suggest that SIA ever lost access to the information. Finally, SIA fails to allege any damages, as SIA does not allege that the member information had any monetary value.

1. SIA's conversion claim fails as matter of law because, under Utah law, intangible property cannot be the basis for such a claim. The Utah Court of Appeals has "decline[d]" to "expand the definition of a chattel to apply to intangible property." *Kirkham v. Widdison*, 447 P.3d 89 (Utah App. 2019); *see also Mitchell v. Wells Fargo Bank*, 355 F. Supp. 3d 1136, 1160 (D. Utah 2018) (predicting Utah would not recognize conversion claim for intangible property); *Soundvision Techs., LLC v. Templeton Group Ltd.*, 929 F. Supp. 2d 1174 (D. Utah 2013) (same); *Margae, Inc. v. Clear Link Techs., LLC*, 620 F. Supp. 2d 1284, 1287 (D. Utah 2009) (same). Employee names, SkyWest-issued identification numbers, and login credentials are intangible property. *See Kirkham v. Widdison*, 447 P.3d 89, 97 (Utah App. 2019) (tax return information is intangible property); *Mitchell*, 355 F. Supp. 3d at 1160 (plaintiffs' names and addresses are intangible property); *Glob. Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, 127 F. Supp. 3d 1198, 1209 (D. Utah 2015) (citing Restatement (Second) of Torts while applying Kentucky law) (member billing information is intangible property). In a recent analogous case,

14

the Illinois appellate court rejected a conversion claim based on passwords and access codes for a law firm's information technology system on the grounds that the claim did not involve tangible personal property. *Z's IT Consulting Services, Inc. v. Hunt L. Group, LLC*, 256 N.E.3d 479, 485 (Ill. App. 3d Dist. 2024), *appeal allowed*, 256 N.E.3d 992 (Ill. 2025).

2. Independently, this claim fails because SIA has not alleged sufficient interference with its property interest in the "Confidential Member Information" to plausibly state a claim. SIA asserts, in conclusory terms, that "Price, David, and AFA have willfully interfered with SIA's possession of such Confidential Member Information, without lawful justification, thereby depriving SIA from using the information, requiring SIA to change its website, logins, and identifying information." Doc. 110, ¶ 111. This Court has rejected similar harm in a case on the use of plaintiffs' personal information. *Mitchell v. Wells Fargo Bank*, 355 F. Supp. 3d 1136, 1160 (D. Utah 2018) ("In order to bring a conversion claim under Utah law, Plaintiffs must allege that they were deprived of the use of their names, address, etc."). SIA could not plausibly allege that it was deprived of the use of its employee names, SkyWest-issued employee numbers, or voting credentials. Even on its allegations, it retained access to that information at all times. Thus, SIA has not alleged facts that would plausibly meet an essential element of this claim.

3. Even if SIA had plausibly alleged a cognizable property interest and sufficiently serious interference with that interest, its conversion claim would fail for yet another reason: SIA does not allege damages supporting conversion. The purpose of conversion, as a cause of action, is to require the violator to reimburse the value of the converted property. *See Phillips*, 811 P.2d at 179; *see also* Restatement (Second) of Torts § 228 cmt. d ("Even where there is a clear breach of the agreement, however, the unpermitted use is not a conversion unless it amounts to such a

15

serious violation of the other's right of control as to justify requiring the user to pay the full value of the chattel.").

"The measure of damages of conversion is the full value of the property." *Phillips v. Utah State Credit Union*, 811 P.2d 174, 179 (Utah 1991) (quoting *Allred v. Hinkley*, 8 Utah 2d 73, 328 P.2d 726 (1958)); *see also Broadwater v. Old Republic Sur.*, 854 P.2d 527, 531 (Utah 1993); *Lysenko v. Sawaya*, 7 P.3d 783, 787 (Utah 2000). SIA does not allege, however, that the Confidential Member Information had *any* value that would support a claim for damages. Nor does SIA allege an alternative form of damages for this count, instead alleging generally that "[t]he conduct of Price, David, and AFA has damaged SIA in an amount to be proven at trial." Doc. 110, ¶ 113. Those allegations are insufficient to make out a conversion claim.

**IV. SIA Fails to State a Trespass to Chattels Claim (Count Six).**

Count VI of the Counterclaims is based on the same underlying allegations as Count V, (alleged interference with SIA's Confidential Member Information by Price, "encouraged" by AFA and David). While Count V asserts a claim for conversion, Count VI asserts the state-law claim of "Trespass to Chattels." Doc. 110, ¶¶ 115-119. As an initial matter, trespass to chattels is disfavored under Utah law. Even if SIA were allowed to assert this cause of action, the claim fails here because only intangible property is involved and there is no sufficient allegation of interference with that property.

In states recognizing the tort, trespass to chattels permits "recovery for interferences with possession of personal property 'not sufficiently important to be classed as conversion.'" *Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 967 (9th Cir. 2024) (quoting *Intel Corp. v. Hamidi*, 30 Cal.4th 1342, 1350 (2003)). In Utah, however, "the doctrine of trespass to chattels

16

has fallen into general disuse, and even when applied requires that there be some damage to the chattel in question." *Walker v. Union P. R. Co.*, 844 P.2d 335, 343 n.9 (Utah App. 1992).

The uncertain status of the claim under Utah law was sufficient for a Utah federal district court, in a Computer Fraud and Abuse Act case, to decline supplemental jurisdiction over a trespass to chattels claim, reasoning that is "unclear . . . whether Utah even recognizes the tort of trespass to chattels," and observing that applying it in a digital context would raise "significant issues" that would predominate over the federal claim. *Vox Mktg. Group v. Prodigy Promos*, 556 F. Supp. 3d 1280, 1290-91 (D. Utah 2021). The same result is appropriate here.

One recent Utah Court of Appeals case set out basic elements of the trespass to chattels claim and analyzed it in conjunction with the conversion claim because the property at issue had been totally destroyed. *Nassi v. Hatsis*, 525 P.3d 117, 122 & n.10 (Utah App. 2023). As set out there, "trespass to chattels is understood to occur when one 'intentionally (a) dispossess[es] another of the chattel, or (b) us[es] or intermeddl[es] with a chattel in the possession of another.'" *Id.* (quoting Restatement (Second) of Torts § 217). Should this Court choose to apply the elements from that case, SIA's claim would still fail for two independent reasons.

First, as with the conversion claim, the property at issue for SIA's trespass to chattels claim is intangible. There are no Utah cases analyzing this issue specifically for a trespass to chattels claim, but it stands to reason that if intangible property cannot be the subject of a conversion claim, it cannot be the subject of this disfavored and underdeveloped claim either. *See Kirkham*, 447 P.3d at 97 (declining "to expand the definition of a chattel to apply to intangible property" for conversion claim"); *Snap-on Bus. Sols. Inc. v. O'Neil & Associates, Inc.*, 708 F. Supp. 2d 669, 678 (N.D. Ohio 2010) ("[E]ven an electronic trespass to chattels claim must be based on some link to a physical object.").

17

Second, SIA does not plausibly allege the second element: that the counterclaim defendants "use[d] or intermeddle[d] with a chattel." *Nassi*, 525 P.3d at 122. For electronic trespass to chattels claims, even where a plaintiff can show a link to a physical object, such as a server, the plaintiff must show a burden that goes beyond *de minimis* interference. *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 359 (4th Cir. 2006); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012); *Hernandez v. Path, Inc.*, No. 12-CV-01515 YGR, 2012 WL 5194120, at *7-8 (N.D. Cal. Oct. 19, 2012). No such allegation is made here.

Count VI of SIA's Amended Counterclaims should be dismissed.

## V.     SIA Fails to State a Tortious Interference with Contractual Relationships Claim (Count Eight).

Count Eight of the Amended Counterclaim is for Tortious Interference with SIA's "contractual relationship" with its members. SIA claims that by allegedly accessing Confidential Member Information and "compromis[ing] SIA's August 2023 Election," all of the Counterclaim Defendants committed this tort. Doc. 110, ¶¶ 126-128.

"Tortious interference with economic relations is established when the plaintiff proves: "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations," (2) for an improper purpose or "by improper means," (3) "causing injury to the plaintiff." *Harvey v. Ute Indian Tribe of Uintah and Ouray Reservation*, 416 P.3d 401, 425 (Utah 2017) (quoting *Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553); *see also Soundvision Techs., LLC v. Templeton Group Ltd.*, 929 F. Supp. 2d 1174, 1194 (D. Utah 2013) (for the "improper purpose" alternative).

The claim fails as to Price, Grange, and Crossley because they are improper defendants as a matter of law. As SIA members themselves, Price, Grange, and Crossley were all parties to the

18

"contractual relationship between SIA and its members," *Id.* ¶ 127, and a "party cannot be held liable in tort for intentional interference with its own contract." *Vazirani v. Heitz*, 741 F.3d 1104, 1108 (10th Cir. 2013) (applying Arizona law) (quoting *Campbell v. Westdahl,* 148 Ariz. 432, 715 P.2d 288, 294 (Ariz. Ct. App.1985)).

As to AFA and David, SIA does not allege facts plausibly supporting the second element of a tortious interference claim: improper purpose or improper means. To show "improper purpose, a plaintiff must prove "that the actor's predominant purpose was to injure the plaintiff." *Soundvision Techs.,* 929 F. Supp. 2d at 1194.[11] "Improper means" requires a showing "'that the defendant's means of interference were contrary to statutory, regulatory, or common law or violated an established standard of a trade or profession." *Harvey*, 416 P.3d at 425 (quoting *Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶ 20, 116 P.3d 323).

SIA appears to be pursuing an "improper means" theory, but the allegations nonetheless fail to plausibly establish a claim. SIA alleges that the defendants "engag[ed] in improper conduct, including but not limited to their unauthorized access of SIA's Confidential Member information, publishing that information, and doing so to undermine and compromise SIA's August 2023 Election." Doc. 110, ¶ 128. But, as described above, there are no allegations that *AFA* or *Mr. David* accessed the SIA Member Information, published it, or took any steps to compromise the SIA election. This claim fails for lack of allegations which could plausibly support the cause of action against these parties.

Moreover, SIA does not plausibly allege that any "means" used by AFA or David were "improper." Beyond the purely conclusory allegation (which must be set aside for purposes of a

---

[11] SIA alleges that AFA was "trying to replace SIA as the labor representative for SkyWest Flight Attendants," Doc. 110, ¶ 2, which of course is protected activity under the Railway Labor Act, and thus not improper as a matter of law.

19

Rule 12(b)(6) motion), that the "conduct of AFA [and] David . . . was improper and not privileged, justified, or legally permissible," *Id.* ¶ 129, the Amended Counterclaims do not point to any specific standard or law which renders their alleged conduct to be illegal or otherwise improper. Assuming that SIA will attempt to rely on one of its other claims to show improper means, the defects set out in the sections specific to those claims establish that no claim against AFA or David should survive beyond the pleading stage.

**VI. SIA Fails to State a Civil Conspiracy Claim (Count Seven).**

Finally, SIA asserts a claim of civil conspiracy against all the Counterclaim Defendants, alleging that they all "conspired to unlawfully obtain SIA's Confidential Member Information to (1) campaign for AFA to replace SIA . . . and (2) compromise SIA's election." Doc. 110,¶ 121.This claim fails because SIA fails to allege a meeting of the minds on any unlawful object or course of action.

"To prove civil conspiracy, five elements must be shown: (1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof." *CDC Restoration & Const., LC v. Tradesmen Contractors, LLC*, 274 P.3d 317, 333 (Utah App. 2012). "The claim of civil conspiracy requires, as one of its essential elements, an underlying tort." *Estrada v. Mendoza*, 275 P.3d 1024, 1029 (Utah App. 2012) (quoting *Puttuck v. Gendron*, 199 P.3d 971, 978 (Utah App. 2008)) (cleaned up).

SIA's civil conspiracy claim fails as a matter of law because SIA fails to plead a meeting of the minds among the alleged co-conspirators on an unlawful object or course of action. "To demonstrate that a defendant is a member of a conspiracy, a plaintiff must plead, among other

20

things, that the defendant had a meeting of the minds about an object to be accomplished with her co-conspirators." *Nelson v. Phillips*, 554 P.3d 1075, 1089 (Utah 2024). "The sine qua non of a conspiratorial agreement is the knowledge on the part of the alleged conspirators of its unlawful objective and their intent to aid in achieving that objective." 16 Am. Jur. 2d Conspiracy § 53; *Upasani v. State Farm Gen. Ins. Co.*, 173 Cal. Rptr. 3d 784, 788 (Cal. App. 4th Dist. 2014).

SIA alleges two objects of the purported conspiracy but fails to plausibly allege a meeting of the minds on any unlawful objective. SIA alleges that the purported conspiracy had an object to "campaign for AFA to replace SIA as the labor organization of SkyWest Flight Attendants." Doc. 110 ¶ 121. That object is lawful. Organizing activity is protected under the Railway Labor Act. *See, e.g.*, *Independent Fed'n of Flight Attendants v. Cooper*, 141 F.3d 900, 903 (8th Cir. 1998) (Railway Labor Act governs dispute over union representation campaign). In the related business competitor context, lawful competitive behavior cannot serve as the basis for a civil conspiracy claim. *Waldrep Bros. Beauty Supply, Inc. v. Wynn Beauty Supply Co., Inc.*, 992 F.2d 59, 63 (4th Cir. 1993); *Politino v. Azzon, Inc.*, 569 S.E.2d 447, 451 (W. Va. 2002).

Here, because the first alleged object was lawful, SIA must allege a meeting of the minds on an unlawful course of action to achieve that object. It fails to do so. SIA claims that the "email, text, and WhatsApp communications" allow an inference of a meeting of the minds "to obtain and publish SIA's Confidential Member Information to compromise SIA's elections." Doc. 110, ¶ 122. But SIA alleges no communication from David or any AFA representative on the subject of the SIA election, let alone any communication agreeing to unlawful activity with respect to that election. *See id.*, ¶ 65 (alleging that Grange asked David for advice but alleging no response from David).

21

SIA's second alleged object of the conspiracy, to "compromise SIA's election," Doc. 110, ¶ 121, falls short on the same deficiency.  SIA presents no factual allegations that these five Counterclaim Defendants reached an agreement as to any course of action on the SIA election, unlawful or otherwise.  SIA claims that the "email, text, and WhatsApp communications" show a meeting of the minds but does not allege any election-related communications among these five Counterclaim Defendants.  *See Celtig, LLC v. Patey*, 347 F. Supp. 3d 976, 985 (D. Utah 2018) (holding that ordinary business communications did not show meeting of the minds on unlawful scheme); *Pyper v. Reil*, 437 P.3d 493, 498 (Utah App. 2018) (explaining essential element of "a meeting of the minds on the unlawful purpose").

## CONCLUSION

For all of the foregoing reasons, Counterclaim Defendants respectfully submit that all of SIA's Counterclaims, except for Count One (as against Mr. Price and Ms. Grange), and Count Four (as against Ms. Grange), should be dismissed.

Respectfully submitted,

        /s/ *Jeffrey A. Bartos*
JEFFREY A. BARTOS, *pro hac vice*
JOHN J. GRUNERT, *pro hac vice*
Guerrieri, Bartos & Roma, P.C.
1717 K Street, NW, Suite 900
Washington, DC 20006
Telephone: (202) 624-7400
jbartos@geclaw.com
jgrunert@geclaw.com

SCOTT YOUNG (10695)
CHRISTOPHER W. DROUBAY (12078)

22

Spencer Fane LLP
10 Exchange Place, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 521-9000
rsyoung@spencerfane.com
cdroubay@spencerfane.com

JOSHUA SHIFFRIN, *pro hac vice*
GRACE RYBAK, *pro hac vice*
Bredhoff & Kaiser P.L.L.C.
805 15th Street NW, Suite 1000
Washington, D.C. 20005
Telephone: (202) 842-2600
jshiffrin@bredhoff.com
grybak@bredhoff.com


*Counsel for Association of Flight Attendants-CWA, Shane Price, Tresa Grange, Brandon Finley , Jacque Crossley, and Gailen David*

23