Erik A. Christiansen, USB #7372
Christina M. Jepson, USB #7301
Sarah Jenkins Dewey, USB #15640
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
EChristiansen@parsonsbehle.com
CJepson@parsonsbehle.com
SDewey@parsonsbehle.com
ecf@parsonsbehle.com

Gregg M. Formella (pro hac vice)
**GREGG M. FORMELLA JD**
300 State St.
P.O. Box 92141
Southlake, TX 76092
gregg.formella@gmail.com

*Attorneys for SkyWest InFlight Association*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ASSOCIATION OF FLIGHT ATTENDANTS, ALF-CIO; SHANE PRICE; TRESA GRANGE; and BRANDON FINLEY,<br><br>    Plaintiffs,<br><br>v.<br><br>SKYWEST AIRLINES INC.; SKYWEST INFLIGHT ASSOCIATION,<br><br>    Defendants. | **SIA'S MOTION TO COMPEL REGARDING PLAINTIFFS' WITHHOLDING OF DISCOVERY BASED ON ALLEGED "PROTECTED ACTIVITY" PRIVILEGE**<br><br>Case No. 2:23-cv-723-DBB-DBP<br><br>The Honorable David Barlow<br><br>Chief Magistrate Judge Dustin B. Pead |

4928-3629-5516.v5

SKYWEST INFLIGHT ASSOCIATION,

     Counterclaimant,

v.

ASSOCIATION OF FLIGHT ATTENDANTS, AFL-CIO; SHANE PRICE; TRESA GRANGE; JACQUE CROSSLEY; and GAILEN DAVID,

     Counterclaim Defendants.

## RELIEF SOUGHT AND GROUNDS THEREFOR

SkyWest InFlight Association ("SIA") moves under Rule 37(a) for an order compelling Plaintiffs/Counterclaim Defendants AFA, Shane Price, Tresa Grange, and Brandon Finley (collectively, "Plaintiffs") to produce information withheld based on a purported "protected activity" privilege under the Railway Labor Act ("RLA").

## RELEVANT BACKGROUND

SIA is the labor organization representing SkyWest Airline's Flight Attendants ("FAs"). AFA wants to replace SIA and has taken affirmative steps to try to do so. For at least the past two years, AFA has conducted an "organizing campaign" trying to sway FAs to support AFA. Am. Compl. ¶ 8, ECF No. 68; Am. Countercl. ¶¶ 2–4,15, ECF No. 110. Some FAs support AFA, including Price, Grange, and Finley. Am. Compl. ¶ 32–35. But despite its efforts, AFA never managed to pass the first needed step: convincing at least 50% of FAs to sign AFA "authorization cards." Am. Countercl. ¶ 17. Only then could AFA move to the second step, which would require AFA to win an election and be found not to have unlawfully interfered in

the process. *Id.* ¶ 18. Since AFA has been stuck at step one, it and its supporters have taken to more extreme tactics.

In April 2023, Price learned he could access confidential information about SIA's members by manipulating certain URLs on SIA's password-protected website. *Id.* ¶ 21. This confidential information included the names, employee identification numbers, and voting credentials (login/password) for every FA. *Id.* Price did not alert SIA to this breach. Instead, he informed Jacque Crossley, another FA and AFA supporter, and Gailen David, an AFA agent active in AFA's efforts to displace SIA and who communicated and worked with AFA supporters including Price, Grange, Crossley, and others. *E.g.*, *id.* ¶¶ 23–24. David did not inform SIA of this breach. Instead, he did two things to exploit the situation for AFA. First, he asked Price to "quietly download" SIA's information every month:



*Id.* ¶¶ 26. Price agreed. *Id.* ¶ 27. Next, David forwarded Price's email—with links to confidential information—to AFA's Strategic Campaign Lead and Research Assist Manager, asking them to "see if any of this info . . . may be useful for compiling data on SkyWest." *Id.* ¶ 28.

3

SIA held an election around August 9–14, 2023. *Id.* ¶¶ 29–30. On August 10, Grange asked Price how to access FAs' voter codes using the manipulated URLs. *Id.* ¶ 35. Price provided instructions and, at Grange's behest, made a video showing how to access the confidential information. *Id.* ¶¶ 36, 42–43. On the last day of voting, Grange, Price, and other AFA supporters communicated about how to use this information against SIA and to benefit AFA's campaign. *Id.* ¶¶ 44–68. AFA's David was included on these messages. *Id.* ¶¶ 57, 65.

On August 15, Grange publicly posted Price's video. *Id.* ¶ 69. Grange also posted a link from Price with instructions for how to "download an excel sheet that ha[d] the whole membership and their passwords" to a SkyWest online forum. *Id.* ¶ 71. Price and Grange did not act alone. They conspired together and with others, including Jacque Crossley, Gailen David, and AFA, in an effort to obtain SIA's confidential information and use it against SIA and for AFA's benefit. *E.g.*, *id.* ¶¶ 23–28, 35–73, 121–123.

Meanwhile, on about August 14, SIA learned of an issue with the election relating to a different FA fraudulently using other FAs' voting credentials. *Id.* ¶¶ 74–77. An investigation started unraveling Price and Grange's (and their co-conspirators') misconduct. *Id.* ¶ 77. On September 14, 2023, SkyWest terminated Grange's and Price's employment because they posted confidential information about SkyWest employees online. *Id.* ¶ 79. SkyWest also terminated the employment of the other FA. *Id.*

AFA did not hesitate to try to leverage these events into more signed authorization cards. *Id.* ¶ 80. On November 14, 2023, AFA President Sara Nelson misrepresented Price and Grange's actions, testifying before a Congressional committee:

> We have an organizing campaign at the largest regional carrier right now, SkyWest Airlines. . . . When Tresa Grange, a nearly 25-

> year employee with SkyWest and honored, and Shane Price, nine-year employee, stood up and showed that this company union was a sham and that their voting system was a sham, they were fired for their union organizing.

*Id.* ¶ 80. Nelson did not explain that they were actually fired for inappropriately accessing and posting confidential information online or that Price sent AFA that information. *Id.* ¶ 81.

After wrongfully accessing the confidential information and weaponizing that information and subsequent events to aid AFA's campaign, AFA and its supporters sued SkyWest and SIA. Plaintiffs Complaint alleges they were AFA supporters and were fired for that reason. Compl. ¶ 78. They have made their campaign the heart of this matter. Plaintiffs also allege, among other things, that SIA breached its duty of fair representation to Price and Grange by reporting them to SkyWest management and collaborating with management in their termination, and that SIA retaliated against Price and Grange. *See* Compl. ¶¶ 77–78. SIA counterclaimed against AFA, Price, Grange, and others, for violating computer protection laws and civil conspiracy, among other claims. Am. Countercl. ¶¶ 85–131. SIA has been harmed in many ways. Counterclaim Defendants' actions contributed to SIA's election being uncertifiable, which required SIA to re-run its election at significant cost, while redirecting resources away from normal operations to address the misconduct's fall out. There has also been harm to SIA institutionally and reputationally. *See id.*

SIA sought discovery about Plaintiffs' communications with each other; the FA Plaintiffs' (who are also Counterclaim Defendants) support of AFA; documents and communications about SIA and AFA and its supporters' efforts to replace SIA, including the Price video; information about SkyWest FAs and AFA representatives involved with or supporting AFA's efforts; the number of authorization cards signed before and after the events in

5

August 2023; and expenditures made by AFA supporting its efforts to replace SIA. Plaintiffs refused to provide complete productions and responses to these requests. *See, e.g.*, Ex. A (Pls.' Resps. to RPDs 1, 6, 12–16, 19–21, and Interrogs. 9–10, 12–14). After conferring, SIA understood Plaintiffs were withholding based only on a purported "protected activity" privilege under the RLA. Indeed, Plaintiffs' March privilege log reflects redactions on that basis alone.[1] *See* Ex. B.

Plaintiffs' Opposition to SIA's short-form motion abandoned that purported privilege. ECF No. 123. Instead, Plaintiffs contend the withheld information is not relevant or alternatively is "sensitive 'confidential . . . commercial information'" subject to protection under Rule 26(c)(1)(G). *Id.* at 2–3. Plaintiffs state they are withholding three categories of information:

1. The names and personal identifying information of SkyWest Flight Attendants who have non-publicly supported or contacted the AFA.

2. AFA authorization cards, and related information as to the collection of cards, signatories of cards, and the total number of cards.

3. AFA financial information outside the scope of the AFA's LM Reports or financial support for the Plaintiffs.

---

[1] Plaintiffs' withholding under that purported privilege is itself suspect. For example, Plaintiffs previously redacted the following exchange based on that purported privilege:



*See* Ex. B (Entry No. 2). Plaintiffs unredacted this only after SIA filed its short-form motion.

6

*See* Exs. C (without attachments), D (without attachments). Plaintiffs have provided some amended responses, with some additional information; Plaintiffs also inappropriately added a new objection citing Rule 26(c)(1)(G). Ex. E. Plaintiffs state they are withholding "on the basis of confidentiality under the [RLA]," and assert these materials are not relevant and are subject to protection under Rule 26(c)(1)(G).[2] *Id.* As explained below, Plaintiffs are wrong. But to move this case along, SIA proposed the following compromise:

Category 1: Plaintiffs produce responsive information only for those SkyWest FAs who are listed on any party's initial disclosures, as this is relevant to witness bias.

Category 2: (a) Plaintiffs produce, without redaction, AFA authorization cards[3] signed by persons who checked the card's "public supporter" box; (b) Plaintiffs produce the AFA authorization cards signed by persons who did not check the "public supporter" box with name, contact information, employee number, and any other identifying information redacted (but not the date the card was signed); and (c) Plaintiffs produce without redaction any AFA cards signed by persons listed on any party's initial disclosures that previously were produced in redacted form. The names of those signing the cards and the cards themselves will be designated as AEO, except for persons listed on any party's initial disclosures and those who checked the "public supporter" box. AFA also would provide information about the total numbers of signed cards collected which is relevant to the Plaintiffs' motive in interfering with the election—to get more cards for AFA.

---

[2] Plaintiffs also refer to objections "on the other grounds asserted," but those grounds—whatever they are—must certainly now be waived.

[3] An exemplar authorization card is attached. Ex. F. SIA understands the cards here are similar.

7

Category 3: AFA produces financial information relating to (1) support for the Plaintiffs, and (2) financial information specific to AFA's efforts to become the bargaining agent for SkyWest FAs. SIA does not seek information about AFA's finances generally. SIA is open to additional protections for this information, including AEO designation. *See* Ex. G.

SIA respectfully asks the Court to adopt this proposal.[4]

## LEGAL STANDARDS

Rule 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "Relevance is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Andes Cap. Fin. LLC v. Crossed Keys LLC*, No. 21-1270-KHV-RES, 2022 WL 2191796, at *3 (D. Kan. June 17, 2022) (citation omitted). On a motion to compel, the party seeking discovery "bears the initial minimal burden to establish the relevance of the requested discovery." *Id.* (citations omitted). This is a "low" burden. *Id.* at *4 (citation omitted). Once this burden is met, the opposing party must support its objections. *Id.* (citations omitted).

As explained below, however, because Plaintiffs contend the discovery sought should be protected under Rule 26(c)(1)(G), Plaintiffs bear the burden to show the discovery qualifies as "confidential . . . commercial information" and that disclosure would be harmful. *See Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981) (citation omitted). The burden then shifts to the party seeking discovery to show why disclosure is relevant and necessary, and the Court must then balance the need for the information against the potential for

---

[4] This proposal does not waive or limit Plaintiffs' obligation to include any withholdings/redactions on a privilege log.

harm. *See id.* The Supreme Court has recognized that "orders forbidding any disclosure of . . . confidential commercial information are rare. More commonly, the trial court will enter a protective order restricting disclosure to counsel." *Fed. Open Mkt. Comm. of Fed. Rsrv. Sys. v. Merrill*, 443 U.S. 340, 362 n.24 (1979) (citations omitted).

Evidentiary privileges are "disfavored," "not lightly created," and should be "narrowly construed[.]" *Int'l Bhd. of Teamsters, Airline Div. v. Frontier Airlines, Inc.*, No. 11-CV-02007-MSK-KLM, 2012 WL 1801979, at *5 (D. Colo. May 16, 2012) (citations omitted).

## ARGUMENT

## I. THE DISCOVERY SIA SEEKS IS RELEVANT AND NECESSARY

Whether a witness supports AFA is relevant to witness bias. Information about authorization cards is relevant to show whether AFA gained an advantage (thus harming SIA) through the misuse of SIA's information and the resulting fallout. AFA supporters, especially "public" supporters and those who checked the "I want to help talk to my co-workers about AFA-CWA" box, are likely to have information about AFA's use of the confidential information. Whether the Plaintiff FAs have received financial support from AFA is relevant to bias. And AFA's expenditures in support of its efforts to displace SIA is relevant to AFA's motive in improperly taking and using SIA's information. This information also goes to SIA's counterclaims and unclean hands defense.

Although SIA need not address proportionality, *see Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB-ADM, 2019 WL 4466903, at *2 (D. Kan. Sept. 18, 2019) (citations omitted), the discovery sought is proportional. SIA's existence is at stake. As are the FAs' rights to be represented by their chosen labor organization—SIA—and not have that choice disturbed

9

4928-3629-5516.v5

through wrongful conduct. AFA also stands to gain over $3 million in dues if it succeeds. *See* Am. Countercl. ¶ 16. The information sought is in Plaintiffs' exclusive control, and there would be no real burden to producing this information, as shown by Plaintiffs' omission of any objection on that ground in their Opposition to SIA's short-form motion.

## II.    THERE IS NO "PROTECTED ACTIVITY" PRIVILEGE HERE

As SIA's short-form motion explains, there is no recognized privilege for "protected activity" under the RLA, and even if such a privilege existed, Plaintiffs have waived its application. *See* ECF No. 118.[5] Plaintiffs have conceded these points, since their Opposition, ECF No. 123, did not engage with these arguments. *See Storey v. Seipel*, No. 2:22-CV-00486-RJS-DAO, 2024 WL 4436609, at *3 & n.54 (D. Utah Oct. 24, 2024) (citing cases). These concessions are binding. *See id.* & n.55 (citation omitted).

It is not clear whether Plaintiffs' claim of "confidentiality under the [RLA]," *e.g.*, Ex. C, differs from their claim of a "protected activity" privilege. SIA asked Plaintiffs what they meant by this, *see* Ex. G, but Plaintiffs declined to explain, *see* Ex. D.[6] Given that Plaintiffs seek to preclude disclosure, it appears this refers to Plaintiffs' purported "protected activity" privilege. In any case, the RLA provisions Plaintiffs cite provide for a variety of non-evidentiary protections but say nothing about any privilege or confidentiality. *See* 45 U.S.C. § 152, Third, Fourth. That Congress provided a variety of protections but declined to provide for any privilege or confidentiality weighs against Plaintiffs' request for the Court to recognize a new protection. *See In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1198 (10th Cir. 2006) (citation omitted). To the

---

[5] SIA incorporates those arguments here.

[6] SIA will continue conferring in good faith with Plaintiffs about these issues. However, SIA does not wish to delay resolution of this matter.

4928-3629-5516.v5

extent Plaintiffs contend "confidentiality under the [RLA]" is a basis for protection under Rule 26(c)(1)(G), that argument also fails.

## III.    RULE 26(c)(1)(G) DOES NOT PRECLUDE THE DISCOVERY SIA SEEKS

Plaintiffs now assert that these materials are protectible as "confidential . . . commercial information" under Rule 26(c)(1)(G). *See* ECF No. 123 at 2–3; *see also* Ex. C. Not so. Plaintiffs did not assert this objection in their responses, *see* Ex. A, and thus waived it, *see Fifth Third Bank v. KC II Insure Servs., LLC*, No. 11-CV-2101 CM/DJW, 2011 WL 5920949, at *2 (D. Kan. Nov. 28, 2011) (citations omitted). And while Plaintiffs state they are "prepared to file" a motion under Rule 26(c)(1)(G), ECF No. 123 at 2 n.1, "[t]he time for filing a motion for protective order [was] on or before the date that discovery [was] due," *see United States v. Copar Pumice Co., Inc.*, No. CV 09-1201 JAP/KBM, 2012 WL 12898786, at *3 (D.N.M. Apr. 23, 2012) (citation omitted).

Good cause does not exist to excuse Plaintiffs' delay. Plaintiffs offer no explanation for waiting to raise this objection. *See* ECF No. 123. Plaintiffs' delay has prejudiced SIA by needlessly delaying resolution of this issue, and needlessly driving up SIA's costs (and wasting Court resources) litigating an issue Plaintiffs apparently concede lacked merit. Compelling production will not result in an excessively harsh result because the materials at issue are not subject to any valid protection, and any concerns can be addressed by AEO designation.

Even if they had timely sought relief, neither Rule 26(c)(1)(G) nor Plaintiffs' claim of "confidentiality under the RLA" supports continued withholding. "(T)here is no absolute privilege for trade secrets and similar confidential information." *Centurion*, 665 F.2d at 325 (citations omitted). The party seeking protection "must first establish that the information sought

11

is [confidential . . . commercial information] and then demonstrate that its disclosure might be harmful." *Id.* (citation omitted). This heavy burden requires Plaintiffs to show that disclosure would "work a clearly defined and very serious injury." *Citicorp v. Interbank Card Ass'n*, 478 F. Supp. 756, 765 (S.D.N.Y. 1979) (citation omitted). Plaintiffs cannot meet this burden.

Even assuming the discovery sought qualifies as confidential commercial information (which SIA does not concede), Plaintiffs point only to vague and conclusory allegations of potential competitive harm. *See* ECF No. 123 at 3. This is insufficient. *See John Zink Co., LLC v. Zeeco, Inc.*, No. 25-CV-059-JDR-CDL, 2025 WL 2171138, at *3 & n.2 (N.D. Okla. July 31, 2025) (citations omitted). Plaintiffs' privacy concerns are also unavailing. AFA's supporters, particularly those who checked the "public supporter" box, have no reasonable expectation of privacy. Plaintiffs' contentions about a potential chilling effect and retaliation are also unsupported. Except for potential witnesses, for whom bias is a significant issue, only persons who chose to make their support public will be identified; information about non-public supporters would be AEO. Plaintiffs' argument that SIA disqualified an AFA supporter for "disloyalty" is also unpersuasive. Loyalty is expected of *any* organization's officers, and it is implicit in the LMRDA. *See* 29 U.S.C. § 501(a) (recognizing that labor organization officers "occupy positions of trust in relation to such organization").

Even if Plaintiffs could show harm, SIA has already shown the information is relevant and necessary. Moreover, SIA seeks this information in good faith, as shown by its agreement to AEO designation. To the extent Plaintiffs have legitimate concerns, the solution is an appropriate designation, e.g., AEO, not to preclude disclosure entirely. *See Frontier*, 2012 WL 1801979, at *3, 6. The Court should order disclosure.

4928-3629-5516.v5

## IV.    SIA'S MOTION IS TIMELY

SIA's motion was timely. *See* ECF No. 125-1. And if there were a timing issue, the deadline should be extended for good cause based on the parties' agreement, or, at worst, SIA's misunderstanding of that agreement, and the importance of the information sought to resolving this case on the merits. *See* DUCivR 37-1(b)(3); ECF No. 125.

### CONCLUSION[7]

For the reasons set forth here and in SIA's short-form discovery motion, the Court should grant this motion and order Plaintiffs to supplement in accordance with SIA's proposal.

DATED August 15, 2025.

/s/ *Christina M. Jepson*

Erik A. Christiansen
Christina M. Jepson
Sarah Jenkins Dewey
PARSONS BEHLE & LATIMER

Gregg M. Formella
GREGG M. FORMELLA JD

*Attorneys for SkyWest InFlight Association*

### DUCivR 7-1(a)(6)(C) Certification

I certify that the foregoing SIA's Motion to Compel Regarding Plaintiffs' Withholding of Discovery Based on Alleged "Protected Activity" Privilege contains 3,085 words and complies with DUCivR 7-1(a)(4).

/s/ *Christina M. Jepson*

---

[7] SIA certifies it conferred in good faith with Plaintiffs in an attempt to resolve this dispute without court action.

4928-3629-5516.v5

## CERTIFICATE OF SERVICE

I certify that on August 15, 2025, I caused a true and correct copy of the foregoing SIA's Motion to Compel Regarding Plaintiffs' Withholding of Discovery Based on Alleged "Protected Activity" Privilege, together with any exhibits thereto, to be filed using the Court's CM/ECF system, which provided service to all counsel of record appearing thereon.

/s/ *Christina M. Jepson*

14

4928-3629-5516.v5