SCOTT YOUNG (10695)
CHRISTOPHER W. DROUBAY (12078)
Spencer Fane LLP
10 Exchange Place, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 521-9000
rsyoung@spencerfane.com
cdroubay@spencerfane.com

JOSHUA SHIFFRIN, *pro hac vice*
GRACE RYBAK, *pro hac vice*
Bredhoff & Kaiser P.L.L.C.
805 15th Street NW, Suite 1000
Washington, D.C. 20005
Telephone: (202) 842-2600
jshiffrin@bredhoff.com
grybak@bredhoff.com

JEFFREY A. BARTOS, *pro hac vice*
JOHN J. GRUNERT, *pro hac vice*
Guerrieri, Bartos & Roma, P.C.
1717 K Street, NW, Suite 900
Washington, DC 20006
Telephone: (202) 624-7400
jbartos@geclaw.com
jgrunert@geclaw.com

*Counsel for Association of Flight Attendants-CWA AFL-CIO, Shane Price, Tresa Grange, Brandon Finley, Jacque Crossley, and Gailen David*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| ASSOCIATION OF FLIGHT ATTENDANTS-CWA AFL-CIO, *et al.*, <br><br> Plaintiffs/Counterclaim Defendants, <br><br> v. <br><br> SKYWEST AIRLINES, INC., *et al.*, <br><br> Defendants/Counterclaim Plaintiffs. | **PLAINTIFFS' MOTION FOR PROTECTIVE ORDER PURSUANT F.R.C.P. 26(c)(1)(G)** <br><br><br> Case No.2:23-cv-00723-DBB-DBP <br> Judge David Barlow <br> Magistrate Judge Dustin B. Pead |

## I. GROUNDS FOR PROTECTIVE ORDER AND RELIEF SOUGHT

Pursuant to F.R.C.P. 26(c)(1)(G), Plaintiffs Association of Flight Attendants-CWA AFL-CIO, Shane Price, Tresa Grange, and Brandon Finley, and Counterclaim Defendants Jacque Crossley and Gailen David (collectively "Plaintiffs") respectfully move for entry of a protective order with respect to certain confidential commercial information relating to the AFA's organizing campaign to become the representative of the SkyWest Flight Attendants.

Plaintiffs seek an order protecting against disclosure of the following limited categories of documents and information:

- The names and personal identifying information of SkyWest Flight Attendants whose support for AFA has not been made public (except as to any individual names in any Parties' Initial Disclosures, which will be designated AEO).[1]

- National Mediation Board election authorization cards collected by AFA (as well as the names of signatories or number of cards).

- AFA financial information, outside the scope of the AFA's federally-filed financial reports (and those of its subsidiaries) or regarding financial support provided to other Plaintiffs.[2]

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this lawsuit to remedy violations of the Railway Labor Act, 45 U.S.C. § 151, *et seq.* ("RLA"), and the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 401, *et seq.* ("LMRDA"), by Defendants SkyWest Airlines, Inc. and the SkyWest Inflight Association ("SIA"). For several years, the AFA has been engaged in a campaign to enable SkyWest Flight Attendants to vote for a union representative in a democratic election under the RLA. That campaign involves SkyWest employees who have publicly identified themselves as AFA supporters, as well as many who, for reasons of their own, including fear of retaliation, have chosen not to go public with their support. As an integral part of that effort, the AFA and its supporters have been collecting "authorization cards" for submission to the National Mediation Board's ("NMB") in order to invoke its statutory representation dispute process under the RLA.

---

[1] Plaintiffs have produced the content of responsive communications among SkyWest Flight Attendants and Plaintiffs, but have redacted the names of those Flight Attendants whose support for the AFA is not public.
[2] The AFA has produced the federal "LM" Reports it (and its affiliates) filed with the U.S. Department of Labor as required by the LMRDA, as well as documents reflecting financial support to co-Plaintiffs.

Ex. D, ¶¶ 4-6.[3] Such cards are signed by SkyWest Flight Attendants and under NMB practice are treated as confidential and are not subject to disclosure to any party. 29 C.F.R. § 1208.4 (b) ("the NMB will treat as confidential evidence submitted in connection with the showing of interest in a representation dispute, including authorization cards and signature samples, and other personally identifying information received during an investigation").[4]

This request for a protective order is necessitated by certain of Defendants' discovery requests, which, either specifically or generally seek disclosure of these categories of information. The Requests at issue from SIA include: Interrogatory Nos. 9, 10, 12, 13, and 14; Requests for Production Nos. 1, 6, 13, 14, 15, 16, 19, 20, and 21. Exs. A-B (highlighted)). *E.g.*:

> Interrogatory No. 10: "identify each and every individual who, while, employed as a SkyWest Flight Attendant, is known by any of the Plaintiffs to have … been in any way involved with AFA or efforts to displace SIA as the labor representative." Ex. B, p. 6.

> Interrogatory No. 13: "Identify the number of AFA authorization cards signed by SkyWest flight attendants after August 9, 2023." Ex. B, p. 6.

> Document Request No. 15: "For the period beginning January 1, 2021 to the present, produce all Documents and Communications related to AFA's plan and/or campaign to replace SIA as the bargaining unit for SkyWest flight attendants". Ex. B, p. 7.

And the Requests at issue from SkyWest include: Requests for Production Nos. 5, 7, 10, and 15. Ex. C (highlighted). *E.g.*:

> Document Request No. 7: "All documents relating to efforts to displace SIA as the representative of SkyWest's flight attendants." Ex. C, p. 11.

---

[3] The facts herein are supported by the Declaration of Gailen David, filed herewith as Ex. D.
[4] The NMB has exclusive jurisdiction to resolve rail and airline employee union representation disputes. *AFA v. Delta Air Lines, Inc.*, 879 F.2d 906, 913 (D.C. Cir. 1989). When a labor organization presents a "showing of interest [*i.e.* authorization cards] from not less than 50 percent of the employees in the craft or class, " 45 U.S.C. § 152, Twelfth, the Board is "authorized to take a secret ballot of the employees involved … [to] insure the choice of representatives by the employees without interference". 45 U.S.C. § 152, Ninth.

3

Plaintiff Counsel's efforts to resolve these issues in conference with Counsel for Defendants SkyWest and SIA have been unsuccessful. Following an exchange of proposals by email, Plaintiff Counsel conferred with Counsel for Defendants SkyWest and SIA by teleconference on August 22, 2025. Counsel for Defendants SkyWest and SIA represented they are opposed to this Motion for a Protective Order.

### III.    ARGUMENT

#### A.  Legal Standard.

Pursuant to F.R.C.P. 26(c)(1)(G), "[t]he court may, for good cause, issue an order to protect a party or person from … undue burden or expense … [by] requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way".

In this Court, the party seeking a protective order must satisfy a three-factor test: 1) that "the information sought is a trade secret or other confidential … commercial information," 2) that disclosure of the information "might be harmful," and 3) that the harm "outweighs the need for access." *Emuveyan v. Ewing*, No. 219-CV-00616HCNDAO, 2021 WL 2582316, *1 (D. Utah June 23, 2021) (internal citation and quotation omitted). If satisfied, the burden then shifts to the party seeking the disclosure, to establish that "disclosure is relevant and necessary." *Id*.

The Court has considerable flexibility in considering these factors. *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 326 (10th Cir. 1981) ("It is within the sound discretion of the trial court to decide whether trade secrets are relevant and whether the need outweighs the harm of disclosure.").[5]

---

[5] Rule 26(c) sets no deadline by which the movant must file for a protective order. Here, Plaintiffs' Motion is timely as the Parties have been engaged in a meet and confer process

### B.  The Subject Information Is Confidential Commercial Information.

The three categories of information Plaintiffs seek to protect – the identities of non-public AFA supporters; NMB election authorization cards and personal information therein; and financial information beyond the AFA's LM Reports or financial support to Plaintiffs – is information of the kind that F.R.C.P. 26(c)(1)(G) is designed to protect.

To determine whether a particular type of information may qualify for protection under Rule 26(c)(1)(G), this Court considers: "(1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *Ivanti, Inc. v. Staylinked Corp.*, No. 219CV00075RJSJCB, 2021 WL 3406391, *2 (D. Utah Aug. 4, 2021).

All six factors favor a finding that the information at issue qualifies for protection:

(1) The identities of non-public AFA supporters are not known outside the AFA and its core supporters; NMB authorization cards are held in absolute confidence; and the AFA's finances are not known externally, except to the extent required by law. Ex. D, ¶¶ 7-9.

(2) Even within the AFA, only a small number of representatives or staff, have knowledge of or access to the information at issue. Ex. D, ¶ 7.

(3) Extensive measures are taken to guard the secrecy of the information. AFA informs Flight Attendants that their support for the campaign will be kept confidential via a privacy

---

required by that Rule, the discovery period remains open, and all Parties have granted each other numerous extensions of time to respond to discovery requests. *See* Dkt. 112-3.

policy on the campaign website, on authorization cards, and in personal communication. Non-public supporters seek to avoid engaging in AFA activity in the presence of SkyWest supervisors or SIA agents. The cards are kept strictly confidential. And the financial information outside the federal filings is limited to AFA's leadership and accounting department, except to the extent required by law. Ex. D, ¶¶ 7-8.

(4) The information is highly valuable. The identities of SkyWest Flight Attendants, their contact information and campaign activities, the NMB authorization card information, and the financial information regarding AFA's organizing efforts, are all critical to the effectiveness of the AFA campaign. Ex. D, ¶ 5.

(5) The AFA, and especially its volunteer supporters, have painstakingly invested time and energy over many years to identify, contact, and persuade SkyWest Flight Attendants potentially supportive of AFA to sign cards or otherwise support the campaign. Ex. D, ¶¶ 5-6.

(6) The information at issue cannot otherwise be obtained by Defendants. Ex. D, ¶ 7. Flight Attendants cannot be polled or surveilled about their union sympathies,[6] and another labor organization seeking to represent the Flight Attendants would need to begin its own campaign anew. NMB authorization cards are protected from disclosure by NMB's regulations, and AFA's financial information, outside its federal disclosures, is available only to AFA members upon specific showing under federal law, 29 U.S.C. § 431(c).

Courts have applied Rule 26(c)(1)(G) or otherwise denied requests for disclosure of the same or similar information. *See Mallick v. IBEW*, 749 F.2d 771, 785-86 (D.C. Cir. 1984) (under

---

[6] *See Key Airlines*, 13 NMB 153, 163-64 (1986) (interviewing employees to determine whether they support the union is impermissible under RLA); *Mercury Servs.*, 9 NMB 312, 323 (1982) (polling employees by carrier during campaign contributed to a per se finding of interference under RLA in the presence of other actions).

the LMRDA a request for financial information seeking "disclosure of organizing strategy, negotiating plans, or other secrets" can be refused); *Comm. on Masonic Homes of R.W. Grand Lodge, F. & A.M. of Pennsylvania v. N.L.R.B.*, 556 F.2d 214, 221 n.13 (3d Cir. 1977) (holding in FOIA case that the "interest in confidentiality which attaches to a union authorization card approaches that which surrounds the secret ballot in an election") (internal citation omitted); *Raymond v. Spirit AeroSystems Holdings, Inc.*, 2017 WL 6524841, *4 (D. Kan. 2017) (granting motion to quash subpoena where "requiring the union to open its files to the employer 'would be inconsistent with and subversive of the very essence of collective bargaining and the quasi-fiduciary relationship between a union and its members.'") (quoting *Berbiglia, Inc.*, 233 NLRB 1476, 1495 (1977)); *NetJets Aviation, Inc. v. NetJets Ass'n of Shared Aircraft Pilots*, No. 2:17-MC-00038-GCS, 2017 WL 3484101, *4 (S.D. Ohio Aug. 15, 2017), *aff'd* No. 2:17-MC-038, 2017 WL 6497104 (S.D. Ohio Dec. 19, 2017) (discovery of internal union message board communications appropriate only after employee names were redacted); *Kerns v. Caterpillar, Inc.*, 2008 WL 351233, *4 (M.D. Tenn. Feb. 7, 2008) (granting protective order regarding bargaining strategy).

The NMB and National Labor Relations Board ("NLRB") have issued similar relief. *Delta Air Lines*, 27 NMB 484, 503 (2000) ("The Board does not disclose the showing of interest because it is **confidential commercial information** supplied by applicants, and disclosure impairs both the ability of organizations to conduct campaigns and employee free choice.") (emphasis added); *Wright Elec., Inc.*, 327 NLRB 1194, 1195 (1999) ("The Board zealously seeks to protect the confidentiality interests of employees because of the possibility of intimidation by

employers who obtain the identities of employees engaged in organizing"), *enfd*. 200 F.3d 1162 (8th Cir. 2000).[7]

### C. Disclosure of the Information Would Harm Plaintiffs and AFA Supporters.

The disclosure of the information at issue would harm Plaintiffs, as well as non-party Flight Attendants supporting the AFA, and readily exceeds the standard that it only "might be harmful". Under the RLA, employees of air and rail carriers have the right to be free from interference in their selection of representative:

> Employees shall have the right to organize and bargain collectively through representatives of their own choosing … No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees … or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization.

45 U.S.C. 152, Fourth.

Disclosure of the information would harm individual Flight Attendants, Plaintiffs and non-parties, by attracting unwanted surveillance or interference with their employment as well as their protected organizing activities. Surveillance, polling, interrogation, or other means to disclose the sentiments of employees regarding their choice of representative has been found to constitute unlawful interference which chills activity protected by the Act.

Courts have long recognized the sensitivity of such information surrounding union organizing campaigns:

> [I]t is entirely plausible that employees would be "chilled" when asked to sign a union card if they knew the employer could see who signed. If so, this is a harm that could not easily be corrected. To order disclosure here would effectively do away with union cards as they are used now. … Solicitation of authorization cards

---

[7] Employees involved in a union campaign at air carriers, covered by the RLA, have no less interest in protecting their identities than employees at employers covered by the National Labor Relations Act, 29 U.S.C. §§ 151, *et seq.* ("NLRA").

>plays a vital role in organizational campaigns, and we cannot envision a workable substitute. Furthermore, union elections must be conducted by secret ballot. Whatever reasons and policies lie behind that would be directly undercut by forcing employees to acknowledge in public their support of the union, in order to be given the right to vote in secret for the union.

*Comm. on Masonic Homes*, 556 F.2d at 221 (denying employer's request for identities of union card signers under FOIA) (internal citation omitted). *American Airlines v. NMB*, 588 F.2d 863, 870-71 (2d Cir. 1978) ("the information sought directly affects the status of the union's effort to obtain majority support and ultimate certification. The Board has traditionally treated this information as confidential, and the union provides it under the express promise of confidentiality in the [NMB] regulations … [I]t seems apparent that the disclosure of this information … would adversely affect the union's competitive position").

In *Konop v. Hawaiian Airlines*, 302 F.3d 868, 884 (9th Cir. 2002), *cert. denied*, 537 U.S. 1193 (2003), the Ninth Circuit found that "employers are generally prohibited from engaging in surveillance of union organizing activities" and denied the employer's motion for summary judgment where the carrier accessed a restricted employee website which criticized the employer and incumbent union. *See also Key Airlines*, 13 NMB at 163-64; *Mercury Servs.*, 9 NMB at 323. Indeed, SIA has recently gone so far as to disqualify a Flight Attendant from participating in an election based on her signing an AFA authorization card. *Chavez-Deremer v. SIA*, Case No. 2:24-cv-956 (D. Utah), Dkt. 21 (SIA Answer to Secretary of Labor Complaint), ¶ 21. Plaintiffs' concern that AFA supporters will be targeted by Defendants for being "disloyal" or face other reprisals, including discipline or termination, is genuine. The risk to Flight Attendants is ongoing, as SkyWest and SIA could retaliate against them at any time in the course of their employment, including after this litigation has ended.

Disclosure of the information at issue here would also cause competitive harm to AFA and its supporters that far outweighs any probative value. *See Ivanti*, 2021 WL 3406391, *3. Disclosure would have a chilling effect on future communications with Flight Attendants, who would reasonably be concerned about retaliation. *See Comm. on Masonic Homes*, 556 F.2d at 221; *Raymond*, 2017 WL 6524841 at *4. The AFA has cultivated trusting relationships with SkyWest Flight Attendants, which will be impaired if their identities and activities are turned over to SkyWest and SIA. Ex. D, ¶¶ 9-11.

Additionally, disclosure of this information would harm Plaintiffs and non-party AFA supporters by infringing on their First Amendment associational privilege. Compelled disclosure will chill First Amendment rights by deterring association with the AFA due to fear of reprisal. *See NAACP v. Alabama*, 357 U.S. 449, 462, 466 (1958) (establishing associational privilege); *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987) (acknowledging application to discovery orders). The associational privilege has been found to extend to those who "participate in union organizing activities." *See Patterson v. Heartland Indus. Partners, LLP,* 225 F.R.D. 204, 206 (N.D. Ohio 2004) ("Employees who sign union authorization cards or otherwise participate in union organizing activities are one such group vulnerable to reprisals...They, therefore, are protected by the First Amendment associational privilege.") (internal citations omitted).

### D. The Harm To Plaintiffs Outweighs Defendants' Need for Access.

The harm that Plaintiffs and non-party AFA supporters would suffer from disclosure of the information at issue greatly outweighs any supposed need for the information by Defendants. Defendants cannot establish any "need" for the information in these categories to pursue their claims or to defend against any claim by Plaintiffs. In the motion to compel, SIA claims that "[w]hether a witness supports AFA is relevant to witness bias," Dkt. 130 at 9. But there is simply

no need to disclose the sentiments of hundreds or thousands of SkyWest's non-party employees in order to address that issue.

As established above, information relating to the identities of union supporters and the collection of authorization cards is AFA's commercial information, and for which there is a right to maintain confidentiality under the RLA. *See also* Ex. D, ¶¶ 10-11. Even in the NMB's election process, such information is not disclosed. *See Delta Air Lines*, 27 NMB at 503; *American Airlines v. NMB*, 588 F.2d at 871.

Whatever supposed interests Defendants may claim in seeking the names of non-public AFA supporters or in AFA's financial information, is outweighed by the AFA's interest in its carefully cultivated commercial information and those Flight Attendants' privacy interests.

### IV.    CONCLUSION

WHEREFORE, Plaintiffs respectfully request that this Court enter a protective order, pursuant to F.R.C.P. 26(c)(1)(G).

DATED: August 22, 2025

/s/ *John J. Grunert*
JEFFREY A. BARTOS, *pro hac vice*
JOHN J. GRUNERT, *pro hac vice*
Guerrieri, Bartos & Roma, P.C.
1717 K Street, NW, Suite 900
Washington, DC 20006
Telephone: (202) 624-7400
Email: jbartos@geclaw.com
Email: jgrunert@geclaw.com

SCOTT YOUNG (10695)
CHRISTOPHER W. DROUBAY (12078)
Spencer Fane LLP
10 Exchange Place, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 521-9000
rsyoung@spencerfane.com
cdroubay@spencerfane.com

11

JOSHUA SHIFFRIN, *pro hac vice*
GRACE RYBAK, *pro hac vice*
Bredhoff & Kaiser P.L.L.C.
805 15th Street NW, Suite 1000
Washington, D.C. 20005
Telephone: (202) 842-2600
jshiffrin@bredhoff.com
grybak@bredhoff.com

*Counsel for Association of Flight Attendants-CWA AFL-CIO, Shane Price, Tresa Grange, Brandon Finley, Jacque Crossley, and Gailen David*

## CERTIFICATION OF CONFERENCE

THIS CERTIFIES that on August 22, 2025, undersigned counsel conferred in good faith with Counsel for Defendant and Counterclaim Plaintiff SkyWest Inflight Association ("SIA") and Defendant and Counterclaim Plaintiff SkyWest Airlines, Inc. ("SkyWest"), and the Parties were unable to reach agreement.

    /s/ *John J. Grunert*
JOHN J. GRUNERT, *pro hac vice*
Guerrieri, Bartos & Roma, P.C.

## CERTIFICATION AS TO PAGE AND WORD LIMITATIONS

I, John J. Grunert, certify that this Motion for Protective Order contains 3,069 words and complies with DUCivR 7-1(a)(4).

    /s/ *John J. Grunert*
JOHN J. GRUNERT, *pro hac vice*
Guerrieri, Bartos & Roma, P.C.

## CERTIFICATE OF SERVICE

THIS CERTIFIES that on August 22, 2025, I electronically filed the foregoing Motion for Protective Order Pursuant to Fed. R. Civ. P. 26(c) with the Clerk of the Court by using the CM/ECF system, thereby providing service upon all parties.

    /s/ *John J. Grunert*
JOHN J. GRUNERT, *pro hac vice*
Guerrieri, Bartos & Roma, P.C.