SCOTT YOUNG (10695)
CHRISTOPHER W. DROUBAY (12078)
Spencer Fane LLP
10 Exchange Place, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 521-9000
rsyoung@spencerfane.com
cdroubay@spencerfane.com

JOSHUA SHIFFRIN, *pro hac vice*
GRACE RYBAK, *pro hac vice*
Bredhoff & Kaiser P.L.L.C.
805 15th Street NW, Suite 1000
Washington, D.C. 20005
Telephone: (202) 842-2600
jshiffrin@bredhoff.com
grybak@bredhoff.com

JEFFREY A. BARTOS, *pro hac vice*
JOHN J. GRUNERT, *pro hac vice*
Guerrieri, Bartos & Roma, P.C.
1717 K Street, NW, Suite 900
Washington, DC 20006
Telephone: (202) 624-7400
jbartos@geclaw.com
jgrunert@geclaw.com

*Counsel for Association of Flight Attendants-CWA AFL-CIO, Shane Price, Tresa Grange, Brandon Finley, Jacque Crossley, and Gailen David*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| ASSOCIATION OF FLIGHT ATTENDANTS-CWA AFL-CIO, *et al.*,<br><br>　　Plaintiffs/Counterclaim Defendants,<br><br>v.<br><br>SKYWEST AIRLINES, INC., *et al.*,<br><br>　　Defendants/Counterclaim Plaintiffs. | **PLAINTIFFS' RESPONSE IN OPPOSITION TO SIA'S MOTION TO COMPEL DISCOVERY**<br><br><br>Case No.2:23-cv-00723-DBB-DBP<br>Judge David Barlow<br>Magistrate Judge Dustin B. Pead |

Plaintiffs Association of Flight Attendants-CWA AFL-CIO ("AFA"), Shane Price, Tresa Grange, and Brandon Finley submit this Response in Opposition to Defendant SkyWest Inflight Association's ("SIA") Motion to Compel discovery responses pursuant to F.R.C.P. 37(a).

At issue are three narrow categories which Plaintiffs seek to protect from disclosure:[1]

---

[1] Plaintiffs' pending Motion for Protective Order pursuant to F.R.C.P. 26(c)(1)(G) further demonstrates why the information and documents at issue are entitled to protection from disclosure. *See* Dkt. 131.

- The names and personal identifying information of SkyWest Flight Attendants whose support for AFA has not been made public (except as to any individual names in any Parties' Initial Disclosures, which will be designated AEO).[2]

- National Mediation Board election authorization cards collected by AFA (as well as the names of signatories or number of cards).

- AFA financial information, outside the scope of the AFA's federally-filed financial reports (and those of its subsidiaries) or regarding financial support provided to other Plaintiffs.[3]

The foregoing information and documents being withheld by Plaintiffs are not relevant to any claim or defense in this action, constitute confidential commercial information under F.R.C.P. 26(c)(1)(G), and disclosure would interfere with the rights of SkyWest Flight Attendants under the Railway Labor Act 45 U.S.C. 151, *et seq*. ("RLA") and create harm greatly disproportionate to any possible benefit to this litigation.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

The AFA is engaged in an organizing campaign of the Flight Attendants employed by Defendant SkyWest Airlines, Inc. ("SkyWest"), with the public goal of using the procedures under the RLA as administered by the National Mediation Board ("NMB"), to bring about a secret ballot election.

The NMB has exclusive jurisdiction to resolve rail and airline employee union representation disputes. *AFA v. Delta Air Lines, Inc.*, 879 F.2d 906, 913 (D.C. Cir. 1989). When a labor organization presents a "showing of interest [*i.e.* authorization cards] from not less than 50 percent of the employees in the craft or class, " 45 U.S.C. § 152, Twelfth, the Board is

---

[2] Plaintiffs have produced the content of responsive communications among SkyWest Flight Attendants and Plaintiffs, but have redacted the names of those Flight Attendants whose support for the AFA is not public.

[3] The AFA has produced the federal "LM" Reports it (and its affiliates) filed with the U.S. Department of Labor as required by the LMRDA, as well as documents reflecting financial support to co-Plaintiffs.

"authorized to take a secret ballot of the employees involved … [to] insure the choice of representatives by the employees without interference,". 45 U.S.C. § 152, Ninth. "The courts have uniformly held that the validity of the showing of interest is for administrative determination and may not be litigated by ... either Employer or Union." *Tampa Airlines, S.A.*, 22 NMB 326, 329 (1995), *citing Air Canada v. NMB*, 478 F.Supp. 615, 618 (S.D.N.Y. 1979).

The AFA has been public regarding its goal of representing the SkyWest Flight Attendants, as have a number of core supporters. However, the great majority of AFA supporters among SkyWest's approximately 4,100 Flight Attendants and 500 probationary employees (SIA's Countercl. (Dkt. 74, ¶ 2)) have not chosen to make their support public. Ex. A, ¶ 4 (Decl. of Gailen David), filed herewith. Their decision to remain anonymous is protected by federal law. "[N]either party shall in any way interfere with, influence, or coerce the other in its choice of representatives." 45 U.S.C.A. § 152, Third.

> Employees shall have the right to organize and bargain collectively through representatives of their own choosing … No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees.

45 U.S.C. 152, Fourth.

It is well established that employer attempts to learn the identities of union supporters constitute unlawful interference under RLA Section 2, Third and Fourth (as under the NLRA's corresponding provision, 29 U.S.C. 158).[4] Employees are likely to be "chilled" in the exercise of

---

[4] While the RLA and NLRA are not equivalent, their respective provisions barring undue employer influence of employees have been interpreted as meaning "pretty much the same thing." *US Airways, Inc. v. NMB,* 177 F.3d 985, 991 (D.C. Cir. 1999). Despite the statutory differences, "carefully drawn analogies from the federal common labor law developed under the NLRA may be helpful in deciding cases under the RLA." *Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants,* 489 U.S. 426, 432-34 (1989) (applying NLRA precedents to interpret RLA Section 2, Fourth).

their RLA protected activity if they believe they are being surveilled. *Wright Electric, Inc.*, 327 NLRB 1194, 1195 (1999) ("It is axiomatic that 'an employer who seeks to obtain the identities of employees who sign authorization cards ... violates the Act.'") (internal citation omitted).

SIA's Motion spends pages reciting its version of events surrounding SIA's August 2023 internal election, Price and Grange's supposed acts, and the related fallout. However, among those allegations, the only salient point as to this discovery dispute is that Plaintiffs have already provided full responses relating to the August 2023 SIA election and the access of information on SIA's website. In particular, Plaintiffs' Interrogatory Answers of May 2025 provided a comprehensive list of the dates, times, means, and names of those who accessed or transmitted SIA information, as well as each instance in which any Plaintiff further transmitted such information, if at all. Also addressed is how the information was used – *i.e.*, by Price and Grange to blow the whistle on SIA.[5] Instead of focusing on those responses, SIA now attempts to reveal confidential information with little to no bearing on the claims and defenses at issue here.

Following conferences and the service of amended discovery responses, and an amended privilege log, the scope of issues in dispute in the present motion is now limited to the three narrow categories defined above, which are also the subject of a pending Motion for a Protective Order. Dkt. 131. SIA claims the information in dispute is relevant and not protected. We disagree as set forth below.

II. **LEGAL STANDARD**

---

[5] The version of Plaintiffs' Privilege Log which SIA attached to its Motion to Compel, from March 2025, is outdated. Dkt. 130-2. Plaintiffs' had already provided SIA with an updated Privilege Log on August 11, 2025, before SIA filed its Motion. SIA's arguments regarding Plaintiffs' Privilege Log should be disregarded as the version referenced is not the operative document and SIA does not address Plaintiffs' August 2025 Privilege Log.

4

F.R.C.P. 26(b)(1) provides in part that parties may obtain discovery on any nonprivileged matter "that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action … and whether the burden or expense of the proposed discovery outweighs its likely benefit." While relevancy is broadly construed, it is not without limits.

> When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.

*USA v. XClear, Inc.*, 2:21-cv-640 RJS DBP, 2022 WL 5246717, *3 (D. Utah Oct. 6, 2022) (internal citation omitted). Conversely, "when relevancy is not apparent on its face, the requesting party has the burden to show the relevancy of the request." *Id*. citing *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 17-md-2785-DDC-TJJ, 2018 WL 3620766, *2 (D. Kan. July 30, 2018).

### III.   ARGUMENT

The three narrow issues in dispute here, for which Plaintiffs object to providing information or documents, are:

- The names and personal identifying information of SkyWest Flight Attendants whose support for AFA has not been made public (except as to any individual names in any Parties' Initial Disclosures, which will be designated AEO).

- National Mediation Board election authorization cards collected by AFA (as well as the names of signatories or number of cards).

- AFA financial information, outside the scope of the AFA's federally-filed financial reports (and those of its subsidiaries) or regarding financial support provided to other Plaintiffs.

The foregoing categories all concern the AFA organizing campaign and have no bearing whatsoever on SIA's claims related to supposed unlawful access of SIA's confidential information.

**A. The Information Sought Is Not Relevant.**

SIA fails to meet even the initial minimal burden to establish the relevance of the information at issue – identities of union supporters, the authorization cards, and AFA campaign finances. SIA offers undeveloped conclusory reasons which do little more than reveal that they are actually an attempt to interfere with employee free choice under the RLA.

1.  With respect to SIA's demand for NMB authorization cards and names of all AFA supporters, SIA makes the following claims as to relevance:

- "Whether a witness supports AFA is relevant to witness bias." Dkt. 130 at 9.

Plaintiffs have already produced communications among Plaintiffs, with only the personal identifying information of non-public AFA supporters redacted, and have also agreed to produce unredacted versions with AEO designation regarding any individual names in any Party's Initial Disclosures. This covers all actual or potential witnesses. Therefore, on the point of "bias" the issue is really the cards alone. And it is clear that the wholesale production of confidential cards signed by Flight Attendants who will never be witnesses is plainly unjustified under this rationale.

- "Information about authorization cards is relevant to show whether AFA gained an advantage (thus harming SIA) through the misuse of SIA's information and the resulting fallout." *Id*.

The SIA information referred to is that which SIA posted on its website in 2023 and which Price located. Even if Plaintiffs had not already provided in Interrogatory Answers ample detail of what happened with that information, the NMB authorization cards would not provide

6

any information about the access of SIA's website or use of information therein. It is simply implausible that production of the cards would lead to SIA's discovering further instances of "use" by Plaintiffs of the SIA information.

- "AFA supporters, especially "public" supporters and those who checked the "I want to help talk to my co-workers about AFA-CWA" box, are likely to have information about AFA's use of the confidential information." *Id*.

The contention is baseless. Plaintiffs' Interrogatory Answers already provided a complete list of individuals who accessed, received, or sent the SIA website information, as well as each instance of access or transmission. SIA has not explained why AFA supporters, public or otherwise, would be "*likely* to have information about the AFA's *use* of the … information". There is simply no plausible correlation between checking a "public supporter box" on a card and having inside knowledge of the AFA's organizing activities. The AFA has identified in detail every person it knows who saw or used the "confidential information" SIA alludes to. The sweeping request for the confidential NMB authorization cards bears no relationship to any claim or defense.

2. With respect to the demand for AFA financial information, SIA makes the following claims as to relevance:

- "Whether the Plaintiff FAs have received financial support from AFA is relevant to bias." *Id*.

Plaintiffs did not object to providing such information and have in fact produced responsive documents (other than documents concerning legal expenses) even prior to SIA's Motion. SIA makes no showing that further information is relevant to any issue.

- "AFA's expenditures in support of its efforts to displace SIA is relevant to AFA's motive in improperly taking and using SIA's information." *Id*.

7

SIA's statement is again entirely conclusory and fails to meet its burden of establishing relevance to any claim or defense. It is undisputed that AFA is engaged in an organizing campaign and has invested resources in furtherance of that goal. There is no allegation of financial impropriety by the AFA. The details of AFA's expenditures on issues unrelated to SIA's claim that AFA "took" or "used" any SIA information would shed no light on any Party's claims or defenses.

The information sought by SIA's Motion is not relevant to any Party's claim or defense and the Motion should therefore be denied on this ground. As we show below, and more fully in our pending Motion for a Protective Order (Dkt. 131), any marginal relevance is far outweighed by the harm to AFA and others which would be caused by the disclosures SIA seeks.[6]

### B.  The Discovery Requests Seek Confidential Commercial Information.

As set forth in our pending Motion for a Protective Order (Dkt. 131), the Motion to Compel should be also denied because the requested information – identities of union supporters, authorization, and AFA campaign finances – qualify as confidential commercial information under F.R.C.P. 26(c)(1)(G).[7]

This Court considers six factors to determine if a particular type of information qualifies for protection under Rule 26(c)(1)(G), *see Ivanti, Inc. v. Staylinked Corp.*, No. 2:19-CV-00075

---

[6] SIA further claims that Plaintiffs sought to "obtain SIA's confidential information and use it against SIA and for AFA's benefit," engaged in "weaponizing that information and subsequent events to aid AFA's campaign," and that their "actions contributed to SIA's elections being uncertifiable." Dkt. 130 at 4-5. These conclusory assertions, which Plaintiffs deny, are unrelated to this Motion to Compel – SIA neither links them with particular Requests nor uses them to establish relevance.

[7] Plaintiffs assert that AFA may not make this argument since it couched its objections in terms of RLA protected activity rather than "commercial information." As the NMB has held, however, authorization cards are "confidential commercial information." *Delta Air Lines*, 27 NMB 484, 501 (2000).

RJS JCB, 2021 WL 3406391, *2 (D. Utah Aug. 4, 2021), all of which support denial of SIA's motion:

(1) The identities of non-public AFA supporters are not known outside the AFA and its core supporters; NMB authorization cards are held in absolute confidence; and the AFA's finances are not known externally, except to the extent required by law. Ex. A, ¶¶ 7-9.

(2) Even within the AFA, only a small number of representatives or staff, have knowledge of or access to the information at issue. Ex. A, ¶ 7.

(3) Extensive measures are taken to guard the secrecy of the information. AFA informs Flight Attendants that their support will be kept confidential, including via a privacy policy, non-public AFA supporters seek to avoid disclosing themselves to SkyWest and SIA, the cards and related information such as the total number of cards, are kept strictly confidential, and AFA's financial information outside its federal LMRDA filings is limited internally to those with a business need to know. Ex. A, ¶¶ 7-8.

(4) The information is highly valuable. The identities of SkyWest Flight Attendants, their contact information and campaign activities, the authorization cards, and the financial information regarding AFA's organizing efforts, are critical to the effectiveness of the AFA campaign. Ex. A, ¶ 5.

(5) The AFA, and its volunteer supporters, have painstakingly invested time and energy over many years to identify, contact, and persuade SkyWest Flight Attendants to sign cards and support the campaign. Ex. A, ¶¶ 5-6.

(6) The information at issue cannot otherwise be obtained by Defendants. Flight Attendants cannot be polled about their union sympathies,[8] authorization cards are protected from disclosure by NMB's regulations, and AFA's financial information, outside its federal disclosures, is available only to AFA members upon specific showing under federal law, 29 U.S.C. § 431(c). Ex. A, ¶ 7.

The NMB has:

> maintained a policy of not disclosing the showing of interest because *it is confidential commercial information* supplied by the union, the disclosure of which would severely impair both the ability of the union to conduct an organizational campaign and the freedom of the employees to make a choice as to representation free of any carrier influence or interference. (emphasis added).

*Eastern Airlines, Inc./Cont'l Airlines, Inc. & Cont'l Airlines Holdings, Inc.*, 17 NMB 432, 436 (1990); *see also American Airlines, Inc. v. NMB*, 588 F.2d 863 (2d Cir. 1978) (upholding NMB non-disclosure policy in FOIA action).

Attempts to obtain authorization cards or the identities of union supporters are routinely denied. In *Wright Electric, Inc., v. N.L.R.B.*, 200 F.3d 1162 (8th Cir. 2000), the Court analyzed discovery requests for authorization cards in a state court suit. The union objected, and filed NLRB charges against the employer. The Eighth Circuit found that the very attempt to obtain the cards constituted independent interference with protected activity. *Id*. at 1166-67. "[T]o allow an employer with no overriding business interest to obtain such protected information indirectly through litigation tactics (rather than directly through surveillance or interrogation), would violate the purpose and meaning of the Act … it is unlawful under § 8(a)(1) of the Act for an employer to discover or attempt to discover the identities of employees who have signed union

---

[8] *See Key Airlines*, 13 NMB 153, 163-64 (1986) (interviewing employees to determine whether they support union is impermissible under RLA); *Mercury Servs.*, 9 NMB 312, 323 (1982) (polling employees contributed to finding of interference under RLA).

authorization cards"). *Id*. at 1167. *See also Whole Foods Mkt., Inc. v. Savannah Kinzer*, NLRB No. 01-CA-288032, 2024 WL 1603006 (NLRB Apr. 11, 2024) (redaction of employee names).[9]

Similarly, disclosure of financial information is likely to result in harm to the AFA campaign, by allowing Defendants to track the AFA's expenditure of resources and craft precise responses, far disproportionate to any information of value to this action that SIA would gain.

SIA contends that Plaintiffs' objections can be resolved by limiting review of this sensitive material to "Attorneys' Eyes Only." This approach is manifestly insufficient. Compelled production of irrelevant authorization cards will send a clear message to SkyWest Flight Attendants that their confidential support for union representation has been exposed to both SIA and their employer, SkyWest. The well-recognized chilling effect of such disclosure would not be ameliorated by such a limitation, and AEO designation would still allow Counsel to guide their clients' responses to organizing activity and NMB proceedings.

## IV. CONCLUSION

For the foregoing reasons, and as asserted in Plaintiffs' Motion for Protective Order, the Court should deny SIA's Motion to Compel discovery.

DATED: August 25, 2025

/s/ *John J. Grunert*
JEFFREY A. BARTOS, *pro hac vice*
JOHN J. GRUNERT, *pro hac vice*
Guerrieri, Bartos & Roma, P.C.
1717 K Street, NW, Suite 900
Washington, DC 20006
Telephone: (202) 624-7400
Email: jbartos@geclaw.com
Email: jgrunert@geclaw.com

SCOTT YOUNG (10695)
CHRISTOPHER W. DROUBAY (12078)

---

[9] SIA should not be heard to distinguish these cases on the ground that it is not the employer. SkyWest provides funding to SIA (Dkt. 73, ¶28 (SkyWest Answer); Dkt. 74, ¶28 (SIA Answer)), and any information produced in this litigation will be equally available to SkyWest as a party.

11

Spencer Fane LLP
10 Exchange Place, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 521-9000
rsyoung@spencerfane.com
cdroubay@spencerfane.com

JOSHUA SHIFFRIN, *pro hac vice*
GRACE RYBAK, *pro hac vice*
Bredhoff & Kaiser P.L.L.C.
805 15th Street NW, Suite 1000
Washington, D.C. 20005
Telephone: (202) 842-2600
jshiffrin@bredhoff.com
grybak@bredhoff.com

*Counsel for Association of Flight Attendants-CWA AFL-CIO, Shane Price, Tresa Grange, Brandon Finley, Jacque Crossley, and Gailen David*

## CERTIFICATION AS TO PAGE AND WORD LIMITATIONS

I, John J. Grunert, certify that this Opposition to SIA's Motion to Compel contains 3,092 words and complies with DUCivR 7-1(a)(4).

          /s/ *John J. Grunert*
          JOHN J. GRUNERT, *pro hac vice*
          Guerrieri, Bartos & Roma, P.C.

## CERTIFICATE OF SERVICE

THIS CERTIFIES that on August 25, 2025, I electronically filed the foregoing Response In Opposition to SIA's Motion to Compel with the Clerk of the Court by using the CM/ECF system, thereby providing service upon all parties.

          /s/ *John J. Grunert*
          JOHN J. GRUNERT, *pro hac vice*
          Guerrieri, Bartos & Roma, P.C.