Gregory M. Saylin
Emily T. Howe
HOLLAND & HART LLP
222 South Main St., Suite 2200
Salt Lake City, UT 84101
(801) 799-5973
gmsaylin@hollandhart.com
ethowe@hollandhart.com

Douglas W. Hall (*pro hac vice*)
Thomas R. Chiavetta (*pro hac vice*)
Bayley F. Johnson (*pro hac vice*)
JONES DAY
51 Louisiana Ave N.W.
Washington, DC 20001
(202) 879-3939
dwhall@jonesday.com
tchiavetta@jonesday.com
bfjohnson@jonesday.com

*Attorneys for Defendant*
*SkyWest Airlines Inc.*

Patricia T. Stambelos (*pro hac vice*)
STAMBELOS LAW OFFICE
543 Country Club Dr., Suite B209
Simi Valley, CA 93065
(805) 578-3474
patricia@patriciastambelos.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ASSOCIATION OF FLIGHT ATTENDANTS; AFL-CIO, SHANE PRICE, TRESA GRANGE; and BRANDON FINLEY;<br><br>    Plaintiffs,<br><br>v.<br><br>SKYWEST AIRLINES INC.; SKYWEST INFLIGHT ASSOCIATION;<br><br>    Defendants. | **SKYWEST AIRLINES INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR PROTECTIVE ORDER**<br><br>Civil No. 2:23-cv-00723-DBB-DBP<br><br>Judge David Barlow<br>Magistrate Judge Dustin B. Pead |

Plaintiffs Association of Flight Attendants-CWA AFL-CIO ("AFA"), Shane Price, Tresa Grange, and Brandon Finley, and Counterclaim Defendants Jacque Crossley and Gailen David (collectively "Plaintiffs") have moved for a protective order seeking to prevent disclosure of the following categories of documents and information: (1) "the names and personal identifying information of SkyWest Flight Attendants whose support for AFA has not been made public (except as to any individual names in any Parties' Initial Disclosures, which will be designated AEO)"; (2) "National Mediation Board election authorization cards collected by AFA (as well as the names of signatories or number of cards)"; and (3) "AFA financial information, outside the scope of the AFA's federally-filed financial reports (and those of its subsidiaries) or regarding financial support provided to other Plaintiffs." (ECF No. 131.)  Defendant SkyWest Airlines Inc. ("SkyWest") opposes this motion.  Plaintiffs' protective order would deprive SkyWest of clearly relevant information, impairing its ability to defend itself against Plaintiffs' claims and to prosecute its own counterclaims, all in the name of preventing harm not shown to be likely to occur otherwise.  Plaintiffs have not met their burden of proving that such an order is necessary or appropriate, and their motion should be denied.

## FACTUAL BACKGROUND

Defendant SkyWest Inflight Association ("SIA") represents SkyWest's flight attendants, and has done so for decades.  SkyWest flight attendants elect SIA's officers, and SIA negotiates wages, benefits, and other terms on behalf of the flight attendant group as a whole.  A collective bargaining agreement between SkyWest and SIA establishes those terms, and governs the relationship between the two entities.

The Railway Labor Act, 45 U.S.C. § 151 *et seq.*, governs the labor relations of air carriers like SkyWest, and includes procedures by which one group seeking to represent employees may displace the incumbent. However, in order for that to happen, the competing entity must first demonstrate that at least 50% of the individuals in the craft or class have expressed interest in being represented by that group, and must then win an election.

AFA has long sought to represent SkyWest's flight attendants but has long been unable to garner the support necessary to do so. Frustrated by its failures, in October 2023, AFA filed this lawsuit alleging that SIA is essentially a sham representative that functions as an extension of management. In support of this allegation – which SkyWest denies – AFA claims that SIA's funding arrangement violates the RLA. *See* ECF No. 68 (Supp. Compl.) ¶ 28. Specifically, AFA takes exception to the fact that, rather than collecting dues from its members, SIA has negotiated with SkyWest to cover certain expenses. *Id.* This "financial support," AFA claims, compromises SIA's independence.

AFA also claims that SkyWest has interfered with AFA's organizing campaign by doing things which, AFA says, betray favoritism towards SIA. In particular, AFA alleges that "[o]n about April 26, 2024, SkyWest Flight Attendants in support of the AFA's organizing campaign began using [SkyWest] crew rooms" to advocate for AFA, and that, in response, "SkyWest management or agents thereof have informed the AFA advocates that they may not display AFA signage, literature, or other promotional materials, including the display of materials on tabletops, and surveilled and interfered with conversations between the AFA advocates and Flight Attendants." (*Id.* ¶¶ 60-61.) AFA does not identify these "AFA advocates."

3

Separate and apart from the claims pled by AFA, SkyWest has asserted counterclaims against some of the Plaintiffs for their involvement in efforts to disrupt SIA's August 2023 election.  In particular, two months before that election, Plaintiff Price hacked into a website containing names, employee identification numbers, and voting credentials for all of SkyWest's flight attendants – approximately 4,000 people – and later publicized how to access that information in a video titled, "How to Hack the Election" (a video which fellow Plaintiff Grange then posted on Facebook).  Price and another now-former flight attendant also used that information to access and/or cast ballots, undermining the integrity of the election and necessitating a re-run.  Following an investigation, SkyWest terminated Price and Grange's employment (as well as the employment of the other employee who participated in the fraud), and Plaintiffs now claim as part of this lawsuit that those termination decisions were retaliatory.

Against this backdrop, SkyWest has pursued discovery from AFA regarding efforts to disrupt the August 2023 election; AFA's use or attempted use of crew rooms; AFA's efforts to displace SIA as the representative of SkyWest's flight attendants; and payments made by other carriers to or on behalf of AFA or any of its officers.  All of these topics are fair game.  The election fraud is the subject of SkyWest's counterclaims.  AFA itself has put the alleged crew room incidents at issue by using them as a basis to assert that SkyWest has unlawfully interfered with AFA advocacy efforts.  AFA's organizing campaign bears directly on AFA's motive for bringing this lawsuit.  And SkyWest maintains that some if not all of the SIA-related expenses reimbursed by the Company are comparable to payments made by other carriers to AFA which AFA would presumably maintain are lawful.  AFA cannot credibly claim that these payments

4

undermine SIA's legitimacy if, in fact, AFA or its officers are receiving similar payments from other carriers.

AFA does not claim that any and all discovery regarding these topics is improper. Nevertheless, by moving for a protective order, AFA seeks to control the narrative regarding each of these issues, and to cut off discovery of important (and, for AFA, potentially embarrassing) information bearing directly on the claims and defenses in this lawsuit. AFA's motion for a protective order should be denied. Initially, at least when it comes to AFA's "financial information," AFA's motion for a protective order is premature. The parties to date have been able to resolve at least some of their discovery disputes without involving the Court, and that process should be allowed to continue to play out. It should not be abandoned in favor of a blanket order like the one Plaintiffs seek.

Turning to the merits, Plaintiffs have not met their burden of establishing that a protective order is necessary. Their argument that disclosure would be harmful is entirely speculative. Plaintiffs also fail to establish that their own privacy interests outweigh Defendants' need for the information. And, in fact, two of the three categories of information which AFA seeks to designate as off-limits – the "names . . . of SkyWest flight attendants whose support for AFA has not been made public" and "AFA financial information" – are overly broad and vague, creating the potential for abuse, and depriving SkyWest of information necessary to prosecute its claims and establish its defenses. AFA's motion for a protective order should be denied.

## I.    PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER SHOULD BE DENIED

A court may, "for good cause, issue an order . . . requiring that a trade secret or other confidential research, development or commercial information not be revealed or be revealed

only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). "Where trade secrets or other confidential commercial information is involved, the court will balance the risk of disclosure to competitors against the risk that a protective order will impair prosecution or defense of the claims." *Applied Predictive Techs., Inc. v. MarketDial, Inc.*, No. 2:19-cv-496, 2024 U.S. Dist. LEXIS 31677, at *6 (D. Utah Feb. 23, 2024) (quoting *Mitchell Int'l, Inc. v. HealthLift Pharm. Servs., LLC*, No. 2:19-cv-637, 2020 U.S. Dist. LEXIS 91747, at *1 (D. Utah May 26, 2020); *see also Centurion Indus. v. Steurer*, 665 F.2d 323, 325 (10th Cir. 1981) (no absolute privilege for trade secrets and similar confidential information). The party seeking the protective order bears the burden of showing good cause for it. *Mitchell*, 2020 U.S. Dist. LEXIS 91747, at *3.

### A.    Plaintiffs' Motion for a Protective Order is Premature As It Relates to AFA's Financial Information

Plaintiffs' motion for a protective order appears to have been prompted by SIA's motion to compel certain discovery, including certain financial information (ECF No. 130). However, the financial information sought by SIA – evidence regarding AFA's financial support for the other plaintiffs and money spent by AFA on its organizing campaign – is different than the financial information sought by SkyWest (information regarding payments made to AFA and its officers by other carriers). Plaintiffs have put this information directly at issue in the case by claiming SkyWest's reimbursements to SIA violate the RLA. Yet, Plaintiffs' proposed protective order – in which they seek to withhold "financial information" generally – is potentially broad enough to encompass both types of information. The parties have not yet exhausted the meet-and-confer process as it pertains to the payments about which SkyWest seeks discovery. Accordingly, to the extent Plaintiffs' proposed protective order is intended to reach those payments, it is premature.

**B.      Plaintiffs Have Not Satisfied the Requirements Necessary to Obtain a Protective Order**

As the party seeking to prevent disclosure, Plaintiffs bear the burden of proof.  *See*

*Mitchell*, 2020 U.S. Dist. LEXIS 91747, at *3.  They have not satisfied their burden.

   1.      Plaintiffs have not shown that the information that they seek to withhold is confidential commercial information.

Plaintiffs argue that the information they seek to withhold is confidential commercial

information within the meaning of Fed. R. Civ. P. 26(c)(1)(G).  That is not so.  "Rule

26(c)(1)(G) is limited to commercial information that has competitive significance."  *In re*

*Violation of Rule 28(D)*, 635 F.3d 1352, 1360 (Fed. Cir. 2011); *see also* Moore's Federal

Practice § 26.105 ("Rule 26(c)(1)(G) has been interpreted to protect from disclosure material that

would harm the disclosing party by placing it at a commercial disadvantage.").  None of the

information that Plaintiffs seek to withhold qualifies as such.

Plaintiffs maintain that "[c]ourts have applied Rule 26(c)(1)(G) or otherwise denied

requests for disclosure of the same or similar information."  (Pl. Br. 6.)  However, of the cases

cited, only one – *Kerns v. Caterpillar, Inc.*, No. 3:06-cv-1113, 2008 WL 351233, at *4 (M.D.

Tenn. Feb. 7, 2008) – involved Fed. R. Civ. P. 26(c)(1)(G), and the information protected in that

case – documents regarding collective bargaining strategy – is unlike the information at issue

here.[1]  The cases are also distinguishable on other grounds.  None of the cases involve financial

---

[1]  Plaintiffs say that the Third Circuit has held that the "interest in confidentiality which attaches to a union authorization card approaches that which surrounds the secret ballot in an election" (Pl. Br. 7), but that is not so.  The language quoted appears in a footnote, and the Third Circuit was merely repeating something that a district court had "mentioned" elsewhere; that was not the Court's holding.  *See Comm. on Masonic Homes of R.W. Grand Lodge v. NLRB*, 556 F.2d 214, 221 n.13 (3d Cir. 1977).

information remotely like the information sought by SkyWest. *Mallick* involved a request by a retired union member for information related to fees associated with the settlement of a lawsuit;[2] *Raymond* involved requests for union-member communications regarding an earlier round of lay-offs;[3] and *NetJets* involved communications on an internal union message board.[4] Moreover, although the *NetJets* court ordered disclosure of those communications only after employee names were redacted, that case does not support the Court doing the same here. *NetJets* was a single-plaintiff discrimination case, and, in that context, NetJets did not need to know the names of individuals who had posted on internal union message boards; the substance of those communications was sufficient. Here, however, that is not so: AFA's redaction of employee names would impair SkyWest's ability to prosecute and defend the claims in this action. Plaintiffs have not shown that doing so is warranted, or that the information they seek to withhold qualifies for this extraordinary treatment.

 2.     Plaintiffs have not shown that disclosure of the information would be harmful.

To obtain a protective order, the party requesting it must show that disclosure would be harmful. *See Applied Predictive Techs., Inc.*, 2024 U.S. Dist. LEXIS 31677, at *6. Plaintiffs have not done so. Initially, none of the arguments that Plaintiffs make in this regard concern any of AFA's financial information, let alone the specific type of financial information pursued by SkyWest. That alone is grounds to deny the motion as to that specific category.

---

[2] *See Mallick v. IBEW*, 749 F.2d 771 (D.C. Cir. 1984).
[3] *See Raymond v. Spirit AeroSystems Holdings, Inc.*, 2017 WL 6524841 (D. Kan. 2017).
[4] *See NetJets Aviation, Inc. v. NetJets Ass'n of Shared Aircraft Pilots*, No. 2:17-cv-38, 2017 WL 3484101 (S.D. Ohio Aug. 15, 2017).

And, even with respect to those categories addressed by Plaintiffs, they do not satisfy their burden. Plaintiffs' claim that disclosure would be harmful is entirely speculative. They suggest (Pl. Br. 9-10), for example, that SkyWest could retaliate against employees who support AFA but do not provide any examples of SkyWest doing so.[5] *Cf. NetJets Aviation, Inc. v. NetJets Ass'n of Shared Aircraft Pilots*, No. 2:17-cv-38, 2017 WL 3484101, at *3 (S.D. Ohio Aug. 15, 2017) (ordering production of internal union communications where there was "no basis to conclude that [the air carrier] s[ought] the requested discovery in pursuit of improper surveillance or eavesdropping").

AFA also asserts that disclosure would cause "competitive harm to AFA and its supporters," but that claim is premised on the notion that any involuntary disclosure of AFA supporters would necessarily "have a chilling effect on future communications with Flight Attendants." (Pl. Br. 10.) AFA has not shown that to be true or even likely. In fact, the only evidence cited for the assertion is AFA organizer Gailen David's declaration which itself is entirely speculative. *See, e.g.*, ECF No. 131-4 (David Decl.) ¶ 11 (testifying that "[m]any Flight Attendants have . . . support[ed] the AFA campaign with an expectation of privacy"; that "[a]ny trust that the AFA has cultivated with the Flight Attendants could be lost" if their names or other information is disclosed; and that "[t]he loss of trust will likely cause Flight Attendants to

---

[5] To be sure, Plaintiffs allege in their Complaint (but not in their motion) that SkyWest's termination of Price and Grange was motivated by "anti-union animus." However, Plaintiffs concede that another employee who "has been and is an active advocate for a union representation election" – Plaintiff Finley – remains employed and in good standing (First Supp. Compl. ¶ 11), and do not claim that any of the other "Base Advocates" who have publicly supported AFA have been disciplined or terminated as a result. *See* ECF No. 131-4 (David Decl.) ¶ 4. This strongly suggests that Price and Grange were not terminated because of their support for AFA but rather because of misconduct, as SkyWest has said all along.

9

decrease or cease communicating with the AFA, or with each other about organizing").  It does not satisfy Plaintiff's burden.

Lastly, Plaintiffs allege that disclosure would harm them "by infringing on their First Amendment associational privilege."  (Pl. Br. 10.)  However, in order for the privilege to apply, Plaintiffs must first demonstrate that disclosure would have a chilling effect on membership.  *See In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470, 490-92 (10th Cir. 2011).  Plaintiffs have not done so.  Moreover, this privilege is not absolute, and at times must give way to competing interests.  *See, e.g.*, *NAACP v. State of Ala.*, 357 U.S. 449, 462-63 (1958) (associational privilege can be overcome by showing compelling need for information).  This is precisely one of those times.  Plaintiffs' invocation of the privilege is insufficient in and of itself to justify a protective order.

3.       Plaintiffs have not shown that any harm associated with disclosure outweighs Defendants' need for the information.

To obtain a protective order, the party seeking it must also show that the harm associated with disclosure outweighs the need for access.  *See Applied Predictive Techs., Inc.*, 2024 U.S. Dist. LEXIS 31677, at *6.  Plaintiffs' motion fails that part of the test, too.  Once again, Plaintiffs' arguments are wholly conclusory.  They assert (Pl. Br. 10-11), for example, that "Defendants cannot establish any 'need' for the information," but that is simply false.  AFA's financial information – and, in particular, payments by other carriers to AFA and/or AFA-affiliated officials – are directly relevant to AFA's claim that comparable expense reimbursements from SkyWest to SIA render SIA a sham representative and violate the RLA.  SkyWest is entitled to full discovery on that issue.

SkyWest is likewise entitled to explore whether and to what extent AFA was involved in efforts to disrupt SIA's August 2023 election; Plaintiffs' request to protect "[t]he names and personal identifying information of SkyWest Flight Attendants whose support for AFA has not been made public" could prevent SkyWest from doing so.  If, in fact, AFA knew of or was involved in those efforts – as SkyWest believes to be the case – then presumably AFA communicated with certain SkyWest flight attendants about it.  However, if the protective order were granted, Plaintiffs could either withhold those communications entirely or redact them in a way that makes it impossible to question anyone other than an AFA official themselves about AFA's knowledge or involvement.  Either way, AFA gets to control the narrative – precisely AFA's goal.

Nor is Plaintiffs' supposed concession – a recognition that the blanket order preventing disclosure of certain individuals' names and identifying information would not apply "to any individual names in any Parties' Initial Disclosures" – sufficient to prevent this harm.  Parties are not required to disclose everyone who has relevant, discoverable knowledge; they need only disclose the names of witnesses whose testimony they "may use to support [their] claims or defenses."  *See* Fed. R. Civ. P. 26(a)(1)(A)(i).  Accordingly, AFA could decide not to name someone whom AFA knows has knowledge or information relevant to the claims or defenses, and SkyWest – if Plaintiffs get their way – would be none the wiser.

The same is true of Plaintiffs' request to protect AFA's "financial information" – a vague description that could cover almost anything related in any way to AFA's finances.  Plaintiffs try to make this request more palatable by excluding from its scope "AFA's federally-filed financial reports (and those of its subsidiaries)," but SkyWest is entitled to explore whether those reports

11

contain all of the payments potentially relevant to this case.  It is not required to simply take AFA's word for it.

In closing, it is important to note that denying Plaintiffs' motion will not leave any truly sensitive information unprotected.  The Court has already entered its Standard Protective Order (*see* ECF No. 71), and Plaintiffs have not shown that those safeguards are insufficient.  Their request for a much broader protective order should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for a protective order.

DATED this 12th day of September, 2025.

HOLLAND & HART LLP


*/s/ Emily Howe*
Gregory M. Saylin
Emily T. Howe

JONES DAY
Douglas W. Hall
Thomas R. Chiavetta
Bayley F. Johnson

STAMBELOS LAW OFFICE
Patricia T. Stambelos

*Attorneys for Defendant SkyWest Airlines Inc.*


## **Word Count Certification**

I, Emily Howe, certify that SkyWest Airlines Inc.'s Opposition to Plaintiffs' Motion for Protective Order contains 3,077 words and complies with DUCivR 7-1(a)(4).

35754559_v1

12