Erik A. Christiansen, USB #7372
Christina M. Jepson, USB #7301
Sarah Jenkins Dewey, USB #15640
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
EChristiansen@parsonsbehle.com
CJepson@parsonsbehle.com
SDewey@parsonsbehle.com
ecf@parsonsbehle.com

Gregg M. Formella (pro hac vice)
**GREGG M. FORMELLA JD**
300 State St.
P.O. Box 92141
Southlake, TX 76092
gregg.formella@gmail.com

*Attorneys for SkyWest InFlight Association*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO; SHANE PRICE; TRESA GRANGE; and BRANDON FINLEY, <br><br> Plaintiffs, <br><br> v. <br><br> SKYWEST AIRLINES INC.; SKYWEST INFLIGHT ASSOCIATION, <br><br> Defendants. | **SIA'S CONSOLIDATED MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR PROTECTIVE ORDER** <br><br> Case No. 2:23-cv-723-DBB-DBP <br><br> The Honorable David Barlow <br><br> Chief Magistrate Judge Dustin B. Pead |

4930-5397-6679.v6

| | |
|---|---|
| SKYWEST INFLIGHT ASSOCIATION,<br><br>Counterclaimant,<br><br>v.<br><br>ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO; SHANE PRICE; TRESA GRANGE; JACQUE CROSSLEY; and GAILEN DAVID,<br><br>Counterclaim Defendants. | |

Defendant/Counterclaimant SkyWest InFlight Association ("SIA") submits this consolidated memorandum of law in further support of its Motion to Compel Regarding Plaintiffs' Withholding of Discovery Based on Alleged "Protected Activity" Privilege (the "Motion to Compel"), ECF No. 130, and in opposition to Plaintiffs/Counterclaim Defendants Association of Flight Attendants-CWA, AFL-CIO ("AFA"), Shane Price, Tresa Grange, Jacque Crossley, and Gailen David, and Plaintiff Brandon Finley's (collectively, "Plaintiffs") Motion for Protective Order Pursuant to F.R.C.P. 26(c)(1)(G) (the "Motion for Protective Order"), ECF No. 131.

4930-5397-6679.v6

## TABLE OF CONTENTS

BACKGROUND ................................................................................................................. 1

ARGUMENT ..................................................................................................................... 3

I.   PLAINTIFFS HAVE WAIVED THE OBJECTIONS THEY NOW TRY TO RAISE ......... 3

    A.   Plaintiffs have implicitly conceded or failed to timely raise their objections ......... 3

    B.   Good cause does not exist to excuse Plaintiffs' waiver ......................................... 6

II.  THE COURT SHOULD GRANT SIA'S MOTION TO COMPEL AND DENY PLAINTIFFS' MOTION FOR PROTECTIVE ORDER ................................................... 7

    A.   There is no general privilege or protection against disclosing these materials ...................................................................................................... 8

    B.   The information SIA seeks is relevant and necessary ........................................... 9

    C.   At least some of the materials at issue do not qualify as confidential commercial information ...................................................................................... 12

    D.   Plaintiffs have not shown that disclosure would cause harm, much less harm justifying the extreme remedy they seek ..................................................... 13

    E.   Any concerns can be addressed through appropriate designation, such as AEO .................................................................................................................. 19

CONCLUSION ................................................................................................................ 20

4930-5397-6679.v6

## **BACKGROUND**

SIA seeks certain information from Plaintiffs relating to their conduct and efforts to displace SIA, and Plaintiffs seek to protect that information from disclosure. SIA seeks information relating to persons listed on any party's initial disclosures; AFA authorization cards, including the number of signed cards collected; how much money AFA has spent in support of its efforts to displace and replace SIA; and the contents of, and identities of persons included on, communications including messages involving the co-conspirator Counterclaim Defendants.[1] Although SIA initially sought unredacted copies of cards signed by persons who voluntarily and affirmatively opted to make their support of AFA public by checking a "public supporter" box, and although the law supports disclosure of such cards, in a good-faith effort to move this case forward, SIA limits its request to ask that these cards be produced with names and identifying information redacted, but not the date the card was signed.

This information is relevant and necessary. Information about support for AFA goes to bias and motive. As Plaintiffs' briefing demonstrates, authorization cards are at the center of AFA's attempt to displace SIA. Information about the numbers of cards collected before and after the August 2023 election will show if and how much of an advantage AFA gained to SIA's detriment through the misuse of SIA's information around that election. Information about how much Plaintiffs have invested in their efforts also goes to bias and motive. It is also an important part of the res gestae here. SIA is entitled to present this information to the jury. SIA is also entitled to uncover the details of communications relating to Plaintiffs' efforts to displace SIA; particularly

---

[1] Plaintiffs state that they have only redacted the names of non-public AFA supporters. *See* ECF No. 132 at 2 n.2. However, Plaintiffs' production to date includes redacted communications. *See* Ex. A.

1

4930-5397-6679.v6

communications including the conspiracy Counterclaim Defendants and other people whose identities Plaintiffs have redacted. The other people on these communications are highly likely to have discoverable information about the co-conspirators' actions and motivations.

Plaintiffs' grounds for refusing to produce this information has been a moving target. Initially, the only timely objection Plaintiffs maintained was their position that these materials were protected from disclosure under Section Two, Third and Fourth, of the Railway Labor Act, 45 U.S.C. § 152. *See* ECF No. 130-1. After SIA filed its short-form discovery motion explaining that the RLA did not create a privilege from discovery, ECF No. 118, Plaintiffs abandoned that objection and instead argued that the information at issue was not relevant and—for the first time—that the information sought was subject to protection as confidential commercial information under Rule 26(c)(1)(G), ECF No. 123. After SIA filed its Motion to Compel—and long after they initially responded—Plaintiffs filed a Motion for Protective Order[2] reverting to their abandoned RLA objection and arguing for the first time that the materials sought are also protected by First Amendment associational privilege. *See* ECF No. 131. The Court should grant SIA's Motion to Compel and deny Plaintiffs' Motion for Protective Order because (1) Plaintiffs have waived or conceded the objections they now try to raise, (2) the blanket preclusion they seek is not viable as a legal matter, and (3) in any event the information SIA seeks is relevant and necessary, Plaintiffs have not shown a risk of harm, and any legitimate confidentiality concerns can be addressed through appropriate designations, *e.g.*, Attorney's Eyes Only ("AEO").

---

[2] Rather than proceed directly with filing their Motion for Protective Order under Rule 26, Plaintiffs instead should first have filed a short-form discovery motion. *See* DUCivR 37-1.

## ARGUMENT

I. **PLAINTIFFS HAVE WAIVED THE OBJECTIONS THEY NOW TRY TO RAISE**

A. **Plaintiffs have implicitly conceded or failed to timely raise their objections**

Plaintiffs assert the following grounds for withholding: that the documents and information sought (1) are protected by the RLA, (2) are not relevant, (3) are subject to protection as confidential commercial information under Rule 26(c)(1)(G), and (4) are protected by First Amendment associational privilege. *See* ECF Nos. 131, 132. The Court should grant SIA's Motion to Compel and deny Plaintiffs' Motion for Protective Order for the simple reason that Plaintiffs have waived or conceded these grounds.

Plaintiffs' original written responses raised objections based on Section Two, Third and Fourth, of the Railway Labor Act, 45 U.S.C. § 152. *See* ECF No. 130-1 (Pls.'Resps. to RPDs 1, 6, 12–16, 19–21, and Interrogs. 9–10, 12–14). Plaintiffs stood on this objection when the parties met and conferred. However, when SIA filed its short-form discovery motion explaining that the RLA did not provide a basis for Plaintiffs' refusal to produce the requested materials, Plaintiffs did not respond to these arguments, nor did Plaintiffs otherwise attempt to defend their purported RLA objection they previously stood on. *Compare* ECF No. 118 *with* ECF No. 123. By failing to respond to this argument, Plaintiffs implicitly conceded it, and that concession is binding. *See Storey v. Seipel*, No. 2:22-CV-00486-RJS-DAO, 2024 WL 4436609, at \*3 & nn.54–55 (D. Utah Oct. 24, 2024) (citations omitted); *see also Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999).

Rather than defend their RLA objection, Plaintiffs opposed SIA's short-form motion by arguing for the first time that the documents and information SIA seeks qualify for protection as

3

confidential commercial information under Rule 26(c)(1)(G). *See* ECF No. 123. But Plaintiffs waived this objection by not raising it in their written responses. *See* ECF No. 130-1; Fed. R. Civ. P. 33(b)(4); *Cardenas v. Dorel Juv. Grp., Inc.*, 230 F.R.D. 611, 621 (D. Kan. 2005) (citations omitted). Plaintiffs' belated Motion for Protective Order does not cure this waiver. Although Rule 26(c) does not set a time limit for filing such motions, the Tenth Circuit has held that "a motion under Fed.R.Civ.P. 26(c) . . . is timely filed if made before the date set for production." *In re Coordinated Pretrial Proc. in Petroleum Prods. Antitrust Litig.*, 669 F.2d 620, 622 n.2 (10th Cir. 1982) (citation omitted). While *In re Coordinated Pretrial* involved a subpoena rather than requests between parties, Rule 26(c) makes no such distinction, and courts within the Tenth Circuit have applied the timing requirement to written discovery requests to parties. *See, e.g.*, *United States v. Copar Pumice Co., Inc.*, No. CV 09-1201 JAP/KBM, 2012 WL 12898786, at *3 (D.N.M. Apr. 23, 2012) (holding that defendants waived objections based on alleged confidentiality by failing to timely move for a protective order) (citations omitted).[3]

Plaintiffs argue that they preserved a Rule 26(c)(1)(G) objection because the National Mediation Board ("NMB") has held that authorization cards are confidential commercial information. ECF No. 132 at 8 n.7.[4] This is unpersuasive. Objections must be specific or they are

---

[3] Plaintiffs' Motion is also untimely under DUCivR 37-1. Although the parties conferred about these requests and agreed not to raise timeliness arguments related to those issues, Plaintiffs never raised an objection based on alleged confidential commercial information under Rule 26(c) during that process. SIA did not agree to extend the deadline for Plaintiffs to raise *new* objections.

[4] The NMB's decision applied to situations in which, pursuant to the RLA, it was administering a labor organization's petition for an election among a certain group of employees. ECF No. 132 at 8 n.7 (citing *Delta Air Lines*, 27 NMB 484 (2000)). If Plaintiffs wish to invoke NMB authority in support of their efforts to unseat SIA as the labor representative of SkyWest's FAs, they have chosen the wrong forum. They ought to have filed an election petition at the NMB. *See* 45 U.S.C. § 152, Ninth; 29 C.F.R. Part 1206; *United Transp. Union v. United States*, 987 F.2d 784 (D.C. Cir. 1993) (emphasizing that "the NMB has exclusive jurisdiction over representation disputes" and

4

4930-5397-6679.v6

waived. *See* Fed. R. Civ. P. 33(b)(4); Fed. R. Civ. P. 34(b)(2)(B). Plaintiffs tacitly admit they failed to adequately raise this objection given that they have (inappropriately) added a confidentiality/Rule 26(c)(1)(G) objection to their amended responses. *See* Exs. B and C (Pls.' amended responses). This is the type of moving target the rules are meant to preclude.

Plaintiffs have also waived any objections based on an alleged First Amendment associational privilege. Plaintiffs did not object on this basis in their written responses or opposition to SIA's short-form discovery motion. *See* ECF Nos. 123, 130-1; *see also* Fed. R. Civ. P. 33(b)(4); *Cardenas*, 230 F.R.D. at 621; *Storey*, 2024 WL 4436609, at *3 & nn.54–55 (citations omitted). Although Plaintiffs now try to couch this objection as an alleged harm supporting their Motion for Protective Order rather than as an independent objection, as explained, Plaintiffs' Motion for Protective Order is itself untimely.

Plaintiffs' relevance objection fares no better. While Plaintiffs raised a relevance objection in response to some of SIA's requests, Plaintiffs did not raise a relevance objection in response to all the requests at issue. For example, Plaintiffs made no relevance objection to Request for Production No. 13.[5] *See* ECF No. 130-1 at p. 6 of 18. That request sought, among other things,

---

directing dismissal of the lawsuit so the NMB could decide the issue first). Instead, because Plaintiffs apparently have failed to gather the requisite number of authorization cards for the NMB to grant an election, they have taken to using this forum to indirectly advance their efforts to "organize" SkyWest Flight Attendants. *Cf. NLRB v. Homewood Shops*, 724 F.2d 535, 547 (6th Cir., 1984) (explaining that courts "must carefully scrutinize" the evidence where an outside union brings an action against an incumbent it is trying to unseat).

[5] Although Plaintiffs stated that the request was "also objectionable on the same grounds as asserted in Response to Requests Nos. 1 and 6," this non-specific objection does not suffice. *See* Fed. R. Civ. P. 34(b)(2)(B) (requiring "specificity"). Moreover, the non-specific relevancy objection in Responses 1 and 6 are identical to the partial relevancy objections in Plaintiffs interrogatory responses, which, as explained later in the above paragraph, are at best insufficiently specific and at worst admit the relevance of the materials sought.

documents relating to "AFA's organizing campaign among the Flight Attendants of SkyWest Airlines." *Id.* The documents and authorization cards at issue here fall within this request. Plaintiffs also failed to raise a valid relevancy objection in response to the interrogatories. Plaintiffs objected that the "details" of the "effort to obtain a representation election in which AFA was on the ballot" are "irrelevant to this litigation," "with the exception of the specific claims and counterclaims[.]" *See* ECF No. 130-1 at pp. 9–17 of 18 (Resps. to Interrogs. 9–10, 12–14). This partial objection does not preclude the discovery sought. This partial objection appears on its face to admit that the information sought is relevant to the "claims and counterclaims" at issue here, as it certainly is. To the extent Plaintiffs meant something else, the objection is too vague and non-specific and is thus waived. *See* Fed. R. Civ. P. 33(b)(4)); *Smash Tech., LLC v. Smash Sols., LLC*, 335 F.R.D. 438, 447 (D. Utah 2020). In any case, as detailed below, the materials at issue are highly relevant.

### B.    Good cause does not exist to excuse Plaintiffs' waiver

Although a court may excuse a party's failure to timely raise an objection for good cause, there is no basis to excuse Plaintiffs' waivers here. *See, e.g.*, Fed. R. Civ. P. 33(b)(4). Foremost, Plaintiffs have not asked the Court to excuse their failure, nor have they proffered any explanation for their failure despite multiple opportunities to do so.[6] *See* ECF Nos. 123, 131, 132. Nor could Plaintiffs make the required showing if they tried. "Good cause" requires "*at least as much* as would be required to show excusable neglect." *Linnebur v. United Tel. Ass'n*, No. 10-1379-RDR, 2012 WL 1183073, at *6 (D. Kan. Apr. 9, 2012) (citation omitted). Plaintiffs would have to show they "could not have reasonably met the deadline to respond despite due diligence." *Id.* (citation

---

[6] Plaintiffs may not make such a request now. *See, e.g.*, DUCivR 7-1(a)(3).

omitted). Plaintiffs could have raised these objections with their initial timely responses; they simply chose not to.

Rather than try to show good cause, Plaintiffs have instead served "amended" discovery responses in which they have newly added objections alleging that the documents and information sought constitute confidential commercial information under Rule 26(c)(1)(G). *See* Exs. B and C. Plaintiffs may not add new objections in this manner. *See Cotracom*, 189 F.R.D. at 662 ("The waiver or abandonment of objections also precludes their later assertion in a supplemental response."); *PureCircle USA Inc. v. SweeGen, Inc.*, No. 818CV01679JVSJDEX, 2020 WL 5260491, at *7 (C.D. Cal. July 20, 2020) (citations omitted).

## II.   THE COURT SHOULD GRANT SIA'S MOTION TO COMPEL AND DENY PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

Because Plaintiffs' Motion for Protective Order is untimely, the Court should deny it and decide these issues under SIA's Motion to Compel. Under that framework, SIA has the "low" burden of showing the information is relevant, and Plaintiffs have the burden to show why the discovery should not be had. *See* ECF No. 130. The result should be the same even if the Court considers Plaintiffs' untimely Motion for Protective Order. That Motion requires Plaintiffs to show the information sought constitutes confidential commercial information and that disclosure would be harmful; if Plaintiffs make this showing (they cannot), then it falls to SIA to show the discovery is relevant and necessary (it is), and the Court must then balance the need for the information against the potential for harm or, far more often (and as is the case here), whether other protections such as AEO designation would suffice. *See id.*

7

A.      **There is no general privilege or protection against disclosing these materials**

Despite having implicitly conceded there is no RLA privilege, Plaintiffs make a belated attempt to support their now-conceded or never-timely-raised objections along these lines. *See, e.g.*, ECF No. 131 at 6–9; ECF No. 132 at 10–11. This is too little, too late. Plaintiffs' authorities are not binding, not on point, and not persuasive. *Wright Electric* found the "employer" could not discover the identities of employees who signed union authorization cards. *Wright Elec., Inc. v. N.L.R.B.*, 200 F.3d 1162, 1167 (8th Cir. 2000). But SIA is not the "employer."[7] And while *Wright* found that the information was not relevant there, SIA has explained why the information it seeks—which includes materials not at issue in *Wright*—is relevant. *See id.* Also unlike *Wright*, SIA does not seek the identity of AFA supporters (even the "public supporter[s]"), apart from persons on any party's initial disclosures whom Plaintiffs have already agreed to identify. *Wright* did not state a blanket rule; it recognized discovery could be had where the employer has an overriding business justification, similar to SIA's need for the information here. *See id.*

Plaintiffs' other cases are no more persuasive. The court in *Mallick* was not asked to decide whether the materials were discoverable by one party from another party in a federal lawsuit; it made the cited statement in dicta in a case assessing whether a union member had a right to access financial information from the union about a settlement and lawsuit in which the member was not a party. *Mallick v. Int'l Bhd. of Elec. Workers*, 749 F.2d 771, 773, 785 (D.C. Cir. 1984). And that same discussion notes that access to the information required a balancing and that "the harm to the

---

[7] Plaintiffs argue that SIA cannot distinguish itself on these grounds because SkyWest provides funding to SIA. ECF No. 132 at 11 n.9. The Court should reject Plaintiffs' invitation to effectively decide an ultimate issue in this case. *See* ECF No. 68 at ¶¶ 66–68 (alleging unlawful funding and control of SIA by SkyWest).

8

union must be significant" to justify protecting the information. *See id.* at 785. SIA does not seek

AFA's "organizing strategy" or "negotiating plans," the only specific examples provided in that

dicta. *See id.* For its part, *Konop* is totally dissimilar to the situation here. *Konop v. Hawaiian*

*Airlines, Inc.* 302 F.3d 868 (9th Cir. 2002). The discussion Plaintiffs cite involved the employer's

president accessing an employee's anti-employer/incumbent union website under false pretenses.

*Id.* at 884. The court also did not say that the types of materials SIA seeks were absolutely barred,

only that "employers" may not surveil union organizing activities "[a]bsent a legitimate

justification." *Id.* (citation omitted). SIA is not the "employer" and the information SIA seeks is

relevant and necessary to issues raised in this case. Plaintiffs have not established an absolute bar

to the discovery SIA seeks, because there is no such bar.[8] *See* ECF Nos. 118, 130.

## B. The information SIA seeks is relevant and necessary

The documents and information SIA seeks are relevant and necessary. The first category

seeks information about persons on any party's initial disclosures. This goes to bias. Plaintiffs have

---

[8] *Cf. also Comm. on Masonic Homes of R.W. Grand Lodge, F. & A.M. of Pennsylvania v. N.L.R.B.*, 556 F.2d 214, 221 n.13 & accompanying text (3d Cir. 1977) (an *employer* sought through FOIA—not a litigation initiated by the objecting union—to access signed authorization cards and forcibly make employees publicize their support); *Raymond v. Spirit AeroSystems Holdings, Inc.*, No. 16-1282-JTM-GEB, 2017 WL 6524841, at *4 (D. Kan. Dec. 21, 2017) (noting that requiring "the union to open its files to the employer" would be problematic but not ruling on that basis alone; SIA is not the "employer" and Plaintiffs can ask for additional protections with respect to SkyWest; moreover, AFA is not "the union" here, it is a third party); *Kerns v. Caterpillar, Inc.*, No. 3:06-CV-1113, 2008 WL 351233, at *5 (M.D. Tenn. Feb. 7, 2008) (ordering production of all categories of information except for bargaining strategy concerning specific negotiations, which SIA does not seek); *NetJets Aviation, Inc. v. NetJets Ass'n of Shared Aircraft Pilots*, No. 2:17- MC-00038-GCS, 2017 WL 3484101, *4 (S.D. Ohio Aug. 15, 2017) (ruling based on First Amendment associational privilege, which Plaintiffs have waived and which does not apply here, and not involving claims of conspiracy). The administrative decisions Plaintiffs cite are not binding and "cannot be cited as authority for creating a new federal labor relations privilege." *See Degrandis v. Children's Hosp. Bos.*, 203 F. Supp. 3d 193, 199 (D. Mass. 2016).

4930-5397-6679.v6

agreed to provide responsive information (but not authorization cards) for such persons, designated as AEO. ECF No. 131 at 2. The Court should at least enter an order reflecting this concession.

The second category relates to AFA authorization cards.[9] Signed authorization cards (even those with the "public supporter" option selected) should be produced with the name, contact information, employee number, and other identifying information redacted (but not the date the card was signed). Cards signed by individuals listed on any party's initial disclosures should be produced without redaction. AFA should also provide information about the total numbers of signed cards collected before and after the August 2023 election.

This information is highly relevant and necessary. Information about the authorization cards AFA has collected, including the number of cards collected before and after the August 2023 election, is relevant and necessary to show whether (and how much) of an advantage AFA gained (thus harming SIA) through the misuse of SIA's information and the resulting fallout.[10] As Plaintiffs' own briefing highlights, *see, e.g.*, ECF No. 132 at 2–3, the numbers of cards collected is an essential part of AFA's efforts to displace and replace SIA; SIA's defenses and counterclaims maintain that Plaintiffs' efforts toward that end have violated SIA's rights.

The third category of information SIA seeks includes financial information concerning AFA's efforts to become the bargaining agent for SkyWest Flight Attendants ("FAs"). *See* ECF

---

[9] Plaintiffs describe these as "NMB authorization cards" in an apparent attempt to imbue them with government authority. These are indisputably AFA's cards. *See* ECF No. 131-4 at 2 n.1, ¶ 7.

[10] Although SIA no longer seeks unredacted cards signed by those who checked the "public supporter" box, that information is indeed relevant. Such persons likely have information about, for example, how AFA used SIA's information, including whether and how AFA presented that information to them and how AFA told its supporters to make use of that information. AFA has effectively confirmed as much. *See* David Aff. ¶ 9, ECF No. 131-4 (stating that "AFA follows up with such individuals for confirmation of their willingness to be involved and to frame the scope of such involvement or publicity").

No. 130-1 (Interrog. No. 14). SIA does not here seek itemized receipts or spending records. SIA seeks a reasonable, general description of expenditures. *See id.* This information is also highly relevant and necessary. As explained, AFA stands to gain $3 million in dues *annually* if it succeeds. *See* Am. Countercl. ¶ 16. The amount AFA has invested toward its goal of displacing SIA as the bargaining agent for FAs goes to AFA's motive. This is a significant motive. This is a key part of the res gestae here. SIA cannot fully prepare for or strategize its questioning of witnesses, nor can SIA present its version of the facts at trial in support of its defenses (including unclean hands) and counterclaims, without this information. If, for example, AFA spent $5 million dollars in support of its efforts, that is a significant investment and significant motive, and SIA is entitled to present that information to the jury. *See Martinez v. City of Ogden*, No. 1:08CV00087, 2009 WL 424785, at *3 (D. Utah Feb. 18, 2009) (recognizing that parties are entitled to a full and fair opportunity to litigate, that this includes the opportunity to present evidence and arguments, and that "[r]estrictions on a litigant's access to information that may constitute or lead to evidence and arguments may severely hamper the litigant's participation" and "could well border on a denial of due process" (citations and quotation marks omitted)).

Finally, Plaintiffs should also be ordered to un-redact documents they have produced. Although Plaintiffs state they have not redacted communications apart from names, *see* ECF No. 131 at 2; ECF No. 132 at 2 n.2, their production to date reflects redacted names and contents of communications, including communications among the co-conspirators who misappropriated and misused SIA's information where they appear to discuss what to say publicly about SIA. *See* Ex. A. The participants in and contents of communications, especially communications involving the co-conspirators, are highly relevant. SIA is entitled to discover what Plaintiffs and the

11

Counterclaim Defendants were saying to each other, and who else they were communicating with and what they told them, including discussions about what to say about SIA and its information and how to use that to benefit AFA to SIA's detriment. People involved in these communications are highly likely to have discoverable information about the events at issue.

### C.   At least some of the materials at issue do not qualify as confidential commercial information

Information about the number of cards collected before the August 2023 election and in the roughly six months following that election is not subject to protection under Rule 26(c)(1)(G) because this information is stale. Stale business information generally does not warrant protection. *See JTS Choice Enters., Inc. v. E.I. Du Pont De Nemours & Co.*, No. 11-CV-03143-WJM-KMT, 2013 WL 791438, at \*4 (D. Colo. Mar. 4, 2013). Unlike the formula for Coca-Cola, information about the numbers of cards collected quickly diminishes in value and significance as time passes. *See* David Aff. at ¶ 6, ECF No. 131-4 (stating that the cards are a "moving target" since FAs are constantly hired/leave and because signed cards expire after 12 months). More than one and a half years have passed since the election. This information is stale and thus unworthy of protection. *See JTS*, 2013 WL 791438, at \*4 (explaining that protection of stale information requires "a specific showing of present harm"). At minimum, the Court should therefore require Plaintiffs to provide information about the number of cards collected before and in the six months after the August 2023 election. *See* ECF No. 130-1 (Interrog. Nos. 12, 13).

The Court should also order Plaintiffs to produce unredacted copies of communications relating to the misappropriation and misuse of confidential information in SIA's possession. *See* Ex. A. The identities of persons involved in such communications would not qualify as

12

confidential commercial information even under the factors AFA puts forward.[11] These communications involve persons not employed by AFA (factors 1 and 2). Plaintiffs have put forward no evidence of any measures taken to guard the secrecy of this information; on the contrary, everyone involved in those messages is free to copy and share those communications with no more effort than taking a screenshot (factors 3 and 6). While AFA and others certainly used the information in the chats for AFA's benefit, this information does not reveal, *e.g.*, the core of AFA's strategy or plans; rather, the information was sent to AFA by its supporters at no charge to AFA (factors 4 and 5). This information does not qualify for protection under Rule 26(c)(1)(G).

**D.      Plaintiffs have not shown that disclosure would cause harm, much less harm justifying the extreme remedy they seek**

Even if the information at issue could qualify as confidential commercial information, it must still be produced because Plaintiffs have not made the necessary showing of harm. Plaintiffs focus most of their arguments citing cases they contend prevent disclosure of the information at issue. But the cases Plaintiffs cite are neither binding nor persuasive, and they do not dictate the proper outcome here. What matters is whether Plaintiffs can make a "particular and specific demonstration of fact" that disclosure would be harmful. *See John Zink Co., LLC v. Zeeco, Inc.*, No. 25-CV-059-JDR-CDL, 2025 WL 2171138, at *3 (N.D. Okla. July 31, 2025) (citation omitted); *see also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) ("To establish good cause for a

---

[11] *See Ivanti, Inc. v. Staylinked Corp.*, No. 219CV00075RJSJCB, 2021 WL 3406391, at *2 (D. Utah Aug. 4, 2021) ("(1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others" (citation omitted)).

13

protective order under Rule 26(c), the courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." (cleaned up) (citations and quotation marks omitted)).

Plaintiffs' intimation that the necessary showing of harm presents a low burden is incorrect. *See* ECF No. 131 at 8. Although the Tenth Circuit has stated that Rule 26 requires a showing that "disclosure might be harmful," *e.g.*, *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981) (citation omitted), it has also suggested that what is required is a "'clearly defined and very serious injury,'" *see Price v. Cochran*, 66 F. App'x 781, 786 (10th Cir. 2003) (unpublished). Whatever wording is used, the requisite test for the complete preclusion of discovery (as opposed to a confidentiality designation) must set a high bar because the total preclusion of discovery contravenes "the fundamental principle that the public has a right to every man's evidence." *See Trammel v. United States*, 445 U.S. 40, 50 (1980) (cleaned up) (citations and quotation marks omitted). Indeed, the Supreme Court has recognized that "orders forbidding any disclosure of confidential commercial information are rare." *Fed. Open Mkt. Comm. of Fed. Rsrv. Sys. v. Merrill*, 443 U.S. 340, 363 n.24 (1979) (citations omitted). Plaintiffs cannot clear this bar.

Plaintiffs raise largely vague and conclusory allegations of harm. But examining these allegations in the context of the information SIA seeks shows that Plaintiffs cannot make the necessary showing. Plaintiffs have not shown that producing *redacted* authorization cards and information about the numbers of signed cards collected would cause harm. Most of Plaintiffs' allegations of harm turn on AFA's supporters being unwillingly identified. These concerns do not apply to redacted cards and numbers. Plaintiffs contend that revealing these numbers would give SkyWest and SIA a "preview" as to the timing of AFA's showing of interest. *See* ECF No. 131-4

14

4930-5397-6679.v6

at ¶ 10. Importantly, Plaintiffs do not explain how this would harm AFA or anyone else. If AFA collects enough authorization cards, that process will presumably move forward whether SkyWest and SIA know it's coming or not. Notably, AFA itself publicly publishes general status updates about where it is in the process.[12] And of course, stale cards provide no preview at all.

Nor have Plaintiffs shown that providing the limited financial information SIA seeks would cause harm. Plaintiffs contend that revealing financial information would allow Defendants to track AFA's expenditure of resources and craft precise responses. ECF No. 132 at 11. This vague and conclusory allegation is insufficient. The general numbers and description SIA here seeks would not allow for the type of targeted responses Plaintiffs are apparently concerned about. *See* ECF No. 130-1 (Interrog. No. 14). SIA is entitled to present the jury with information about how much money AFA has spent in support of its efforts, particularly given the millions of dollars in dues AFA seeks to obtain from SIA's members.

Plaintiffs focus their arguments on alleging things like potential retaliation, unwarranted surveillance, a chilling effect, First Amendment associational privilege, and loss of trust in AFA. *See* ECF Nos. 131, 131-4, 132. These arguments only conceivably apply to materials where an FA's name will be revealed. But this is now only the case with persons listed on any party's initial disclosures, and Plaintiffs agreed to provide that information (subject to AEO designation). *See* ECF No. 132 at 2. Viewed in the context of the materials currently sought, Plaintiffs arguments are largely inapplicable. Plaintiffs' arguments are in any case unsupported and unpersuasive.[13]

---

[12] *See* https://www.ooitstime.com/blog/status-update-what-weve-done-and-what-comes-next (last visited September 12, 2025).

[13] And as explained, Plaintiffs waived these objections by failing to timely raise them.

15

Plaintiffs rely almost entirely on the argument of counsel rather than actual evidence and thus lack adequate support for their arguments. *See, e.g.*, *Procter & Gamble Co. v. Nabisco Brands, Inc.*, 111 F.R.D. 326, 330 (D. Del. 1986) (explaining that injury must be "shown with specificity" and that "[a] protective order should not issue based only upon counsel's arguments in its briefs" (citation omitted)). The little support Plaintiffs offer is insufficient. Plaintiffs note that SIA disqualified an FA from participating in an election "based on her signing an AFA authorization card." ECF No. 131 at 9 (citation omitted). But loyalty is a normal requirement for union leadership. AFA's own constitution and bylaws provide that "[a]ny member . . . may be fined, suspended, expelled or otherwise disciplined for . . . [a]cting in any manner disloyal to the Union." *See* Association of Flight Attendants-CWA, AFL-CIO, Constitution and Bylaws (Amended April 5, 2025), Art. X.A.1.m, excerpted here as Ex. D. The LMRDA also recognizes the importance of loyalty. *See* 29 U.S.C. § 501(a) (recognizing that labor organization officers "occupy positions of trust in relation to such organization"). This alleged concern does not satisfy the need for a "particular and specific demonstration of fact as distinguished from conclusory or stereotyped statements." *See John Zink Co*, 2025 WL 2171138, at *3 (citation and quotation marks omitted).

Plaintiffs' claims of competitive harm based on an alleged "chilling effect on future communications with Flight Attendants" is also unconvincing. *See* ECF No. 131 at 10. As explained, Plaintiffs' alleged concerns of retaliation are unsupported. Plaintiffs' alleged concerns about a potential chilling effect due to a breach of trust based on disclosure of any FAs' identities or activities is also unavailing. *Id.* Again, the only people with a reasonable expectation of privacy that might be implicated here are those who are identified on any party's initial disclosures. Significantly, Plaintiffs have *agreed* to provide information about such people, and it is only

16

4930-5397-6679.v6

because *Plaintiffs chose to file this lawsuit* that this information is at issue in the first place. Plaintiffs cannot blame SIA for their strategic choices, even if they now regret them. In any case, these people's privacy interests can be adequately protected through AEO designation.

Plaintiffs now allege that disclosure would infringe on their and AFA's supporters' First Amendment associational privilege. *See* ECF No. 131 at 10. As explained, Plaintiffs waived this objection by failing to raise it previously. Plaintiffs in any case cannot show that that privilege should prevent discovery here. The authority Plaintiffs cite recognizes that the privilege is not implicated where union supporters' identities will not be revealed. *Patterson v. Heartland Indus. Partners, LLP*, 225 F.R.D. 204, 206 (N.D. Ohio 2004) (finding that "the First Amendment associational privilege does not apply to" documents that do not reveal the identities of union supporters). The only people whose identities will be revealed as AFA supporters are those whom AFA has already agreed to disclose (subject to AEO protection); other supporters' identities will be redacted. Plaintiffs' unsupported, conclusory, and speculative concerns in any case fail to make the showing needed to invoke the privilege.

First, Plaintiffs have not made the required prima facie showing that the privilege applies. Although the Tenth Circuit "has not articulated 'the precise quantum of proof necessary'" to make this showing, it has "held that 'a party claiming a First Amendment chilling affect meets its burden by submitting, for example, affidavits which describe harassment and intimidation of a group's known members, and the resulting reluctance of people sympathetic to the goals of the group to associate with it for fear of reprisals.'" *Minter v. City of Aurora, Colorado*, No. 20-CV-02172-RMR-NYW, 2021 WL 5067593, at *10 (D. Colo. Sept. 29, 2021) (quoting *In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d 470, 491 (10th Cir. 2011)). David's affidavit—the only

17

4930-5397-6679.v6

one Plaintiffs supply—does not make this type of showing. *See* ECF No. 131-4. His generalized concerns about retaliation and loss of trust from AFA supporters "do not seem to represent the more severe degree of threats, harassment, and reprisal envisioned by the Supreme Court in *NAACP v. Alabama*." *See Minter v*, 2021 WL 5067593, at *11 (citations omitted).[14]

Second, even if this privilege could apply, Plaintiffs have waived it by agreeing to provide the identities of people listed on any party's initial disclosures, *see Minter*, 2021 WL 5067593, at *11 n.9 (citations omitted). Third, as noted, the authority Plaintiffs cite recognizes that the privilege is not implicated where union supporters' identities will not be revealed. *Patterson*, 225 F.R.D. at 206.

Fourth, even if the privilege could apply, whether disclosure should be ordered would turn on factors including "(1) the relevance of the evidence; (2) the necessity of receiving the information sought; (3) whether the information is available from other sources; and (4) the nature of the information." *See Minter*, 2021 WL 5067593, at *4 (quoting *Grandbouche v. Clancy*, 825 F.2d 1463, 1466–67 (10th Cir. 1987)). The information at issue is relevant, necessary, and not available from any other sources. As to the fourth factor, SIA does not seek AFA's full list of supporters and Plaintiffs have already agreed to provide the names of people listed on any party's initial disclosures. Information about the number of authorization cards signed (as opposed to who signed them) and information about funds AFA has paid (as opposed to who has provided money

---

[14] Nor does the fact that SIA disqualified a member from an election or that SkyWest terminated Price and Grange's employment suffice. As explained, loyalty is a legitimate requirement. And while SkyWest terminated Price's and Grange's employment, the circumstances—their role in posting confidential information about SkyWest employees—is unique to them. Although the criminal charges against Price and Grange were eventually dropped, the fact that they were charged at all—a decision made independently by the prosecutor's office—further distinguishes them from other AFA supporters.

18

to AFA) does not implicate core associational concerns. *See McCormick v. City of Lawrence, Kansas*, No. 02-2135-JWL, 2005 WL 1606595, at *8 (D. Kan. July 8, 2005) (citations omitted). Plaintiffs have not made a showing of harm sufficient to justify a total exclusion from discovery.

E.      **Any concerns can be addressed through appropriate designation, such as AEO**

Ultimately, the Court "must balance the need for the trade secrets against the claim of injury resulting from disclosure." *See Centurion*, 665 F.2d at 325. This evaluation considers the total situation and "such factors as the dangers of abuse, good faith, adequacy of protective measures, and the availability of other means of proof." *Id.* n.6 (citations omitted). This balancing weighs heavily in favor of disclosure. The information sought is highly relevant and necessary for SIA to defend itself and pursue its counterclaims. On the other hand, Plaintiffs have not shown a likelihood of harm. Other factors weigh in favor of disclosure. This information is only available from Plaintiffs. SIA seeks this information in good faith, as demonstrated by its willingness to agree to AEO designation for nearly all the materials at issue.

Plaintiffs do little to argue that AEO designation would be inadequate. They argue AEO designation would "send a clear message" that supporter information has been divulged to SIA and SkyWest. ECF No. 132 at 11. AEO designation sends the opposite message: that non-public supporters' information is being treated with due care. Notably, Plaintiffs have *agreed* to provide identities of people included on initial disclosures subject to AEO designation. *Id.* at 5. Plaintiffs also argue that AEO designation "would still allow Counsel to guide their clients' responses to organizing activity and NMB proceedings." *Id.* at 11. Plaintiffs' suggestion that Defendants' counsel would inappropriately to sidestep a Court-ordered AEO designation is unfounded and should be rejected. *Cf. Gulf*, 452 U.S. at 104 n.18 ("We agree with the Court of Appeals' refusal

19

to give weight to Gulf's unsworn allegations of misconduct on the part of respondents' attorneys[.]"). Plaintiffs have not shown that the extreme remedy of total preclusion from discovery is warranted here. The Court should grant SIA's Motion to Compel and deny Plaintiffs' Motion for Protective Order.

## CONCLUSION

For the reasons set forth here and in SIA's short-form motion and Motion to Compel, the Court should grant SIA's Motion to Compel and deny Plaintiffs' Motion for Protective Order.

DATED September 12, 2025.

/s/ Christina M. Jepson
Erik A. Christiansen
Christina M. Jepson
Sarah Jenkins Dewey
PARSONS BEHLE & LATIMER

Gregg M. Formella
GREGG M. FORMELLA JD

*Attorneys for SkyWest InFlight Association*

20

4930-5397-6679.v6

## CERTIFICATE OF SERVICE

I certify that on September 12, 2025, I caused a true and correct copy of the foregoing SIA'S CONSOLIDATED MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR PROTECTIVE ORDER, together with any exhibits thereto, to be filed on the Court's CM/ECF system which served all counsel of record appearing thereon.

_/s/ Sarah Jenkins Dewey_

4930-5397-6679.v6