SCOTT YOUNG (10695)
CHRISTOPHER W. DROUBAY (12078)
Spencer Fane LLP
10 Exchange Place, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 521-9000
rsyoung@spencerfane.com
cdroubay@spencerfane.com

JOSHUA SHIFFRIN, *pro hac vice*
GRACE RYBAK, *pro hac vice*
Bredhoff & Kaiser P.L.L.C.
805 15th Street NW, Suite 1000
Washington, D.C. 20005
Telephone: (202) 842-2600
jshiffrin@bredhoff.com
grybak@bredhoff.com

JEFFREY A. BARTOS, *pro hac vice*
JOHN J. GRUNERT, *pro hac vice*
Guerrieri, Bartos & Roma, P.C.
1717 K Street, NW, Suite 900
Washington, DC 20006
Telephone: (202) 624-7400
jbartos@geclaw.com
jgrunert@geclaw.com

*Counsel for Association of Flight Attendants-CWA AFL-CIO, Shane Price, Tresa Grange, Brandon Finley, Jacque Crossley, and Gailen David*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

|  |  |
|---|---|
| ASSOCIATION OF FLIGHT ATTENDANTS-CWA AFL-CIO, *et al.*,<br><br>Plaintiffs/Counterclaim Defendants,<br><br>v.<br><br>SKYWEST AIRLINES, INC., *et al.*,<br><br>Defendants/Counterclaim Plaintiffs. | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER PURSUANT TO F.R.C.P. 26(c)(1)(G)**<br><br>Case No.2:23-cv-00723-DBB-DBP<br>Judge David Barlow<br>Magistrate Judge Dustin B. Pead |

Plaintiffs submit this reply in support of their Motion for Protective Order with respect to confidential commercial information. Plaintiffs' Motion was filed to prevent the disclosure of three limited categories, relating to: (1) names and personal identifying information of non-public AFA supporters; (2) AFA authorization card information; and (3) AFA financial information, with certain exceptions. Defendants SkyWest Inflight Association ("SIA") and SkyWest Airlines, Inc. ("SkyWest"), while opposing the motion, have reduced the scope of the

dispute by narrowing certain discovery requests and by offering no response to other categories, thereby waiving their opposition to protection. In light of points raised by Defendants, Plaintiffs have narrowed the scope of the proposed protective order, as addressed below.

Nonetheless, a protective order is still warranted, especially in view of Defendants' shifting positions as to whether they are in fact seeking certain information or not, and why. A protective order would also provide certainty regarding the scope of discovery.

As we have demonstrated, F.R.C.P. 26(c)(1)(G) is designed to protect information of the type at issue. Plaintiffs readily demonstrate the significant harm of disclosure – the chilling of Railway Labor Act ("RLA") employee rights – and Defendants have failed to demonstrate a countervailing need for the remaining disputed information. Moreover, SIA's claim that Plaintiffs have waived any of their arguments, or failed to timely seek relief, should be rejected.

**ARGUMENT**

**I.    SIA's Waiver and Timeliness Objections Are Meritless.**

SIA contends that Plaintiffs have either waived their right to seek a protective order, or that the motion is untimely. These arguments are meritless.

Plaintiffs have raised their substantive objections to producing information in the three categories covered by their motion in every discovery response since their initial written discovery responses. *See*, *e.g.,* Responses to SIA Requests for Production Nos. 6 and 13 (Dkt. 140-2 at 3, 5) (setting forth, *inter alia*, objections that production of certain requested documents "would interfere with the exercise of rights protected by ... the Railway Labor Act" and constitutes "an attempt to surveil protected activity under ... the Act"). When Plaintiffs filed their Short Form Discovery Motion seeking to compel production, Dkt. 118, Plaintiffs identified Rule 26(c)(1)(G) as the procedural basis for protection of this information from disclosure, citing

2

cases arising under the RLA and analogous federal labor law consistent with the written discovery objections, and offered to move for a protective order or address the issues in extended briefing. Dkt. 123 at 2-3. The court ordered "full briefing on the issues raised by the parties." Dkt. 127. Thereafter, SIA filed its motion to compel, Plaintiffs filed their motion for a protective order, and the Court permitted consolidated further briefing on these motions. Dkt. 134. With this procedural history in mind, SIA's objections should be rejected.

*First*, SIA contends that Plaintiffs waived any objection premised on rights arising out of the RLA because – SIA claims – no such argument was made in response to the Short Form Motion. But that motion was "denied without prejudice" to permit full briefing, Dkt. 127, and the same issues raised in our Motion for Protective Order have been raised in our Opposition to the Motion to Compel, Dkt. 132 at 8-11. There was no waiver.

*Second,* SIA claims that Plaintiffs waived their right to make a motion based on Rule 26(c)(1)(G) because neither that Rule nor the term "confidential commercial information" were recited in Plaintiffs' initial discovery responses. But discovery is not a game of semantics. Plaintiffs have clearly stated from the outset that their objection to efforts to obtain authorization cards, names of union supporters, and financial details of union organizing activity all impinged on rights protected by the RLA. When SIA challenged these objections (as is its right) and moved to compel, Plaintiffs invoked the procedural vehicle of Rule 26(c) to assert its right to protection (as is Plaintiffs' right). Crucially, the substantive grounds for the Rule 26 showing that documents and information at issue are "confidential commercial information" are the very RLA protections we have relied on from the outset. Indeed, the NMB has ruled that authorization cards are "confidential commercial information." *Delta Air Lines*, 27 NMB 484, 503 (2000).

Plaintiffs are not foreclosed from using the procedural vehicle of Rule 26 simply because they did not cite that Rule in their substantive objections.

*Third*, SIA claims that the motion for protective order is untimely because it was not filed prior to the deadline for the initial discovery response. The record reflects, however, that after Plaintiffs raised timely written objections, the parties engaged in a meet and confer process over many months on this and other subjects. Indeed, SIA itself contends that the parties have repeatedly agreed to extensions and reached a shared "understanding that neither party would raise timeliness with respect to the discovery issues on either side." Dkt. 125-1, ¶ 7. SIA should not now complain that Plaintiffs waited too long to file this motion, which overlaps significantly with the issues in SIA's motion to compel.[1] *See In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 337 (N.D. Ill. 2005) (cleaned up) ("Although a party objecting to discovery may seek a protective order ... it is under no obligation to do so. The served party has the option of providing appropriate written objections and leaving it to the party seeking discovery to file a motion to compel.").

## II. The Information At Issue Falls Within The Scope of Rule 26(c)(1)(G).

### A. The Names and Identifying Information of Non-Public AFA Supporters.

---

[1] SIA's cited authorities are not to the contrary. The 10th Circuit in *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 669 F.2d 620, 622 n.2 (10th Cir. 1982), rejected an objection to a protective order as untimely, when the motion was filed prior to the subpoena return date, citing *U.S. v. IBM Corp.*, 70 F.R.D. 700, 701 (S.D.N.Y. 1976). The court in *IBM* held that "Absent circumstances which would justify delay, motions under both Rule 26(c) and Rule 45(b) must be served before the time set for compliance in the subpoena." 70 F.R.D. at 702. Here, the circumstances – including the timely raising of written objections, repeated meet and confer exchanges and extensions of time – plainly justify the timing of the present motion. For the same reason, *U.S. v. Copar Pumice Co., Inc.,* No. CV 09-1201 JAP/KBM, 2012 WL 12898786, *3 (D.N.M. Apr. 23, 2012), is inapposite. There, unlike here, the producing party had ignored the requesting party's request to "either move for a protective order ... or provide additional ... information" supporting such an order for nearly seven months.

The first category for protection is:

The names and personal identifying information of SkyWest Flight Attendants whose support for AFA has not been made public (except as to any individual names in any Parties' Initial Disclosures, which will be designated AEO).

In its Response, SIA has retreated from its prior position, to now claim that it "does not seek the identify of AFA supporters … apart from persons on any party's initial disclosures." Dkt. 140 at 11. Thus, there appears to no longer be a dispute between SIA and Plaintiffs on this category.[2]

As to SkyWest, it continues to demand the names and personal identifying information of non-public AFA supporters. Dkt. 139 at 8, 11. SkyWest argues that Rule 26(c)(1)(G) is limited to information of "competitive significance" that would place Plaintiffs at a "commercial disadvantage" if disclosed, and that the categories at issue here do not qualify as such. Dkt. 139 at 12. Contrary to SkyWest's bare assertion, the activities of labor unions have been found well within the scope of F.R.C.P. 26(c)(1)(G). "Labor unions, and their representation of employees, quite obviously pertain to or are related to commerce and deal with the commercial life of the country." *Am. Airlines v. NMB*, 588 F.2d 863, 870 (2d Cir. 1978). Here, the AFA is plainly in competition with those who seek to retain SIA, and would be at an obvious disadvantage if it could not communicate without fear of surveillance. This information is not outside the scope of Rule 26 for lack of "competitive significance." The authority relied upon by SkyWest does not address the circumstance present here. In its cited case, the underlying information which the

---

[2] Plaintiffs have agreed to supplement their document production to unredact names of those listed in initial disclosures. In addition, SIA has identified some pages produced in discovery which were inadvertently redacted in a prior production set, Dkt. 140-1, and which has been corrected as of this filing.

court found lacking "competitive significance" was "legal argument." *In re Violation of Rule 28(D)*, 635 F.3d 1352, 1360 (Fed. Cir. 2011).

SkyWest further states that it needs the names and identifying information in order to "explore whether and to what extent AFA was involved in efforts to disrupt SIA's August 2023 election." Dkt. 139 at 11. But Plaintiffs *are producing* the contents of communications regarding the SIA election (albeit with certain names redacted), and any party can add names (or author of a communication) to their initial disclosures if there is a good faith reason for doing so, which will trigger productions for AEO. SkyWest's suggestion that Plaintiffs' Counsel would, in bad faith, deliberately exclude names from the Initial Disclosures to sidestep Plaintiffs' commitments is unfounded. SkyWest also erroneously claims that the protective order would allow Plaintiffs to "withhold communications entirely." Dkt. 139 at 11. But the proposed protective order plainly does not seek to exclude from discovery the content of communications, but only certain personal identifying information. Plaintiffs' proposed protective order safeguards non-party Flight Attendants from disclosure and provides a reasonable backstop, by any party adding names (or designation if name unknown) to initial disclosures, to ensure effective discovery.

In sum, on the issue of names and personal identifying information, SIA has effectively conceded the issue and SkyWest's arguments are unavailing, or mistakenly concern information not covered by the protective order. The motion should be granted as to this issue.

## B. The Authorization Cards.

The second category for protection is:

National Mediation Board election authorization cards collected by AFA (as well as the names of signatories or number of cards).

SIA represents that it is no longer seeking information relating to the AFA authorization cards, aside from the dates and number of cards signed within six months before or after SIA's

August 2023 election (*i.e.*, from February 2023 to February 2024) (Dkt. 140 at 13, 15), and the unredacted cards of individuals named on any party's Initial Disclosures. Dkt. 140 at 13. While Plaintiffs welcome this concession, even this narrowed approach does not obviate the need for the protective order.

SIA first contends that cards signed between February 2023 and February 2024 are now too old to be filed with the NMB and that such allegedly "stale" documents cannot qualify as confidential commercial information. Dkt. 140 at 15. While substantially out of date business information is less likely to warrant protection under Rule 26, here 2023-2024 is relatively recent, and the fact, by itself, that those specific cards are expired for purposes of submission to the NMB does not divest them of all value to Plaintiffs or remove all likely harm. While accounting for some employee turnover, it is likely that most of the cards collected in 2023 are from Flight Attendants still employed at SkyWest, and employees who signed a card once may be inclined to do so again. Such information is of intrinsic value to the AFA, as described in our Motion. Moreover, SkyWest provides no authority for the claim that the specific type of business information at issue here, authorization cards, is unworthy of protection after a mere two years.

As to its "need" for information on the number of cards signed within a certain time frame, SIA argues this is necessary to "show whether (and how much) of an advantage AFA gained (thus harming SIA) through misuse of SIA's information and the resulting fallout." Dkt. 140 at 4. SIA's conclusory explanation is faulty. No cards have been submitted to the NMB, and no party has gained an "advantage" or been "harmed" by the mere collection of cards. Further, as Plaintiffs previously demonstrated (Dkt. 131 at 6-7 (Opp. Mot. Compel)), evidence, or information likely to lead to the discovery of evidence, that AFA gained an advantage could not conceivably be gleaned from an examination of information on the number of cards signed and

dates the cards were signed. Such information does nothing to show the motive of the card signer. Additionally, SIA is not entitled to know the total number of cards collected so far or in a given period. Under the RLA, an aspiring representative may submit its showing of interest to the NMB at a time of its choosing and should not be compelled to prematurely show its hand.

SIA also seeks the unredacted cards signed by any individual on a party's initial disclosures. Plaintiffs oppose producing cards under any circumstances, as such production could have an irreparable chilling effect on SkyWest Flight Attendants. If SIA believes there is a need to know the union sympathies of individuals being deposed, there are surely less intrusive means of doing so. Moreover, evidence that an individual once signed a card would scarcely show a meaningful bias impacting testimony under oath.[3] *See* Dkt. 132 at 6-7 (Opp. Mot. Compel).

As to SkyWest, while it remains, seemingly superficially, opposed to protecting the authorization card information, it makes no showing of a need for the cards.

Plaintiffs' protective order concerning the authorization cards should be entered, as even SIA's narrowed request still seeks confidential commercial information the disclosure of which would chill employee rights.[4]

### C. The AFA Financial Information.

The third category for protection, revised in italics as follows, is:

> AFA financial information, outside the scope of AFA's federally-filed financial reports (and those of its subsidiaries), the AFA's financial support provided to the individual Plaintiffs, *information regarding payments made to the AFA and its*

---

[3] As shown in our opposition to SIA's Motion to Compel, the related argument that persons who signed cards or communicated with AFA would have information about allegedly confidential SIA information supposedly used by the AFA. (Dkt. 140 at 13, n.10), is without merit. *See* Dkt. 132 at 4, 6-7.

[4] In the event the Court orders produced the dates and number of cards signed from February 2023 to February 2024, Plaintiffs propose that a list or tally would satisfy request, and be less invasive and burdensome than redacting the actual cards.

*officers by other carriers, and a general description of expenditures regarding the AFA campaign at SkyWest.*

In responding, SIA offers that it "does not seek itemized receipts or spending records. SIA seeks a reasonable, general description of expenditures" relating to the AFA campaign at SkyWest. Dkt. 140 at 14.[5]

SkyWest represents that the financial information it seeks is "information regarding payments made to AFA and its officers by other carriers." Dkt. 139 at 6. However, counsel for SkyWest and for Plaintiffs previously met and conferred on the point, and Plaintiffs have produced responsive documents. Such information was not intended to be covered by the motion, and Plaintiffs now expressly exclude it.

Here, Plaintiffs agree that information on the two foregoing points may be excluded from the protective order, [6] and have revised the proposed order to reflect this (Ex. A). Plaintiffs' pursuit of a protective order regarding financial information is premised in part on concerns that disclosure of "itemized receipts or spending records" might allow identification of AFA supporters with reasonable certainty. Such concerns are not present in relation to payments from other carriers or with a general description of expenditures. While Defendants do not otherwise affirmatively withdraw their opposition to the protective order regarding the financial information, their oppositions are based on only these points, which have now been excluded. Plaintiffs' protective order as to financial information should be granted.

---

[5] SIA's current position curtails its original request:"[i]dentify and describe all payments an expenditures, including obligations or debts incurred, made by or on behalf of AFA in its campaign to displace and/or replace SIA as the labor representative for SkyWest flight attendants." Dkt. 140-3 at 3 (SIA Interrogatory No. 14).

[6] Counsel for Plaintiffs conferred with Defendants' Counsel prior to the motion, and no party identified these two points relating to financial information. While excluded from coverage by the protective order, Plaintiffs maintain their rights to otherwise object.

III.    **Disclosure Would Harm Plaintiffs and Non-Party AFA Supporters by Chilling RLA Protected Activity.**

We demonstrated through affirmative evidence that compelled production of the information sought to be protected would have a significant chilling effect on the exercise of constitutional and statutory rights of SkyWest Flight Attendants and adversely impact the AFA. Dkt. 131-4 (David Decl.). Defendants have produced no evidence to the contrary and, indeed, SIA has proudly conceded that it disqualified a Flight Attendant from participating in an election based on having signed an authorization card (for which the U.S. Department of Labor is suing SIA). Dkt. 140 at 19.

Defendants complain that no individualized proof of harm has been presented, but in addition to the David Declaration and SIA's admission, it is well established as a matter of law that employees are chilled in exercising their protected rights when surveillance by the employer is present. The NMB has held that surveillance is a *per se violation* of the RLA. *See Am. Trans Air, Inc.*, 28 NMB 163, 181 (2000). The NMB has also held that the impression of surveillance is a basis for finding interference. *Laker Airways, Ltd.*, 8 NMB 236, 250 (1981). *See also Am. Freightways Co., Inc.*, 124 NLRB 146, 147 (1959) ("interference, restraint, and coercion … [under the NLRA] does not turn on the employer's motive … The test is whether the employer engaged in conduct which, it may reasonably be said, tends to interfere with the free exercise of employee rights under the Act.").[7]

Plaintiffs have sufficiently demonstrated the harm that would likely occur absent the requested protective order.

## CONCLUSION

---

[7] SIA is not exempt. *See N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 240 (1978) (noting the "danger of witness intimidation … with respect to current employees" given ability of a "union [to] …exercise … authority over its members and officers.").

WHEREFORE, Plaintiffs respectfully request that this Court enter a protective order, pursuant to F.R.C.P. 26(c)(1)(G).

DATED: September 26, 2025

/s/ *John J. Grunert*
JEFFREY A. BARTOS, *pro hac vice*
JOHN J. GRUNERT, *pro hac vice*
Guerrieri, Bartos & Roma, P.C.
1717 K Street, NW, Suite 900
Washington, DC 20006
Telephone: (202) 624-7400
Email: jbartos@geclaw.com
Email: jgrunert@geclaw.com

SCOTT YOUNG (10695)
CHRISTOPHER W. DROUBAY (12078)
Spencer Fane LLP
10 Exchange Place, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 521-9000
rsyoung@spencerfane.com
cdroubay@spencerfane.com

JOSHUA SHIFFRIN, *pro hac vice*
GRACE RYBAK, *pro hac vice*
Bredhoff & Kaiser P.L.L.C.
805 15th Street NW, Suite 1000
Washington, D.C. 20005
Telephone: (202) 842-2600
jshiffrin@bredhoff.com
grybak@bredhoff.com

*Counsel for Association of Flight Attendants-CWA AFL-CIO, Shane Price, Tresa Grange, Brandon Finley, Jacque Crossley, and Gailen David*

## CERTIFICATION AS TO PAGE AND WORD LIMITATIONS

I, John J. Grunert, certify that this Motion for Protective Order contains 3,046 words and complies with DUCivR 7-1(a)(4).

/s/ *John J. Grunert*
JOHN J. GRUNERT, *pro hac vice*
Guerrieri, Bartos & Roma, P.C.

## CERTIFICATE OF SERVICE

THIS CERTIFIES that on September 26, 2025, I electronically filed the foregoing Reply In Support of Motion for Protective Order Pursuant to Fed. R. Civ. P. 26(c) with the Clerk of the Court by using the CM/ECF system, thereby providing service upon all parties.

/s/ *John J. Grunert*
JOHN J. GRUNERT, *pro hac vice*
Guerrieri, Bartos & Roma, P.C.