Gregory M. Saylin
Emily T. Howe
HOLLAND & HART LLP
222 South Main St., Suite 2200
Salt Lake City, UT 84101
(801) 799-5973
gmsaylin@hollandhart.com
ethowe@hollandhart.com

Douglas W. Hall (*pro hac vice*)
Thomas R. Chiavetta (*pro hac vice*)
Bayley F. Johnson (*pro hac vice*)
JONES DAY
51 Louisiana Ave N.W.
Washington, DC 20001
(202) 879-3939
dwhall@jonesday.com
tchiavetta@jonesday.com
bfjohnson@jonesday.com

*Attorneys for Defendant*
*SkyWest Airlines Inc.*

Patricia T. Stambelos (*pro hac vice*)
STAMBELOS LAW OFFICE
543 Country Club Dr., Suite B209
Simi Valley, CA 93065
(805) 578-3474
patricia@patriciastambelos.com

---

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ASSOCIATION OF FLIGHT ATTENDANTS; AFL-CIO, SHANE PRICE, TRESA GRANGE; and BRANDON FINLEY;<br><br>    Plaintiffs,<br><br>v.<br><br>SKYWEST AIRLINES INC.; SKYWEST INFLIGHT ASSOCIATION;<br><br>    Defendants. | **SKYWEST AIRLINES INC.'S PARTIAL OPPOSITION TO COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS CERTAIN COUNTERCLAIMS**<br><br>Civil No. 2:23-cv-00723-DBB-DBP<br><br>Judge David Barlow<br>Magistrate Judge Dustin B. Pead |

Counterclaim Defendants'[1] Motion to Dismiss Certain Counterclaims (Dkt. 129) (the "Motion") seeks to dismiss SkyWest Inflight Association's ("SIA") counterclaims against them. Counterclaim Defendants have not moved to dismiss any of SkyWest's counterclaims. However, given that they seek to dismiss SIA's Stored Communication Act ("SCA") counterclaim that is similar to that brought by SkyWest against Counterclaim Defendant Shane Price,[2] SkyWest files this partial opposition to the extent any ruling by the Court on the Motion could be construed to have application to SkyWest's SCA counterclaim. *See* SkyWest Airlines Inc.'s Answer to Compl. and Countercl. ("SkyWest Countercl.") ¶¶ 36-39, Dkt. 38; SIA Am. Countercl. ¶¶ 89-93, Dkt. 110. In the name of judicial economy, SkyWest presents its arguments now so that the Court need not separately consider them. To avoid unnecessary repetition, SkyWest joins SIA's opposition and hereby incorporates SIA's SCA-specific facts, legal standard, and arguments here by reference. *See* SIA's Opp'n to Countercl. Defs.' Mot. to Dismiss Certain Countercls. ("SIA Opp'n") at 3-7, 12-15, Dkt. 145. What follows is SkyWest's supplemental position.

## FACTUAL BACKGROUND

SkyWest additionally asserts the following facts. Pursuant to SIA's bylaws, it holds regularly scheduled elections by which the flight attendants select SIA representatives and Board members. SkyWest Countercl. ¶ 11, Dkt. 38. In August of 2023, SIA held an election for positions on the Board. *Id.* ¶ 12. This election was administered by Vote-Now, which hosted the election using a web-based balloting service. *Id.* ¶¶ 13-14. Prior to the election, SkyWest provided SIA a

---

[1] The Association of Flight Attendants, AFL-CIO ("AFA"), Shane Price, Tresa Grange, Jacque Crossley and Gailen David.

[2] SkyWest has thus far only brought an SCA counterclaim against Price. Its counterclaims are set forth in SkyWest's Answer to Complaint and Counterclaims (Dkt. 38).

list of all current flight attendants, and each person's unique employee identification number and voting credentials ("Confidential Employee Information"). *Id.* ¶ 16. To vote, SkyWest flight attendants use their individualized and unique credentials that were communicated to them through the SIA website. *Id.* ¶ 15.

Months prior to the election, Price discovered a vulnerability in the SIA website, but did not report it to SIA or SkyWest, choosing instead to exploit it for his own nefarious purposes. *Id.* ¶ 19. Price brazenly and unlawfully hacked into the SIA website and obtained the Confidential Employee Information. *Id.* ¶ 1. Using this stolen information, Price impersonated fellow flight attendants, attempting to vote on behalf of the other flight attendants or view their submitted ballots on the VoteNow website. *See id.* ¶¶ 1, 19-20, 22.

**ARGUMENT**

Counterclaim Defendants make two sparse arguments as to why SIA's SCA counterclaim against them should be dismissed. Neither is correct. For judicial economy, SkyWest joins and incorporates by reference the points and authorities set forth in SIA's Opposition in so much as they relate to SkyWest's SCA counterclaim. *See* SIA Opp'n at 12-15, Dkt. 145. SkyWest, below, supplements these arguments as follows:

**I.      The SIA Website and the Vote-Now Websites Are Facilities.**

**A.      The SIA Website.**

First, the Counterclaim Defendants contend SIA failed to allege that the SCA claim was based on the hacking of a "facility." Without providing any controlling law supporting their definition of "facility," they simply contend that the SIA website is not one. However, the allegations before the Court – which must be taken as true – are sufficient to show that it is a

3

website used to store and facilitate the electronic transfer of "signs, signals, writing, images, sounds, data, or intelligence of any nature. . . ." 18 U.S.C. § 2510(12). The SIA website is not alleged to be merely a stand-alone computer or mobile phone as in the cases upon which Counterclaim Defendants rely.[3] On the contrary, SkyWest transferred the Confidential Employee Information needed for the subject SIA election to the SIA website and then permitted that it be stored thereon. *See* SkyWest Countercl. ¶ 16, Dkt. 38. The Confidential Employee Information was stored on the SIA website for the express purpose of being communicated to each SkyWest flight attendant so that he or she could use it as credentials to vote in the election. *See id.* ¶¶ 15-16; SIA Opp'n at 14, Dkt. 145 (noting SIA transmitted information to its members, including their individualized voting credentials, through a protected portion of SIA's website from which members would access and retrieve their voting credentials). Thus, SkyWest's and the flight attendants' communications with the SIA website – storing, accessing and using the information – were so that flight attendants could participate in the voting process.

These allegations are sufficient to establish that the SIA website is a facility because it includes a "service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). Importantly, a website "*through which* an electronic communication is provided" is a facility within the meaning of the SCA. *See Expert Janitorial, LLC v. Williams*, No. 3:09-cv-283, 2010 U.S. Dist. LEXIS 23080, at *13 (E.D. Tenn. Mar. 12,

---

[3] *See e.g.*, *Satcom Sol. & Res. LLC v. Pope*, No. 19-cv-02104, 2020 U.S. Dist. LEXIS 80894, at *19-23 (D. Colo. Apr. 17, 2020) (R&R) (noting that iPhones and stand-alone computers are not "facilities" within the meaning of the SCA, instead requiring that the system provide communication services rather than merely use such a service); *see Garcia v. City of Laredo*, 702 F.3d 788, 793 (5th Cir. 2012) (finding that Garcia's cell phone was not a facility under the SCA).

2010) (emphasis added); *see also* 18 U.S.C. § 2701(a)(1). The SCA counterclaim hereby clears the low 12(b)(6) hurdle.

And even if the Court were to agree with Counterclaim Defendants' argument that the transfer and sharing of the Confidential Employee Information was somehow not a communication, the mere posting of it for use by others falls within the definition of "facility." When a website acts as an electronic bulletin board ("configured in such a manner as to restrict public access") it qualifies as a facility under the SCA. *See Kaufman v. Nest Seekers, LLC,* No. 05 CV 6782, 2006 U.S. Dist. LEXIS 71104, at *18-19 (S.D.N.Y. Sep. 26, 2006) (denying a motion to dismiss because "[a]bsent discovery, it cannot be ascertained whether the nature of the [w]ebsite's posting function is that of an online forum or message board so as to constitute an electronic bulletin board").[4] Allegations that confidential information was posted and stored for use by others in a manner that was designed to prevent public access are sufficient as a matter of law to state a claim for hacking a facility under the SCA.[5] *See* SkyWest Countercl. ¶ 17, Dkt. 38. Accordingly, the Motion should be denied.

---

[4] *See also Inventory Locator Serv., LLC v. Partsbase, Inc*., No. 02-2695 Ma/V, 2005 U.S. Dist. LEXIS 32680, at *75 (W.D. Tenn. Sep. 2, 2005) (denying a motion for summary judgment and finding that a website that "operates a web-based forum in which potential buyers and sellers of airplane parts can communicate their requests to one another" and "contains an electronic bulletin board where customers can post requests or offers," fits within the definition of electronic communication service).

[5] While not necessary to state claims, the SIA website permits flight attendants to transmit and post information through forums.  Should the Court find the SCA counterclaim to be insufficient as alleged, SkyWest will seek leave to amend so that it can add additional allegations in support of its counterclaim.

### B.   The Vote-Now Website.

If that were not enough, the SIA website is not the only facility at issue here. Price also hacked into the Vote-Now website itself. Importantly, Counterclaim Defendants do not even argue that the Vote-Now website is not a facility. On this basis alone, the Motion should be denied.

Vote-Now is a web-based balloting service that hosts and virtually administers elections. SkyWest Countercl. ¶¶ 13-14, Dkt. 38. The Vote-Now website is password-protected and the ballots were designed to remain anonymous and secure. *Id.* ¶ 14. To vote, flight attendants had to log into the Vote-Now website using their own, individualized and unique credentials. *Id.* ¶ 15. Price logged into Vote-Now's website "multiple times using login credentials issued to other SkyWest employees and attempted to view the ballots submitted by those individuals." *Id.* ¶ 20.

Price, thus, outrageously and clandestinely accessed the Vote-Now website by intercepting flight attendants' expression of their votes, attempting to submit votes for them instead. *Id.* ¶¶ 20, 22, 28; SIA Am. Countercl. ¶ 22, Dkt. 110. With the hacked credentials, he accessed ballot information and the flight attendants' voting status. SkyWest Countercl. ¶ 20, Dkt. 38. Flight attendants' access of the Vote-Now website was for only one purpose – to communicate their votes to SIA for the election, storing those communications on the Vote-Now website until the cumulative election results were conveyed to SIA. *See id.* ¶¶ 13-15, 17, 22. This is no different than if flight attendants had emailed their votes to the Vote-Now website and stored the emails there until they were tallied and conveyed to SIA.[6]

---

[6] Allegations that a website provides users the ability to use the website's email function is sufficient to survive a motion to dismiss. *See Kaufman*, 2006 U.S. Dist. LEXIS 71104, at *19 (denying a motion to dismiss and holding that the complaint "indicates that subscribers have the ability to use the [w]ebsite's email function" and that "it cannot be determined, on the pleadings alone, whether the [w]ebsite[] sufficiently acted as an email provider").

When considered in the context of Price's clandestine planning and access of the two website systems, it is all the clearer. Taking all allegations as true, Price discovered he could hack into the Confidential Employee Information and the voting system months before the election, hiding it from both SkyWest and SIA. SkyWest Countercl. ¶ 19, Dkt. 38. Instead, he told the AFA and coordinated with them to use his hacked hole in the security so he could interfere with the election by accessing the Confidential Employee Information and the flight attendant stored electronic voting information, and then attempt to vote on their behalf, intercepting communications between the flight attendants and SIA. *Id.* ¶¶ 19-22; SIA Am. Countercl. ¶¶ 21-28, Dkt. 110. Price was asked to use his hacked access to "check" to see if 16 specific flight attendants had voted in the election. SIA Am. Countercl. ¶ 41, Dkt. 110. Counterclaim Defendants, in their own words, used the electronically stored communications (being the Confidential Employee Information and the voting data itself) to "cast serious doubt on the election results and completely undermine SIA's election integrity." *Id.* ¶ 55. The SCA was expressly created to address exactly this situation: "the growing problem of unauthorized persons deliberately gaining access to, and sometimes tampering with, electronic or wire communications that are not intended to be available to the public." *Kaufman*, 2006 U.S. Dist. LEXIS 71104, at \*13 (quoting S. Rep. No. 99-541, at 35 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, at 3589).

There is no question that both the SIA website and the Vote-Now website are facilities within the meaning of the SCA. The Motion should thus be denied.

**II.     The Counterclaims Sufficiently Allege Electronic Communication.**

   **A.     The Confidential Employee Information is an Electronic Communication.**

The SCA defines "electronic communication" broadly, as "*any* transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce," excluding narrow exceptions that are inapplicable here. 18 U.S.C. § 2510(12) (emphasis added). As explained above, the Confidential Employee Information was communicated electronically from SkyWest to SIA and stored on the SIA website, clearly falling within the definition. *See supra* at 4. Through the SIA website, SIA communicated this information to its members as well. *See supra* at 4-5. Once the information was conveyed electronically to flight attendants, they used it to access the voting system. The communication of the Confidential Employee Information falls within the SCA.

The Counterclaim Defendants argue to the contrary based on *Cobra Pipeline Co.* However, that ruling narrowly focused on whether or not the "electronic storage" requirement was met. *See Cobra Pipeline Co. v. Gas Nat., Inc*., 132 F. Supp. 3d 945, 952 (N.D. Ohio 2015) (The communications accessed by defendants were not in "electronic storage" for the purposes of this statute.). The *Cobra Pipeline* Court was considering whether information stored on a website was there as its final "destination" or whether it was stored there so that it could be communicated further. *See id.* at 949-50. Here, the allegations in the Counterclaim make clear that the Confidential Employee Information was generated for and stored on the SIA website specifically so it could be thereafter communicated to flight attendants who would in turn communicate the

same information to the Vote-Now website.[7] *See* SkyWest Countercl. ¶ 16, Dkt. 38; SIA Opp'n at 14, Dkt. 145 (noting SIA transmitted information to its members, including their individualized voting credentials). *Cobra Pipeline* only reinforces that the Confidential Employee Information falls within the SCA's definition of an electronic communication.

## B.     The Votes and Ballots are Electronic Communications.

The ballots, votes, and messages on the Vote-Now platform also constitute electronic communications. As set forth above, the voting status and decisions conveyed by flight attendants to SIA for the purposes of participating in the voting process are electronic communications. *See supra* at 6-7. Opening a ballot for the SIA election, communicating one's vote, and receiving a message that one has already voted, are transmittals of signs, signals, writing, images, sounds, data, or intelligence of any nature. *See* SkyWest Countercl. ¶¶ 13-15, 20, 22, Dkt. 38; SIA Am. Counterclm. ¶ 41, Dkt. 110; 18 U.S.C. §2510(12). After all, voting is the act of communicating one's choice in an election to those tallying the vote. Counterclaim Defendants do not argue otherwise. The Motion should be denied.

## CONCLUSION

Counterclaim Defendants' Motion should be denied because the SIA and Vote-Now websites are "facilities" within the meaning of the SCA. The Confidential Employee Information and the voting ballots, data, records and messages are "electronic communications" under the statute. Accordingly, the SCA counterclaim does not fail to state a claim upon which relief can be granted. The Motion should be denied.

---

[7] Notably, the electronic storage requirement is not a ground upon which the Counterclaim Defendants move to dismiss the SCA counterclaim. *See* Mot. at 10-12, Dkt. 129.

DATED this 15th day of October, 2025.

HOLLAND & HART LLP


*/s/ Emily T. Howe*
Gregory M. Saylin
Emily T. Howe

JONES DAY
Douglas W. Hall
Thomas R. Chiavetta

STAMBELOS LAW OFFICE
Patricia T. Stambelos

*Attorneys for Defendant SkyWest Airlines Inc.*


35933324