Gregory M. Saylin (9648)
Tyson C. Horrocks (12557)
Emily T. Howe (18294)
Jessica A. Ramirez (17593)
HOLLAND & HART LLP
222 South Main St., Suite 2200
Salt Lake City, UT 84101
(801) 799-5973
gmsaylin@hollandhart.com
tchorrocks@hollandhart.com
ethowe@hollandhart.com
jearamirez@hollandhart.com

Douglas W. Hall (*pro hac vice*)
Thomas R. Chiavetta (*pro hac vice*)
JONES DAY
51 Louisiana Ave N.W.
Washington, DC 20001
(202) 879-3939
dwhall@jonesday.com
tchiavetta@jonesday.com

*Attorneys for Defendant*
*SkyWest Airlines Inc.*

Patricia T. Stambelos (*pro hac vice*)
STAMBELOS LAW OFFICE
543 Country Club Dr., Suite B209
Simi Valley, CA 93065
(805) 578-3474
patricia@patriciastambelos.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| ASSOCIATION OF FLIGHT ATTENDANTS; AFL-CIO, SHANE PRICE, TRESA GRANGE; and BRANDON FINLEY;<br><br>    Plaintiffs,<br><br>v.<br><br>SKYWEST AIRLINES INC.; SKYWEST INFLIGHT ASSOCIATION;<br><br>    Defendants. | **DEFENDANT SKYWEST AIRLINES INC.'S MOTION FOR TERMINATING SANCTIONS FOR PLAINTIFFS' SPOLIATION**<br><br>**(REDACTED)**<br><br>Civil No. 2:23-cv-00723-DBB-DBP<br><br>Judge David Barlow<br>Magistrate Judge Dustin B. Pead |

**TABLE OF CONTENTS**

Page No(s).

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION .................................................................................................................1

STATEMENT OF RELEVANT FACTS ..............................................................................5

I.      BACKGROUND. ......................................................................................................5

II.     GRANGE'S DELETION OF EVIDENCE. ..............................................................7

III.    OTHER PLAINTIFFS' FAILURE TO PRESERVE AND DELETION OF
        EVIDENCE...............................................................................................................12

        A.      Plaintiffs and other Parties. ..........................................................................13

        B.      Other Examples of Thread Participants Deleting Messages...........................13

        C.      The Deletions Show Intentional Conduct. .....................................................16

IV.     DEFENDANTS CANNOT KNOW THE FULL EXTENT OF THE
        SPOLIATION. ...........................................................................................................16

ARGUMENT........................................................................................................................20

I.      PLAINTIFFS COMMITTED SPOLIATION.............................................................21

        A.      WhatsApp Messages have been lost because Plaintiffs deleted and
                otherwise failed to take reasonable steps to preserve them. ........................22

                1.      Plaintiffs knowingly and intentionally deleted ESI evidence
                        relevant to the litigation. ..................................................................22

                        a.      Grange Destroyed Evidence. ................................................22

                        b.      Finley & Price Destroyed Evidence.....................................24

                2.      Plaintiffs failed to take any steps to preserve the WhatsApp
                        messages. ..........................................................................................24

        B.      Plaintiffs had an obligation to preserve the evidence Grange, Price, Finley
                and other thread participants deleted. .............................................................26

       1.      Messages Deleted After Filing the Complaint. ..........................................27

       2.      Messages Deleted After AFA Sent the Demand Letter. ...........................28

       3.      Messages Deleted in August and September 2023. ..................................29

   C.      The deleted WhatsApp messages and threads cannot be restored or replaced through additional discovery. ...................................................30

II.     TERMINATING SANCTIONS ARE NECESSARY UNDER RULE 37(e). ..................32

   A.      Plaintiffs acted with intent to deprive Defendants of relevant evidence. ..............32

       1.      Grange testified under oath that she acted with intent to deprive Defendants of the evidence. ......................................................................33

       2.      Plaintiffs Price, Finley, and AFA acted with intent to deprive Defendants of the evidence. ......................................................................33

           a.      Plaintiffs acted with intent because they were on notice that the evidence is potentially relevant and failed to take measures to preserve relevant evidence, or otherwise seeks to keep incriminating facts out of evidence. ..................................34

           b.      The timing of Plaintiffs' destruction establishes intent. ................35

           c.      Plaintiffs' failure to inform Defendants of the destruction further supports a finding of intent. ...............................................35

       3.      Terminating sanctions are the only appropriate sanction. .........................36

III.    SKYWEST IS ENTITLED TO ITS FEES AND COSTS. .................................................38

CONCLUSION ..................................................................................................................39

## TABLE OF AUTHORITIES

**Page No(s).**

### CASES

*Amann v. Office of the Utah AG*,
No. 2:18-cv-00341, 2023 U.S. Dist. LEXIS 197427 (D. Utah Nov. 2, 2023)........................25

*Browder v. City of Albuquerque*,
187 F. Supp. 3d 1288 (D.N.M. 2016) ...............................................................................25

*Burlington N. & Santa Fe Ry. Co. v. Grant*,
505 F.3d 1013 (10th Cir. 2007) ................................................................................20, 26, 27

*David v. Wasatch Cty.*,
No. 2:24-cv-00215, 2026 U.S. Dist. LEXIS 59560
(D. Utah Mar. 20, 2026).....................................................................................20, 25, 30, 37

*Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*,
497 F.3d 1135 (10th Cir. 2007) ........................................................................................37

*Emuveyan v. Ewing*,
2022 U.S. Dist. LEXIS 82443 (D. Utah May 5, 2022)..........................................................37

*Eze v. City of Las Cruces*,
2025 U.S. Dist. LEXIS 207277 (D.N.M. Oct. 20, 2025).......................................................37

*FDIC v. McCaffree*,
289 F.R.D. 331 (D. Kan. 2012)...........................................................................................25

*Fox v. Steepwater LLC*,
No. 2:16-cv-796, 2018 U.S. Dist. LEXIS 80917 (D. Utah May 14, 2018) ............................27

*In re Cooper Tire & Rubber Co.*,
568 F.3d 1180 (10th Cir. 2009) ........................................................................................34

*Marten Transp., Ltd. v. Plattform Advert., Inc.*,
No. 14-cv-02464, 2016 U.S. Dist. LEXIS 15098 (D. Kan. Feb. 8, 2016)..............................24

*NLRB v. Washington Aluminum Co.*,
370 U.S. 9 (1962)................................................................................................................22

*Ol Priv. Couns., Ltd. Liab. Co. v. Olson*,
No. 2:21-cv-00455, 2024 U.S. Dist. LEXIS 81502 (D. Utah May 3, 2024) ..........................27

*ORP Surgical, LLP v. Howmedica Osteonics Corp.*,
   Civil Action No. 1:20-cv-01450-RBJ, 2021 U.S. Dist. LEXIS 218816
   (D. Colo. Nov. 12, 2021) ...................................................................................25, 30

*Philips Elecs. N. Am. Corp. v. BC Tech.*,
   773 F. Supp. 2d 1149 (D. Utah 2010)............................................................. passim

*Prescott v. Valdez*,
   1:21-cv-03252, 2026 U.S. Dist. LEXIS 71691 (D. Colo. Mar. 5, 2026)................................33

*SA. Int'l, Inc. v. S.A. Int'l Israel Ltd.*,
   No. 2:23-cv-00877, 2025 U.S. Dist. LEXIS 255419 (D. Utah July 2, 2025) .................. passim

*Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*,
   75 F.4th 1290 ........................................................................................................25

*Sky Jet M.G. Inc. v. VSE Aviation Servs., LLC*,
   No. 23-2210-HLT-ADM, 2025 U.S. Dist. LEXIS 111834 (D. Kan. June 12, 2025),
   (D. Kan. June 12, 2025) ................................................................................32, 34

*Timpte, Inc. v. NLRB*,
   590 F.2d 871 (10th Cir. 1979) .............................................................................22

*TLM Operations, LLC v. Allied Universal Risk Advisory & Consulting Servs.*,
   No. 2:23-cv-00788, 2025 U.S. Dist. LEXIS 194549 (D. Utah Sep. 30, 2025).................27, 29

*Xyngular Corp. v. Schenkel*,
   200 F. Supp. 3d 1273 (D. Utah 2016)..................................................................3, 4, 34, 39

## OTHER AUTHORITIES

Fed. R. Civ. P. 26(b)(1)............................................................................................27, 34

Fed. R. Civ. P. 37......................................................................................................21, 32, 37

Fed. R. Civ. P. 37(e) .......................................................................................... passim

Fed. R. Civ. P. 37(e)(1)............................................................................................21, 32

Fed. R. Civ. P. 37(e)(2)..................................................................................... passim

## INTRODUCTION

Plaintiff Tresa Grange, after consulting with her co-Plaintiffs, deliberately and intentionally deleted evidence for the express purpose of ███████████████████ ██████████████████████████████ Plaintiffs Shane Price, Brandon Finley, and Association of Flight Attendants AFL-CIO ("AFA") took no measures to preserve the evidence Grange and other thread participants were deleting, and in fact, Price and Finley engaged in their own destruction of evidence.

This is one of those extraordinary situations where the Court should impose the most serious of sanctions because the litigants' conduct flies in the face of the Rules of Civil Procedure, due process and the integrity of the courts and our judicial system. Where a plaintiff comes before this Court seeking money and declaratory relief, she cannot do so deceptively, intentionally deleting relevant and material evidence so that it will not be available to Defendants, or ever come before this Court or a jury. When parties are involved in such intentional, bad faith conduct, terminating sanctions are the appropriate remedy.

While exceptional, the remedy is just. In frank testimony at Grange's deposition, ███████ ████████████████████████████ This is not a phone falling in a pond, a file disappearing out of a cabinet, or a box of documents accidentally put through the shredder. Grange identified messages that were damaging and decided they should be deleted ███████████ ████████████ To be clear, these are almost entirely *after* she filed a lawsuit against Defendants and *after* SkyWest instructed her lawyers to preserve her records.

1

Here is the exchange where Grange and other Plaintiffs discussed their concern that certain documents would be used against them, the fact that SkyWest would want these documents, and the deletion of these potentially harmful documents:



*See* AFA012418 at AFA012421, attached to Ramirez Decl. as **Exhibit A.**

After testifying about how the messages ███████████████████████████

██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████

2

Deposition of Tresa Grange ("Grange Dep."), 302:11-14, attached to the Decl. of Jessica A. Ramirez ("Ramirez Decl.")[1] as **Exhibit B**. There are more examples of Grange intentionally deleting messages, set forth below, and made worse by Grange's claim that ██████████████████ ██████████████████████████ That leaves the Court (and Defendants) to guess the content of what was deleted, SkyWest deprived of vindicating evidence, and the jury bereft of essential facts.

While Grange is the one who ████████████████████████ the other Plaintiffs were complicit in her conduct, and in fact, Price and Finley deleted messages themselves. In addition to their own improper conduct, all Plaintiffs were aware of Grange's conduct and did nothing to preserve the messages though they could have: (1) marked the messages to be kept, (2) turned off the auto-delete setting; (3) preserved the messages by other means such as forwarding the message to their counsel or taking screen shots; or (4) refused to communicate in a forum where the communications were set not to be retained. *See* Decl. of Dr. Bruce Hartley ("Hartley Decl.") ¶¶ 18, attached as **Exhibit 2**. Plaintiffs AFA, Price, and Finley did none of these things – instead continuing to communicate while knowing that their communications were being deleted.

By defying federal rules, Plaintiffs force Defendants to fend off their claims with incomplete evidence, while pursuing damages and declaratory and injunctive relief. *See* First Supplemental Complaint ("Am. Compl.") at 20, Dkt. 68. Courts in this district have recognized that "[t]here exists an implicit agreement and promise that those who come to the courts to seek help resolving disputes will play by the established rules." *Xyngular Corp. v. Schenkel*, 200 F.

---

[1] *See* Ramirez Decl. attached hereto as **Exhibit 1**. All references to lettered Exhibits refer to the exhibits attached to the declaration of Jessica A. Ramirez in support of this motion.

Supp. 3d 1273, 1322 (D. Utah 2016). But this "promise means little if the public cannot confidently expect that the disputes presented in the courts will be decided according to well-established and carefully-designed rules uniformly applied to all parties, in all lawsuits." *Id.* When parties, as Plaintiffs did, do "not play by the rules, but rather [leaps] over them, bypassing the judicial process," it undermines not only "the [Defendants'] confidence in these proceedings," but the "public's confidence in the fairness of judicial proceedings in general." *Id.* Indeed, "[t]hese are important matters." *Id.*

Plaintiffs have destroyed evidence that goes to the heart of SkyWest's case; deleting communications that undermine Plaintiffs' narrative that they are merely innocent whistleblowers attempting to engage in protected union activity. The deleted evidence destroys this narrative and likely revealed the obvious: that they set out to sabotage SIA – the flight attendant association chosen by SkyWest flight attendants – by undermining their fellow employees' confidence in SIA and win support for their chosen union, the AFA. To accomplish this plot, they hacked into confidential website data and published a video on Facebook showing other people how to run the hack. They even impersonated the SIA President and logged into Vote-Now as her, to humiliate SIA and blow up its leadership election.

What they could not legitimately accomplish by convincing fellow flight attendants to make the AFA their chosen representative, they sought to do through wrongful subterfuge. The deleted correspondence evidenced their scheming and conspiring together – it is what would have made them look bad in Grange's words. The timing of some of their communications is during the appeal of their termination of employment from SkyWest, talking specifically about their actions that go to the heart of this case and whether SkyWest wrongfully terminated them. These

4

communications are vital to defending against Plaintiffs' claims and prosecuting SkyWest's counterclaims. It was expressly for this reason that they were deleted. Plaintiffs cannot sue for "justice and equity" while cheating the federal rules governing this litigation by destroying evidence that undermines their claims. Such unclean hands and deceptive conduct are deserving of terminating sanctions.

**STATEMENT OF RELEVANT FACTS**

I.     **BACKGROUND.**

SkyWest Inflight Association ("SIA") represents SkyWest's flight attendants for purposes of collective bargaining. SkyWest Counterclaim ("Countercl.") ¶ 9, Dkt. No. 38. SIA holds regularly-scheduled elections in which flight attendants select SIA representatives and Board members. Compl. ¶ 40. In August 2023, SIA utilized an online, web-based balloting service, Vote-Now, to administer a Board member election. *Id.* ¶ 41. Plaintiffs Shane Price and Tresa Grange are former SkyWest flight attendants. *Id.* ¶¶ 8-9. Before the August 2023 SIA election, Price (who has a degree in web design and development) manipulated a URL to hack into a non-public area of SIA's password-protected website to obtain confidential SkyWest employee information, including voter credentials. Countercl. ¶ 19. He then impersonated fellow flight attendants, logged into Vote-Now as them, and compromised a SIA leadership election. *Id.* ¶ 20. At Grange's request, Price created a video demonstrating how to access the confidential information (including each flight attendant's voter login) on the non-public area of the SIA website. *Id.* ¶ 21. Grange shared the video with others and posted it on Facebook, exposing the confidential information of over 5,000 SkyWest's flight attendants. *Id.* ¶ 23.

5

SkyWest terminated Price and Grange. Compl. ¶¶ 9-10, 54, 57. Both appealed their terminations through ██████████████████████████████████████████████████ ███████████████████████████████ *See id.* ¶ 58; *see generally id.* at 10. In her appeal submission, ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

AFA003580, attached as **Exhibit C** to Ramirez Decl. She further represented she ████████ ████████████████████████████████████████████████████████ *Id.* at AFA003584. She maintained she █████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████ *Id.* at AFA003581-82.

Plaintiffs have been represented by AFA counsel since long before filing the Complaint. ████████████████████████████████████████████████████████████ ██████████████████████████████████████████. *See* Plaintiffs' privilege log excerpt, attached to the Ramirez Decl. as **Exhibit D**. Following Price and Grange's termination, on September 19, 2023, AFA's associate general counsel sent SkyWest a demand letter, demanding SkyWest reinstate Price and Grange, cease alleged "retaliation against Union activists," and claiming that SkyWest controls SIA in violation of the Railway Labor Act ("RLA"). In the demand letter, AFA threatened litigation, stated if SkyWest did not respond by that Friday "AFA will seek all legal remedies on their behalf," and threatened to "demonstrate" that SkyWest controls SIA. *See* AFA011348, attached to Ramirez Decl. as **Exhibit E.**

On September 22, 2023, SkyWest responded to AFA's demand letter, disputing AFA's claims and issuing a litigation hold. *See* Letter from SkyWest to AFA, Dated Sept. 22, 2023,

6

attached to Ramirez Decl. as **Exhibit F** ("[I]f you remain intent on seeking 'all legal remedies on their behalf' you are *further instructed to preserve* all communications, documents, and records, between or relating to AFA, Price and Grange, as well as anyone else involved in the computer intrusion scheme that led to their terminations.") (emphasis added).

On October 11, 2023, Grange, Price, current flight attendant Finley, and AFA, filed this lawsuit. *See* Compl., Dkt. 1. Plaintiffs allege, among other things, that SkyWest violated the RLA by terminating Price and Grange, for allegedly controlling SIA, for SkyWest's termination appeal review process, and for allegedly interfering with Plaintiffs' organizing efforts. *See generally* Am. Compl., Dkt. 68. On February 6, 2024, SkyWest filed counterclaims against Price and Grange for breaching their confidentiality agreements by, among other things, disclosing confidential employee data. *See* Countercl. ¶¶ 46-55, Dkt. 38.

## II.    GRANGE'S DELETION OF EVIDENCE.

Around March 2024, five months *after* she filed her complaint and one month *after* SkyWest filed its counterclaims, ███████████████████████

███████████████████████████████████

██████████████████████. Ex. B, Grange Dep. at 301:18-302:4.[2] Conversing with her co-Plaintiffs and others about their concerns that, even if their messages were encrypted, they

---

[2] Of significant concern is that ████████████████████████
████████████████████████████████████████
████████████████████ Ex. B, Grange Dep. at 117:7-10. ███████████████████████████ *Id.* at 301:18-302:4. For the purposes of this Motion, SkyWest assumes that Grange's later statement corrected her earlier statement and thus assumes that ████████████████████████
██████████████ Notably, either time was well within the time within which she was required to preserve communications.

7

were subject to discovery in this case, Grange explained that she ███████████████ ███████████████████ that "they can really use to prove we had any bad intentions" "a few times." AFA012418 at AFA012421, attached to Ramirez Decl. as **Exhibit A**.

In reference to this WhatsApp chat exchange, Grange's testimony ████████████ ████████████

      Q.   ████████████████████████████████████████





Ex. B, Grange Dep. at 296:7-11, 297:1-5, 297:11-19, 299:17-22, 300:1-16, 301:2-6, 302:11-14.

Once set to auto-delete, Grange's messages deleted from everyone's message in the chat – meaning that no record of the messages are kept in anyone's account. *See* Hartley Decl. ¶¶ 11-14. They are permanently deleted and cannot be recovered. *Id.* ¶¶ 11-14, 17.

Grange's evidence of destruction did not stop there. In addition to ███████████ ███████ Grange selectively deleted specific messages in WhatsApp threads. In fact, Grange deleted at least 12 of her messages, originally sent between September 14, 2023 and July 18, 2024, in at least four different WhatsApp group threads: AFA SKYWEST BASE ADVOCATE, AFA General Chat, Double O ITS TIME Agents, and AFA SkyWest Union Supporters ONLY:

- Grange deleted at least two messages she originally sent on the evening of September 14, 2023, the day after Grange was terminated from SkyWest, in the AFA SKYWEST BASE ADVOCATE WhatsApp thread. *See* AFA012864-65, attached hereto as **Exhibit G**. The deleted message on September 14, 2023 is relevant because on that date, the thread participants were discussing Price and Grange's acts of "exposing" the SIA website vulnerability and voter codes and claims that SkyWest was blaming Price

9

and Grange – the very heart of this litigation. In fact, one of Grange's deleted messages came immediately after a message that "AFA Legal is dealing with this issue and it will most likely bring the entire SIA farce into the spotlight." *Id.* at AFA012865.

- Grange deleted at least three messages in the AFA General Chat WhatsApp thread that she originally sent on September 19, 2023, immediately after AFA sent SkyWest a demand letter on behalf of Price and Grange. *See* AFA012740-44, attached as **Exhibit H** to Ramirez Decl. The deleted messages are relevant because, during the timeframe of the deleted message, the thread participants were discussing the AFA's demand letter, seeking reinstatement of Price and Grange, and threatening legal action. *See id.*; *see also* Ex. E, Demand Letter. These topics form the basis of Plaintiffs' second cause of action in this lawsuit. *See* Am. Compl. ¶¶ 69-70, Dkt. 68.

- Five months after Grange filed her complaint and one month after SkyWest filed its counterclaim, Grange deleted at least six messages in the Double O ITS TIME Agents WhatsApp thread that she originally sent on March 21, 2024 and March 22, 2024. *See* Ex. A, at AFA012418-21). On those days, the participants in the thread were discussing Grange and Price's submissions to the review board, through which Grange and Price were appealing their terminations. *See id.*; *see also* Ex. B, Grange Dep. at 296:14-18. The deleted messages are relevant because the topic of the surrounding correspondences, SkyWest's termination of Price and Grange and SkyWest's review board process, serve as the basis of Plaintiffs' second and third cause of action in this lawsuit. *See* Am. Compl. ¶¶ 69-75, Dkt. 68. Notably, these deleted messages were sent immediately prior to and following Grange's message that she believed SkyWest would use some of their WhatsApp threads against her and Shane in their appeals and that there is not "much else they can really use" against her. Ex. A, at AFA012420-23. By her own testimony, the deleted messages were the best evidence Defendants could obtain against her. *Id.* at AFA012420-23.

- Grange deleted at least one message in the AFA SkyWest Union Supporters ONLY thread. *See* AFA012297-99, attached to Ramirez Decl. as **Exhibit I**, that was originally sent on July 18, 2024, nine months after Grange filed her complaint and five months after SkyWest filed its Counterclaim. In this thread, the participants were discussing potential criminal charges they could be facing from the hacking and SIA's investigation. The deleted messages before and after the deletions discuss exposing confidential information through the election hack – the basis of SkyWest's counterclaims being among the reasons SkyWest terminated Price and Grange.

Again, once deleted, Grange's messages deleted from *everyone's* message in the chat – meaning that no record of the messages are kept in anyone's account. *See* Hartley Decl. ¶¶ 11-14, 17. Simply stated, they are permanently deleted and cannot be recovered. *Id.* ¶ 17. Additionally, Grange's messages with Debora Burt (then on the SIA Board and someone with whom Grange was sharing contemporaneous information about the hacking of the VoteNow website) further demonstrate Grange's intent. For example,



BURT000208, attached as **Exhibit J** to Ramirez Decl. While SkyWest was fortunate to obtain this document from Burt, the message is inexplicably missing from Grange's version of the text thread. *See* AFA013659, attached as **Exhibit K** to Ramirez Decl.

Ex. B, Grange Dep. at 289:6-290:3.

Grange's destruction went so far as to delete entire WhatsApp threads. Around March 2025–nearly a year and a half into this litigation—Grange

███████ Ex. B, Grange Dep. at 117:20-21; *see also id.* at 118:24-119:16 ████████

████████████████████████████████████████████████

*Id.* at 118:19-21. However, when questioned about ████████████████████████

████████████████████████ *Id.* at 118:22-24.

## III.    OTHER PLAINTIFFS' FAILURE TO PRESERVE AND DELETION OF EVIDENCE.

Plaintiffs Price, Finley, and AFA knew of Grange's conduct and could have taken reasonable steps to preserve her messages but failed to do so. Every participant in the thread, including Price, Grange, and AFA's employees Gailen David and Steve Ekerberg, received a notification when Grange turned on the auto-delete function. Hartley Decl. ¶¶ 15, 20-22. Any one of them could have taken actions to override the auto-delete function to preserve the messages. *Id.* ¶ 18. Moreover, any one of them could have selected to "keep" specific messages that were subject to auto-delete. *Id.* ¶ 18.i. However, they did not do so, and the messages were permanently deleted. *Id.* ¶ 21. Additionally, Price, Finley, and AFA knew Grange was also deleting specific messages – as the "deleted by sender" notification appeared for all thread participants. *Id.* ¶ 22. Any Plaintiff could have taken other measures to preserve the messages, including taking screen shots and forwarding the message. *Id.* ¶ 18. Or, any Plaintiff could have refused to knowingly continue to communicate with Grange on a forum ████████████████████████ Not only did these individuals fail to preserve the evidence Grange deleted, but they also similarly destroyed evidence:[3]

---

[3] This destruction of evidence is what is known to SkyWest at this time. However, given the Plaintiffs' intentional and strategic deletion of evidence, it is highly likely that other evidence has been deleted that SkyWest does not know about, and may never know about.

**A.    Plaintiffs and other Parties.**

- Plaintiff Shane Price deleted a message in the Double O ITS TIME Agents thread that he originally sent on August 19, 2024. *See* AFA012577, attached to Ramirez Decl. as **Exhibit L**. On this day, the participants, including Plaintiffs, were discussing articles written about the lawsuit, with Plaintiff Brandon Finley commenting that one of the articles "supports SIAs claim that the FA files were hacked." *Id.* at AFA012578. Price appears to be responding to Kelly Frieders' statement that SkyWest is "[s]till lying about 'non-public' and 'hacking' [angry emoji]." *See id.* At the same time, the participants are also discussing allegations of the SIA executive counsel allegedly colluding with SkyWest. *See id.* at AFA012579. The deleted message is relevant because the surrounding allegations are directly related to Plaintiffs' first claim (SkyWest funding and alleged control of SIA) and second claim (SkyWest's termination of Price and Grange).

- Plaintiff Brandon Finley deleted a message in the Double O ITS TIME Agents thread that he originally sent on April 2, 2024. *See* AFA012441-42, attached to Ramirez Decl. as **Exhibit M**. In this thread the participants, including Plaintiffs, are discussing the alleged invalidity of SIA as a labor representative. The deleted message is relevant because this allegation, that SIA is not a valid labor representative and is instead allegedly controlled by SkyWest, is one of Plaintiffs' key allegations in this case. *See Id.*

- Jacque Crossley, an AFA supporter and counterclaim defendant, deleted not only her own messages but as the administrator of threads, she deleted other individuals' messages as well. For example, in the AFA SKYWEST BASE ADVOCATE's thread, Crossley deleted a message that someone wrote (whose name has been redacted) on September 18, 2023, just a month after the election. *See* AFA015643-50, at AFA015649, attached to Ramirez Decl. as **Exhibit N**. Crossley then deleted another message that she wrote immediately after. *Id.* at AFA015650. In this thread the participants, including Plaintiffs, are discussing the AFA campaign and articles about Price and Grange's termination. The deleted message is relevant where Price and Grange's termination form the basis of Plaintiffs' second claim and Defendants have argued that Plaintiffs were using the election hack strategically to undermine SIA and promote the AFA campaign.

**B.    Other Examples of Thread Participants Deleting Messages.**

Plaintiffs were not the only WhatsApp thread participants to delete evidence. Deleting messages was widespread throughout these threads. As evidenced below, the destruction of

13

evidence was so pervasive that the Plaintiffs knew, or at least should have known, that messages were being deleted from the threads. Yet, Plaintiffs did nothing to preserve the evidence.

- Several individuals (whose identities SkyWest does not know because Plaintiffs have redacted their names from the thread) have also deleted messages. On September 15 and 16, 2023 an individual, or individuals, deleted three messages in the AFA SKYWEST BASE ADVOCATE group. *See* Ex. G at AFA012867-68, AFA012877. In this thread the participants are discussing the August 2023 election and problems encountered with voting, SkyWest's response to the election hack, and asking if AFA can "expose this." *See id.* at AFA012867-68. The third deleted message is in regard to a conversation requesting evidence. *See id.* at AFA012877:



These messages are relevant because the participants are not only seeking evidence, which appears to be about the election hack and posting confidential information, but discussing topics that form the basis of this case.

- Someone whose name has been redacted deleted a message originally sent on October 12, 2023 in the AFA SKYWEST BASE ADVOCATE thread. *See* AFA012788-99, at AFA012788, attached to Ramirez Decl. as **Exhibit O**. In this thread, participants are discussing whether or not AFA conceded that Price and Grange admitted to hacking and conspiring to impersonate multiple flight attendants. *See id*. at AFA012793. Later in this thread, an individual whose name is redacted deleted a message originally sent on September 8, 2024. *See* AFA012882-83, at AFA012882, attached to Ramirez Decl. as **Exhibit P**. In this thread, the participants are discussing alleged "union busting" actions by SkyWest. *See id.* at AFA012882. These communications are relevant as they appear in conversations regarding an allegation that Price and Grange admitted to wrongdoing – the basis of Defendant's counterclaims – and are in regard to alleged "union busting" which forms the basis of Plaintiffs' sixth cause of action.

14

- In the OOIT Sidebar Chat, individual(s) with redacted names deleted two messages originally sent on January 17, 2025. *See* AFA012892-99, at AFA012895, attached to Ramirez Decl. as **Exhibit Q**. In this thread the participants are discussing the criminal actions brought against Price and Grange. *See generally id.* Critically, the two messages appear in the same instance as when Price, Grange, and others are strategizing if a message should or should not be deleted from the group thread. *See id.* at AFA012895. Thus, this communication is almost certainly critical to the case where the Plaintiffs are strategically deciding whether or not to delete messages.

- Kelly Frieders deleted a message in the AFA SKYWEST BASE ADVOCATE thread that she originally sent on March 28, 2024, in which the participants are discussing SkyWest's alleged "anti-union activities" and a request to "gather additional information to provide to AFA Legal." *See* AFA012838-55, attached to Ramirez Decl. as **Exhibit R**. This correspondence is relevant where in the surrounding messages the participants are discussing alleged anti-union activities, which form the basis of Plaintiffs' sixth cause of action and a request to gather evidence for AFA.

- Michelle White engaged in extensive deletion. In the AFA SkyWest Union Supporters ONLY thread she deleted two messages, originally sent on August 16, 2024. *See* AFA013907-27, at AFA013911, AFA013916, attached to Ramirez Decl. as **Exhibit S**. These messages are relevant because in this thread, the participants are discussing the lawsuits and SIA's representation of flight attendants and complaints and responses to complaints made to the Department of Labor, and allegations of SkyWest "watching" individuals.

- In the AFA General Chat, White also deleted a message she originally sent on August 9, 2023, soon after the election hack. *See* AFA012755-56, at AFA012756, attached to Ramirez Decl. as **Exhibit T**. These messages are relevant because one participant, whose name has been redacted, appears to be speaking out against AFA and the group of individuals who are pro-AFA. *Id.* at AFA012755. The participants are also discussing voting in SIA. *See generally* Ex. S, AFA013907-27.

- White also deleted a message in OOIT Sidebar Chat that was originally sent on January 1, 2025. *See* Ex. Q at AFA012892. In this thread, the participants are discussing criminal charges the state of Utah brought against Price and Grange for the hacking and exposure of confidential information. Another message in this thread that White deleted is one she originally sent on November 4, 2024. *See* AFA012946, attached to Ramirez Decl. as **Exhibit U**. The deleted messages come in response to a picture of what the participants appear to believe is improper material in the SkyWest crew lounge that they intend to send to AFA legal. *Id.* Thus, these messages are relevant where these allegations form the basis of Plaintiffs' sixth cause of action.

15

## C.      The Deletions Show Intentional Conduct.

The above deletions show Plaintiffs and other thread participants deleted evidence on topics that are key to this litigation including: (1) Price and Grange's termination and appeal (which serve as the basis of Plaintiffs' second and third claim), (2) allegations that SIA is not a valid labor representative and is allegedly controlled by SkyWest (which serves as the basis for Plaintiffs' first cause of action); (3) evidence regarding SkyWest's alleged interference with AFA's unionizing efforts and the display of alleged pro-SIA communications (which forms the basis of Plaintiffs' sixth cause of action); and (4) the validity of Defendants' claim that Price hacked the SIA election and Price and Grange exposed confidential information (which Plaintiffs dispute and which serves as the basis of SkyWest's counterclaim).

The timing of the deletions also evidences that they were intentional. They took place at critical times, including *after* (1) Price's election hack and Price and Grange's exposure of confidential information; (2) Price and Grange's terminations; (3) AFA sent its demand letter to reinstate Price and Grange; (4) Price and Grange's termination review board process; (5) Grange indicated she was concerned that Defendants could use their messages against Price and Grange; (6) other participants were appearing to side with Defendants or speak out against AFA and the campaign; (7) the complaint was filed; and (8) SkyWest's counterclaim was filed.

## IV.      DEFENDANTS CANNOT KNOW THE FULL EXTENT OF THE SPOLIATION.

Grange repeatedly testified at her deposition that ███████████████████

███████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

16



Ex. B, Grange Dep. at 302:15-305:2. Although Grange represented she █████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████  SkyWest only received one WhatsApp thread in discovery that

includes information on the auto-delete setting. *See* Ex. A at AFA012421; AFA012280 attached

to Ramirez Decl. as **Exhibit V**. More specifically, the WhatsApp thread between Grange and

Plaintiff AFA employee Steve Ekerberg indicates that for the time period of October 14, 2024 to

March 3, 2025 the "disappearing message[]" setting was turned on such that messages would

disappear 24 hours after they were sent. *See* Ex. V at AFA012280. Of the deleted messages, Grange

testified:

Q. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████



Ex. B, Grange Dep. at 310:17-311:22. Grange does not dispute that ▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓ *Id.* at 296:1-11; 297:17-298:1 ▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓ *Id.* at 297:1-5; 297:20-298:1; 302:23-303:18; 304:14-21; 305:3-18; 308:5-11; 305:19-307:2; 308:24-309:6. Thus, SkyWest is left in the impossible position of not knowing what it does not know—which is particularly concerning when



18

In addition to ███████████████████████████ Grange testified that ████

████████████████████████████████████████████████████████████████

███████████████ Ex. B, Grange Dep. at 117:20-21; *see also id.* at 118:24-16. But, Grange

███████████████████████████████████████ *Id.* at 118:22-24, 119:24-120:5.

Although Grange asserts ████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████ *See Id.* at 117:22-24. SkyWest will never know the extent of ████████

█████ and cannot subpoena custodians it does not know exist.

Importantly, this is not a case where Grange's guilty conscious compelled her to confess her wrongful conduct, despite a discovery instruction requesting Plaintiffs specifically identify deleted or lost documents. Rather, SkyWest is only aware that these messages were deleted because, in some instances, WhatsApp made a notation in the thread. For example:



*See* Ex. A, at AFA012420. However, WhatsApp does not always identify when a message is deleted, thereby rendering it impossible to know the full extent of Grange's destruction of evidence. *See* Ex. J at BURT000208. Through █████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████ More specifically,

████████████████████████████████████████████████████

19

████████████████████████████████████████████

█████████ *See id.*

Similarly, because WhatsApp does not indicate every time a deletion occurs, SkyWest does not know, and will never know, the full extent of the destruction of evidence. SkyWest cannot depose every single person on the message threads to determine if they deleted other messages (to the extent they even remember). Nor can they know if there are other messages or threads that should have been produced, but instead were strategically deleted. The universe of Plaintiffs' spoliation is not only expansive, but unknown. SkyWest is not just deprived of helpful evidence, but it is left to guess at what relevant and important information has been destroyed and lost forever.

## **ARGUMENT**

Spoliation is "the destruction or significant alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Philips Elecs. N. Am. Corp. v. BC Tech.*, 773 F. Supp. 2d 1149, 1194-95 (D. Utah 2010) (internal quotation omitted). The duty to preserve evidence arises when a litigant knows, or should know, litigation is imminent. *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007); *see also Philips Elecs.*, 773 F. Supp. 2d, at 1195 (same).

Federal Rule of Civil Procedure 37(e) governs the spoliation of electronically stored information ("ESI"), such as text messages. *See David v. Wasatch Cty.,* No. 2:24-cv-00215, 2026 U.S. Dist. LEXIS 59560, at *26 (D. Utah Mar. 20, 2026). Under Rule 37(e), "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is

20

lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court" may impose sanctions. Fed. R. Civ. P. 37(e).

Rule 37(e) establishes two tiers of sanctions based on whether the spoliating party had intent to deprive the other party of the information. *See id.* Under subsection (e)(1), "upon finding prejudice," a court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).[4] Under subsection (e)(2), "upon finding that the party acted with the intent to deprive another party of the information's use in the litigation," the court may, among other sanctions, "dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2). Unlike subsection one, "[s]ubdivision (e)(2) does not include a requirement that the court find prejudice to the party deprived of the information." Notes of Advisory Committee on 2015 Amendments, Rule 37(e)(2); *see also SA. Int'l, Inc. v. S.A. Int'l Israel Ltd.,* No. 2:23-cv-00877, 2025 U.S. Dist. LEXIS 255419, at *20 (D. Utah July 2, 2025) (noting a "finding of prejudice is not required if the court finds that the [spoliating party] 'acted with the intent to deprive [opposing party] of the information's use in the litigation.") (internal quotation marks omitted).

## I.      PLAINTIFFS COMMITTED SPOLIATION.

This litigation centers on a number of related topics: (1) SIA election and Price's corresponding hack of the SIA website, (2) Grange and Price's exposing of confidential information, (3) Price and Grange's terminations and subsequent appeals, (4) Plaintiffs' allegations that SkyWest controls SIA; and (5) SkyWest interfered with AFA's unionizing efforts, including

---

[4] Because "[d]etermining the content of lost information may be a difficult task in some cases, and placing the burden of proving prejudice on the party that did not lose the information may be unfair," Rule 37 "does not place a burden of proving or disproving prejudice on one party or the other," and is left to the judge's discretion. Notes of Advisory Committee on 2015 Amendments.

21

allowing pro-SIA signage. *See generally* Am. Compl., Dkt. 68; Countercl., Dkt. No. 38. Plaintiffs deleted messages on these topics and at pivotal moments before and during this lawsuit—that were directly relevant to the claims, counterclaims, and defenses and should have been preserved.

> **A.    WhatsApp Messages have been lost because Plaintiffs deleted and otherwise failed to take reasonable steps to preserve them.**

As demonstrated above, there was widespread and strategic deletion among the Plaintiffs and other participants in WhatsApp threads. These messages are lost because Plaintiffs not only failed to take reasonable steps to preserve the messages, but they affirmatively destroyed them.

> **1.    Plaintiffs knowingly and intentionally deleted ESI evidence relevant to the litigation.**

> **a.    Grange Destroyed Evidence.**

It is undisputed that Grange ██████████████████████████ on WhatsApp. Grange expressly ████████████████████████████████████████████████████████ ████████████████████████████ Grange expressed ████████████████ ███████████████████████ be used by Defendants to establish "bad intent" by Price and her. In their pleadings Plaintiffs pose as righteous whistleblowers, but the deleted "bad intent" Messages would destroy this mien and reveal their true intent: destroy SIA's election, publicize a perceived incompetence, and flog their campaign to supplant SIA so that AFA may earn millions in annual membership dues. Grange knew that if this "bad intent" was shown (while facing criminal charges) their case would be destroyed. *See e.g.*, *Timpte, Inc. v. NLRB*, 590 F.2d 871, 874 (10th Cir. 1979) ("[A]ll concerted activities are protected unless unlawful, violent, in breach of contract, or indefensible.") (citing *NLRB v. Washington Aluminum Co.*, 370 U.S. 9 (1962)). ████████████████████████████████████████████

22

Beyond ███████████████████████ Grange also deleted individual messages at critical times and regarding topics that make up the crux of this litigation. These included messages that were in the context of conversations regarding Price and Grange exposing confidential information (which forms the basis of SkyWest counterclaims) and Price and Grange's terminations, and reasons for termination, and subsequent appeal board processes (the grounds for Plaintiffs' second and third claims); and AFA legal's actions to prove SIA is an alleged "farce" (the grounds for Plaintiff's first cause of action). The deleted messages come immediately following Price and Grange's termination; after AFA's demand letter and while the thread participants are discussing threatened litigation; when Grange expressed concerned about Defendants using the WhatsApp threads against Price and Grange; and after the Plaintiffs filed their complaint. [5] ███████████████████████████████

███████████████████████████████ Grange sued for wrongful termination and then deleted messages directly concerning the appeal of her termination that she clearly considered damning.

---

[5] It is undisputed that Grange deleted entire WhatsApp threads. ██████████████████
████████████████████████████████████████████████████
████████ Ex. B, Grange Dep. at 117:16-21. However, this is unconvincing given
████████ Even if true, such explanation does not save her. If in fact,
████████ Grange had the obligation to take reasonable steps to preserve evidence, which
would necessarily include ████████████████████

### b.    Finley & Price Destroyed Evidence.

As demonstrated above, Price and Finley actively deleted messages. Finley deleted a message he sent on April 2, 2024, which appears in a conversation where the participants are discussing the alleged invalidity of SIA – the basis of Plaintiffs' first cause of action in this litigation. Similarly, Price deleted a message on August 19, 2024, which appears to be in regard to Defendants' position that Price hacked into a non-public area of the SIA website and exposed confidential information. Moreover, the deleted message was from when thread participants were discussing an article about this litigation and Finley's concern that it cast them in a bad light. There is no suggestion that this was an accidental deletion or that Finley was not the one to delete it – the message states "this message was deleted." *See* Hartley Decl. ¶ 22.

### 2.    Plaintiffs failed to take any steps to preserve the WhatsApp messages.

There is no question that the WhatsApp messages have been lost because Grange, Price, and Finley violated their obligation to preserve evidence and, additionally, actively destroyed messages. But the WhatsApp messages have also been lost because all Plaintiffs—Grange, Price, Finley, and AFA—failed to take reasonable steps to preserve them. *See* Fed. R. Civ. P. 37(e).

Litigants have an affirmative duty to take reasonable steps to preserve evidence, not just avoid destroying it. That is "action must be taken," to preserve evidence. *See Philips Elecs.*, 773 F. Supp. 2d at 1195 ("Cases across the country confirm that the duty to preserve means action must be taken to preserve evidence, meaning that it is not lost, destroyed, inadvertently or negligently overwritten, or intentionally wiped out, and that it is available to be produced to the other side."). This includes steps like "suspend[ing] [a] routine document retention/destruction policy and put[ting] in place a litigation hold to ensure the preservation of relevant evidence." *Marten Transp.,*

*Ltd. v. Plattform Advert., Inc.*, No. 14-cv-02464, 2016 U.S. Dist. LEXIS 15098, at *14 (D. Kan. Feb. 8, 2016); *see also FDIC v. McCaffree*, 289 F.R.D. 331, 336 (D. Kan. 2012) (same); *Amann v. Office of the Utah AG*, No. 2:18-cv-00341, 2023 U.S. Dist. LEXIS 197427, at *20 n.3 (D. Utah Nov. 2, 2023). It also requires putting in place a litigation hold. *See Browder v. City of Albuquerque*, 187 F. Supp. 3d 1288, 1294-95 (D.N.M. 2016) ("To prevent spoliation, the general rule is that [o]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a litigation hold to ensure the preservation of relevant documents." (internal quotation marks omitted)). Courts have routinely found spoliation when parties fail to disable an auto-delete setting once the obligation to preserve was triggered. *David*, 2026 U.S. Dist. LEXIS 59560 at*27-29.[6] Moreover, "failures to act can be just as harmful as affirmative acts of destruction." *Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1314.

Each of the Plaintiffs partook in, and are responsible for, each instance of evidence destruction by Grange, Price, Finley, and other thread participants because they failed to take reasonable steps to preserve the messages. Here, at least seven separate individuals deleted a significant amount of critical evidence as part of a strategic decision to delete evidence. Grange expressed concern that Defendants would use the WhatsApp messages against them. Another explained that encrypted messages can still be subpoenaed and suggested the auto-delete function.

---

[6] *See also SA. Int'l, Inc.,* 2025 U.S. Dist. LEXIS 255419*,* at *17 (noting the party deleted files and "did not turn off an auto-delete functions on [the] laptop" and finding "[t]his failure to preserve data is inexcusable"); *ORP Surgical, LLP v. Howmedica Osteonics Corp.,* Civil Action No. 1:20-cv-01450-RBJ, 2021 U.S. Dist. LEXIS 218816, at *7 (D. Colo. Nov. 12, 2021) ("If appropriate steps had been taken [when the duty to preserve was triggered] the auto delete function would have been turned off and text messages . . . would have been preserved").

Price and another participant strategized regarding whether or not a message should be deleted, discussing what information they wanted in the public. *See* Ex. Q at AFA012893.

Plaintiffs, as members of the WhatsApp threads, had an obligation to take action to avoid destruction of evidence. Although Plaintiffs were aware of the messages being deleted, they did nothing to preserve the messages. To the contrary, they encouraged it. There are multiple, reasonable, steps Plaintiffs could have taken to preserve the messages and prevent their co-Plaintiffs and other thread participants from destroying evidence. All participants would have received a notification that Grange ████████████████████ and any Plaintiff could have overridden this setting by turning auto-delete off through WhatsApp. *See* Hartley Decl. ¶ 18.e. Plaintiffs could have, and are required to, ensure that the auto-delete setting was turned off on their WhatsApp. Additionally, Plaintiffs could have (1) marked the messages to be kept, (2) preserved the messages by other means such as forwarding the message or taking screen shots; or (3) refused to communicate in a forum where the communications were set to not be retained and where they were being actively deleted. *See* Hartley Decl. ¶ 18. They also could have consulted their counsel who would surely have ensured the messages were preserved. None took any of these measures and failed to preserve the highly-insightful and relevant messages.

**B.    Plaintiffs had an obligation to preserve the evidence Grange, Price, Finley and other thread participants deleted.**

There is no question Plaintiffs were under a duty to preserve evidence when they destroyed the WhatsApp messages and failed to preserve them. The duty to preserve arises when a litigant knows, or should know, litigation is imminent. *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007); *see also Philips Elecs.*, 773 F. Supp. 2d at 1195. "A demand letter, a request for evidence preservation, a threat of litigation, or a decision to pursue a claim will

26

all trigger the duty to preserve evidence." *TLM Operations, LLC v. Allied Universal Risk Advisory & Consulting Servs.*, No. 2:23-cv-00788, 2025 U.S. Dist. LEXIS 194549, at *26 (D. Utah Sep. 30, 2025). This duty is irrespective of a party's prior litigation experience. *See SA. Int'l, Inc.*, 2025 U.S. Dist. LEXIS 255419, at *16 (D. Utah July 2, 2025).

The duty to preserve includes all "documents or materials ... that may be relevant to ongoing and potential future litigation." *Fox v. Steepwater LLC*, No. 2:16-cv-796 , 2018 U.S. Dist. LEXIS 80917, at *6 (D. Utah May 14, 2018). This includes documents that a party "knows or should know" may be relevant to imminent or ongoing litigation. *Ol Priv. Couns., Ltd. Liab. Co. v. Olson*, No. 2:21-cv-00455, 2024 U.S. Dist. LEXIS 81502, at *5 (D. Utah May 3, 2024). Compliance with this duty "ensures that discovery permitted by Federal Rule of Civil Procedure 26(b)(1) does not become a futile exercise." *Philips Elecs.*, 773 F. Supp. 2d at 1195.

The deleted messages pertain to topics that are key issues in the case and that form the basis of Plaintiffs' claims, SkyWest's defenses, and SkyWest's counterclaims. Plaintiffs knew, or should have known, the messages may be relevant to ongoing and potential future litigation.

### 1.     Messages Deleted After Filing the Complaint.

A majority of the spoliation occurred *after* Plaintiffs filed their October 11, 2023 complaint—at which point there can be no dispute that Plaintiffs knew litigation was not only imminent, but ongoing. *See Burlington N. & Santa Fe Ry. Co.*, 505 F.3d at 1032. For example,

████████████████████████████████████████████ (Ex. B,

Grange Dep. at 117:16-21, 301:2-302:14) ████████████████████

████████████████████████████████████ Additionally, at least seven of

the individual messages Grange deleted from WhatsApp threads, originally sent on March 21,

2024, March 22, 2024, and July 18, 2024, were deleted five months after the Complaint was filed and a month after SkyWest filed its Counterclaim. *See* Ex. A at AFA012418; Ex. I at AFA012297-99).[7] Grange deleted the WhatsApp threads in March of 2025—nearly a year and a half after Plaintiffs filed the Complaint and nearly a year after SkyWest filed its Counterclaim. Price deleted a message he originally sent on August 19, 2024, 10 months after Plaintiffs filed the Complaint and six months after SkyWest filed its Counterclaim against Price. Finley deleted a message he originally sent on April 2, 2024, six months after Plaintiffs filed the Complaint.

Nearly all of the messages other participants deleted were sent, and therefore deleted, *after* Plaintiffs filed their Complaint. The three messages deleted by the redacted participants identified above (Ex. O at AFA012788, Ex. Q at AFA012895), the message deleted by Kelly Frieders (Ex. R, at AFA012838), and three of the messages deleted by Michelle White (Ex. Q at AFA012892, Ex. S at AFA013907-27) all occurred after October 11, 2023.

For all of these messages, litigation was not merely imminent, it was underway. Thus, Plaintiffs cannot argue that they did not have a duty to preserve evidence at that time.

### 2.   Messages Deleted After AFA Sent the Demand Letter.

To the extent messages were deleted prior to the Complaint being filed on October 11, 2023, Plaintiffs cannot dispute that they knew or should have known that litigation was imminent at least as of September 19, 2023, the date AFA sent a demand letter to SkyWest on behalf of Price and Grange. In the demand letter AFA threatened litigation, intending to "seek all legal remedies on their behalf" if SkyWest did not reinstate Price and Grange and threatened to "demonstrate"

---

[7] Although the messages do not indicate when Grange deleted them, the messages were originally sent in March and July of 2024. Thus, Grange necessarily had to have deleted them after she filed her October 2023 Complaint.

that SkyWest controls SIA. *See* Ex. E at AFA011348; *see TLM Operations, LLC*, 2025 U.S. Dist. LEXIS 194549, at *26 ("A demand letter, a request for evidence preservation, a threat of litigation, or a decision to pursue a claim will all trigger the duty to preserve evidence.")

In fact, in the very thread where the message is deleted, someone shared AFA's demand letter to reinstate "whistleblowers" Grange and Price. *See* Ex. H at AFA012740. Thus, when Grange deleted the message she sent on September 19, 2023 she knew or should have known litigation was imminent.

### 3. Messages Deleted in August and September 2023.

This only leaves a few remaining messages that were sent prior to the September 19, 2023 demand letter. These messages are White's August 29, 2023 message, Grange's September 14, 2023 message, (Ex. G, at AFA012864), redacted individuals' September 15 and 16, 2023 messages (Ex. G at AFA012867-68, AFA012877), and Crossley's September 18, 2023 message (Ex. N. at AFA015649). Even assuming the earliest possible deletion date, the day the message was sent, the messages were deleted after the duty to preserve was triggered. As of August 29, 2023, Plaintiffs knew or should have known that litigation was imminent. ███████████████████████████

████████████████████████████████████ *See* Ex. D, Privilege Log.

Additionally, ████████████████████████████████████

███████████████████████ *See id.*

It is clear that Plaintiffs were preparing for this litigation well before August 29, 2023. For example, on March 4, 2023, Crossley, Price, and David summarized points they discussed with AFA legal regarding why they believed SIA was improper and controlled by SkyWest. *See* AFA011496-97 attached to the Ramirez Decl. as **Exhibit W**. Thus, as of August 29, 2023, the

Plaintiffs knew, or at least should have known, litigation was imminent.[8] There can be no question that Plaintiffs had a duty at the time they deleted the WhatsApp messages to preserve all documents and communications related to this lawsuit.

### C.    The deleted WhatsApp messages and threads cannot be restored or replaced through additional discovery.

Courts have found spoliation where "it is difficult to see" how the deleted messages can be restored and "it is unclear how or whether texts deleted years ago could be recovered." *David*, 2026 U.S. Dist. LEXIS 59560 at *29. Here, the WhatsApp messages cannot be restored or replaced through additional discovery. When Grange ███████████████████████ unlike deleting a thread, it deleted messages from *everyone's* device and account, not just Grange's. Hartley Decl. ¶ 13. Meaning, unless participants took action to override the auto-delete function, messages sent by Grange cannot be recovered from any other participant's device.

Likewise, when Plaintiffs Grange, Price, Finley, and the other thread participants deleted specific messages in the various WhatsApp threads, it deleted the messages from everyone's

---

[8] It was also known to Plaintiffs that litigation was imminent as of September 14, 2023. At this time Price and Grange had been terminated, and they were planning to appeal and sue. It was at this time that Grange was assured that "AFA Legal is dealing with this issue and it will most likely bring the entire SIA farce into the spotlight." Ex. G at AFA012865. The "issue" appears to be the voting in the SIA Election and the allegation that SkyWest management was blaming Price and Grange. *See id.*

Further, the AFA issued a press release on September 15, 2023, from Sara Nelson AFA International President, claiming SkyWest "illegally" fired Price and Grange in "retaliation" for their unionizing activity, namely Plaintiffs' second cause of action in this litigation. *See* AFA011266, attached to Ramirez Decl. as **Exhibit X**. It goes on to state that "[t]he AFA Legal Department is immediately addressing management's illegal actions and we will not allow the company's retaliation against our coworkers to stand." A press release the following day states the same message, but includes a note that enforcement "rests with the federal courts." AFA 011552, attached to Ramirez Decl. as **Exhibit Y**.

device. Hartley Decl. ¶ 9.ii. While it is possible on WhatsApp for an individual to just delete a message for that participant (giving the possibility to obtain the message through discovery from others), that is not what Plaintiffs and the other participants did. *Id.* ¶ 9.i. Instead, they chose the option to delete for everyone. *Id.* at ¶ 22. For example, in the thread produced by Gailen David, the messages Grange deleted regarding Price and Grange's review board submissions are deleted because she deleted the message for everyone, not just herself. *See* Ex. A, AFA012420. Where Plaintiffs did not take any steps to preserve the evidence, it cannot be recovered or restored through additional discovery.[9]

Grange also testified that ███████████████████████████████ ████████████ Ex. B, Grange Dep. at 297:1-5; 297:20-298:1; 302:23-303:4; 304:14-21; 308:5-11. Grange ██████████████████████████████, limiting SkyWest's ability to subpoena or question others who may have knowledge about the messages. *Id.* at 305:3-18.[10] Grange further ████████████████████████████████████ ████████████████████████████████████████ ███████████████████ And even if the thread with Price is recovered, that does not recover other threads that Grange ██████████████████

---

[9] Making recovery even more unlikely is that WhatsApp does not always indicate when a message has been deleted, as ████████████████████ Given the Plaintiffs' strategic and prolific deletion, it is likely there are additional instances of deletion that SkyWest is unaware of and that WhatsApp has not identified.

[10] While SkyWest was able to recover some texts Grange deleted in her thread with ███ by painstakingly cross-referencing text message threads, it remains unknown how many additional messages Grange deleted for which SkyWest does not have corresponding text threads.

As is evidenced above, the full scope of the destruction is unknown and unrecoverable. Thus, Plaintiffs leave SkyWest with the problematic task to try and piece together and guess what information is missing. This makes it impossible to restore or replace the information contained in the deleted WhatsApp messages through additional discovery.

## II.   TERMINATING SANCTIONS ARE NECESSARY UNDER RULE 37(E).

Under Rule 37(e)(2) and this Court's precedent, terminating sanctions—dismissal of Plaintiffs' claims against SkyWest and default judgment on SkyWest's counterclaims against Grange and Price—are the appropriate sanctions for Plaintiffs' spoliation of evidence because they acted with intent to deprive Defendants of the evidence.

### A.   Plaintiffs acted with intent to deprive Defendants of relevant evidence.[11]

Rule 37(e) does not define intent. *See* Fed. R. Civ. P. 37(e); *SA. Int'l, Inc.*, 2025 U.S. Dist. LEXIS 255419, at *21 (same). Intent "can be proved indirectly—as in, a party does not need to find a smoking gun to prove intent to deprive." *Sky Jet M.G. Inc. v. VSE Aviation Servs., LLC*, No. 23-2210-HLT-ADM, 2025 U.S. Dist. LEXIS 111834 (D. Kan. June 12, 2025), at *21 (D. Kan.

---

[11] Where all Plaintiffs acted with an intent to deprive Defendants of the information under Rule 37(e)(2), there is no prejudice requirement under Rule 37(e)(1). *See* Notes of Advisory Committee on 2015 Amendments, Rule 37(e)(2) ("[s]ubdivision (e)(2) does not include a requirement that the court find prejudice to the party deprived of the information"). But if there was, where Plaintiffs deleted messages and failed to take reasonable steps to prevent the destruction of evidence that cannot be recovered, the burden is most appropriately placed on Plaintiffs to disprove prejudice. *See* Notes of Advisory Committee on 2015 Amendments, Rule 37(e)(1) (noting because "[d]etermining the content of lost information may be a difficult task in some cases, and placing the burden of proving prejudice on the party that did not lose the information may be unfair," Rule 37 "does not place a burden of proving or disproving prejudice on one party or the other," and is left to the judge's discretion). Here, it is clear SkyWest has been prejudiced. Plaintiffs' actions resulted in the destruction of key evidence in this case. The deleted messages are, ███████

June 12, 2025). The intent requirement is satisfied where (1) "the evidence shows or it is reasonable to infer [ ] that the [ ] party purposefully destroyed evidence to avoid its litigation obligations;" (2) "the party's actions are responsible for the destruction of evidence and the party fully appreciated the significance of the evidence to the anticipated litigation;" or (3) when "a party is on notice that the evidence is potentially relevant and fails to take measures to preserve relevant evidence, or otherwise seeks to keep incriminating facts out of evidence." *SA. Int'l, Inc.*, 2025 U.S. Dist. LEXIS 255419, at *21-22 (internal quotation marks omitted). When determining intent, courts may consider the timing of the destruction. *Id.* at * 22. The intent requirement under Rule 37(e)(2) is akin to the bad faith requirement in other spoliation contexts, such that the destruction must be intentional and not merely negligent. *See e.g.*, *Prescott v. Valdez*, 1:21-cv-03252, 2026 U.S. Dist. LEXIS 71691, at *45 (D. Colo. Mar. 5, 2026).

> **1.  Grange testified under oath that she acted with intent to deprive Defendants of the evidence.**

Although a court can "infer" intent by relying on "circumstantial evidence," there is no need to do so where this is one of the rare cases where there is indeed a "smoking gun." *SA. Int'l, Inc.*, 2025 U.S. Dist. LEXIS 255419, at *21-22. Grange testified under oath that ███████ ████████████████████████████████████████████████████ █████ *See* Ex. B, Grange Dep. at 302:11-14. Grange's own testimony ends the intent inquiry.

> **2.  Plaintiffs Price, Finley, and AFA acted with intent to deprive Defendants of the evidence.**

Coupled with Grange's direct testimony, the circumstantial evidence also establishes that the remaining Plaintiffs also acted with intent to deprive Defendants of the evidence.

**a.    Plaintiffs acted with intent because they were on notice that the evidence is potentially relevant and failed to take measures to preserve relevant evidence, or otherwise seeks to keep incriminating facts out of evidence.**

First, there can be no doubt that the Plaintiffs were on notice that the deleted messages were potentially relevant. Plaintiffs were on notice that the evidence was potentially relevant because they were regarding key issues that form the basis of the claims, defenses, and theories of the case. *See* Sections II and III *supra.* This is clear when considering that relevance is very broad, particularly at the discovery stage. *See* Fed. R. Civ. P. 26(b)(1). Discovery does not even need to "be admissible in evidence to be discoverable." *Id.* Plaintiffs do not get to be the judge of what will matter to Defendants in this litigation and what does not. *Cf. In re Cooper Tire & Rubber Co.,* 568 F.3d 1180, 1192 (10th Cir. 2009) ("[A] party should not be limited by its opponent's theory of the case in determining what is discoverable.").

Simply put, Plaintiffs cannot bring claims against Defendants while at the same time unilaterally deciding what evidence Defendants are entitled to receive. *See Philips Elecs. N. Am. Corp. v. BC Tech.,* 773 F. Supp. 2d at 1158 (condemning selective destruction of evidence when anticipated compliance with discovery rules will produce an adverse judgment). When a party takes discovery into their own hands, "it undermine[s] the legitimacy of these proceedings and skirt[s] the discovery process." *See e.g. Xyngular Corp.*, 200 F. Supp. 3d at 1317.

Second, Plaintiffs both failed to take measures to preserve the relevant evidence <u>and</u> purposefully deleted messages to keep incriminating facts out of evidence. In *Sky Jet M.G. Inc.*, the court found intent where it was "not an instance" where the data "was lost as a result of the routine deletion of electronic data that [plaintiff] considered unimportant." 2025 U.S. Dist. LEXIS 111834*,* at *22. Plaintiffs failed to take reasonable measures to preserve the evidence that they

34

knew, or should have known, was being destroyed and strategically deleted evidence they wanted to prevent Defendants from using against them. *See* Sections II and III *supra*.

Plaintiffs acts were in bad faith; not merely negligent. Where Plaintiffs were on notice that the evidence is potentially relevant and failed to take measures to preserve the relevant evidence, the intent element is satisfied.

### b.      The timing of Plaintiffs' destruction establishes intent.

Courts also look to the timing of deletion when determining intent. *SA. Int'l, Inc.*, 2025 U.S. Dist. LEXIS 255419, at \*22. Plaintiffs deleted messages at pivotal points leading up to and during this litigation. *See* Sections II and III *supra*. The timing of Plaintiffs' deleted messages are instructive—Plaintiffs intentionally acted to prevent Defendants from using the WhatsApp messages in this litigation.

### c.      Plaintiffs' failure to inform Defendants of the destruction further supports a finding of intent.

Courts can consider circumstantial evidence when determining intent. *SA. Int'l, Inc.*, 2025 U.S. Dist. LEXIS 255419, at \*21-22. Here, the fact that no Plaintiff informed Defendants of the destroyed evidence, despite a specific discovery instruction seeking this information, is strong circumstantial evidence that they intended to deprive Defendants of the information. SkyWest sought in discovery, "[i]f any Documents requested have been destroyed, lost, mislaid, or are otherwise missing, please so state, specifying for each Document: (1) the type of Document; (2) a description of the nature and contents of the Document; (3) the identity of the author; (4) the circumstances under which it ceased to exist; (5) and the identity of all Person(s) who had knowledge of the contents." SkyWest's First Set of Disc. Req. to Pl., Instruction ¶ 6 attached to

the Ramirez Decl. as **Exhibit Z**. No Plaintiff objected to this instruction and no Plaintiff provided any information as the deleted information – leaving Defendants in the dark.

Plaintiffs acted with intent to deprive Defendants of the WhatsApp messages when they were on notice that the evidence was potentially relevant and failed to take measures to preserve relevant evidence; the deletion occurred at pivotal points in this litigation; and Plaintiffs failed to inform Defendants of the destruction. Accordingly, dismissal and default judgment under Rule 37(e)(2) are appropriate.

### 3.    Terminating sanctions are the only appropriate sanction.

Where Plaintiffs acted with intent, thereby depriving Defendants of the ability to use the deleted information to support their defenses, prosecute their counterclaims, and establish their case theories, the Court should award terminating sanctions under subsection 2 of Rule 37(e). *See* Fed. R. Civ. P. 37(e). A lesser sanction, such as an adverse inference, is not appropriate.

First, any lesser sanction creates a perverse incentive. As this court noted, "[o]ne who anticipates that compliance with discovery rules and the resulting production of damning evidence will produce an adverse judgment, will not likely be deterred from destroying that decisive evidence by any sanction less than the adverse judgment [it] is tempted to thus evade." *Philips Elecs. N. Am. Corp.*, 773 F. Supp. 2d at 1158 (internal quotation marks omitted). If a plaintiff has concerns that a defendant may use the plaintiff's text messages against her and can then systematically delete specific messages with only the fear of an adverse inference, the plaintiff has everything to gain and nothing to lose. At best, the plaintiff can bring her claims and defend against counterclaims without the defendant having the benefit of the actual evidence plaintiff worried

36

would be used against her. At worst, the court orders an adverse inference – putting plaintiff in no worse position than she would have been had she not deleted messages.

Second, Plaintiffs' spoliation is particularly egregious because the deleted communications were material to the heart of this case: Plaintiffs' terminations and Plaintiffs' unlawful access of SkyWest data and interference with SIA's elections. The messages were deleted because they would have exposed Plaintiffs' true motives and made them look bad. To allow Plaintiffs to continue litigating this matter while depriving SkyWest of material evidence that Plaintiffs acknowledged was harmful to their case would be unfairly prejudicial to SkyWest. SkyWest could not have preserved this evidence and has no way to recreate it. In Grange's own words, ██████ ██████████████████████████████████████████████████ And this is only to speak of the evidence SkyWest knows was deleted – in the face of admissions that more deletions were made that cannot now be identified. If terminating sanctions are not awarded, Plaintiffs will have succeeded in depriving SkyWest of the evidence that would help its case. A mere instruction to the jury would only encourage this kind of behavior from litigants as it would be a much better circumstance for Plaintiffs than if SkyWest had the deleted evidence. The same is true for monetary sanctions.

Plaintiffs cry victim and claim to be whistleblowers, while simultaneously destroying the very evidence that they believe could be used to show bad intent, along with other key communications. When a plaintiff intentionally injures the due process and fairness of our judicial system, only the most serious of sanctions are appropriate.[12]

---

[12] Since the amendments to Rule 37(e), the *Ehrenhaus* factors no longer apply to dismissal or default judgment of ESI—such analysis is governed solely by Rule 37. *See* Fed. R. Civ. P. 37(e)(2); *see also Emuveyan v. Ewing*, 2022 U.S. Dist. LEXIS 82443, at *5 (D. Utah May 5, 2022) ("Except

### III.    SKYWEST IS ENTITLED TO ITS FEES AND COSTS.

Where spoliation has occurred, courts also have discretion to impose sanctions in the form

of attorneys' fees and costs. *See FatPipe Networks India Ltd. v. XRoads Networks, Inc.*, No.

---

with regard to destruction of ESI, which is governed by Rule 37(e), the court applies the five factors enumerated in *Ehrenhaus* to determine whether dismissal is appropriate."). "Rule 37(e) was amended in 2015 to provide the exclusive framework to remedy spoliation of ESI." *David v. Wasatch Cty.*, No. 2:24-cv-00215, 2026 U.S. Dist. LEXIS 59560, at *26 (D. Utah Mar. 20, 2026). Nonetheless, even if the Court considered the *Ehrenhaus* factors, the factors overwhelmingly weigh in favor of dismissal and default judgment. *Ehrenhaus* identifies five factors for a court to consider when determining if dismissal is a just sanction.

First, "the degree of actual prejudice to the other party." *Wasatch Cty.*, 2026 U.S. Dist. LEXIS 59560 at *14. Defendants suffer substantial prejudice because Grange's communications with the various participants suggests that SkyWest would be able to utilize the spoliated communications to counter Plaintiffs' entire case narrative—including to demonstrate Plaintiffs' bad actions and intent. Second, "the amount of interference with the judicial process." *Id.* "Willful destruction of evidence interferes with the judicial process by disrupting the accuracy of the fact-finding process." *Eze v. City of Las Cruces*, 2025 U.S. Dist. LEXIS 207277, at *14-15 (D.N.M. Oct. 20, 2025). Plaintiffs interfered with the judicial process by intentionally destroying, and failing to preserve, key communications and evidence Plaintiffs deemed harmful to their case. Third, "the culpability of the litigant." *Wasatch Cty.*, 2026 U.S. Dist. LEXIS 59560 at *14. In making the culpability determination ██████████████████████████████████████████ ████████████████████████████████ Price, Finley, and Grange deleted messages regarding topics that form the basis of their claims, defenses, and the parties' case theories. Fourth, "whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance." *Id.* The fourth factor bears little weight because no court warning was required. *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1149 (10th Cir. 2007) (holding a prior warning from the court "is not a prerequisite for dismissal under *Ehrenhaus*."). Plaintiffs have been represented by sophisticated counsel since at least since March 8, 2023, six months prior to the first spoliated message. Additionally, on September 22, 2023, SkyWest sent Plaintiffs' attorney a litigation hold letter. *See* Ex. F. Plaintiffs unequivocally knew they had an obligation not to delete potential evidence relevant to this litigation. Fifth, "the efficacy of lesser sanctions." *Id.* Where the Plaintiffs' intent is so clear, a lesser sanction is inadequate and creates a perverse incentive to future litigants to destroy material evidence. No other sanction but terminating sanctions restores Defendants to the same position they would have been in the absence of Plaintiffs' spoliation. Defendants have been deprived of the use of the messages to defend against Plaintiffs' claims, Plaintiffs end in a better situation even with an adverse inference because SkyWest does not know the universe of her spoliation—and cannot fill in the gaps through other discovery.

38

2:09cv00186 TC DN, 2012 U.S. Dist. LEXIS 30887, *9 (D. Utah Mar. 7, 2012) (awarding attorneys' fees and costs incurred in a party's motion for spoliation sanctions). An award of attorneys' fees here is not a "punitive fine imposed on the offending party," but rather a remedy "as it relates to the fees and costs associated with the sanctions-related proceedings." *Xyngular Corp.*, 200 F. Supp. 3d at 1327. Such an award is warranted where Plaintiffs intentionally spoliated key evidence and caused Defendants to incur substantial additional costs and time. *See* Sections III(A) and (B) *supra*. SkyWest therefore requests that the Court order Plaintiffs to pay SkyWest's attorneys' fees and costs related to preparing for and conducting the spoliation portion of the deposition and bringing this Motion.

## CONCLUSION

For the foregoing reasons, SkyWest respectfully requests that the Court dismiss Plaintiffs' claims in their entirety with prejudice, enter default judgment on SkyWest's counterclaims, and award SkyWest its reasonable attorneys' fees and costs.

DATED this 20th day of July, 2026.

HOLLAND & HART LLP


*/s/ Gregory M. Saylin*
Gregory M. Saylin
Tyson C. Horrocks
Emily T. Howe
Jessica A. Ramirez

*Attorneys for Defendant SkyWest Airlines Inc.*

38573863_v1

39