Gregory M. Saylin (9648)
Tyson C. Horrocks (12557)
Emily T. Howe (18294)
Jessica A. Ramirez (17593)
HOLLAND & HART LLP
222 South Main St., Suite 2200 Salt Lake City, UT 84101
(801) 799-5973
gmsaylin@hollandhart.com
tchorrocks@hollandhart.com
ethowe@hollandhart.com
jearamirez@hollandhart.com

Patricia T. Stambelos (*pro hac vice*)
STAMBELOS LAW OFFICE
543 Country Club Dr., Suite B209
Simi Valley, CA 93065
(805) 578-3474
patricia@patriciastambelos.com

Douglas W. Hall (*pro hac vice*)
Thomas R. Chiavetta (*pro hac vice*)
JONES DAY
51 Louisiana Ave N.W.
Washington, DC 20001
(202) 879-3939
dwhall@jonesday.com
tchiavetta@jonesday.com

*Attorneys for Defendant*
*SkyWest Airlines Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| ASSOCIATION OF FLIGHT ATTENDANTS; AFL-CIO, SHANE PRICE, TRESA GRANGE; and BRANDON FINLEY;<br><br>Plaintiffs,<br><br>v.<br><br>SKYWEST AIRLINES INC.; SKYWEST INFLIGHT ASSOCIATION;<br><br>Defendants. | **DEFENDANT SKYWEST AIRLINES INC.'S REPLY IN SUPPORT OF MOTION FOR TERMINATING SANCTIONS FOR PLAINTIFFS' SPOLIATION**<br><br>**REQUEST FOR EVIDENTIARY HEARING**<br><br>**(REDACTED)**<br><br>Civil No. 2:23-cv-00723-DBB-DBP<br><br>Judge David Barlow<br>Magistrate Judge Dustin B. Pead |

# TABLE OF CONTENTS

**PAGE**


INTRODUCTION ........................................................................................................1

ARGUMENT ..............................................................................................................2

I. THE EVIDENCE SUPPORTS A FINDING OF SPOLIATION. ......................................2

A. Grange's Review Board Explanation Confirms Intent to Deprive SkyWest. ..........................................................................................3

B. Plaintiffs Deleted Messages After They Knew Litigation Was Imminent. .............5

C. Grange's Activation of the Disappearing-Messages Setting Was Intentional. .........................................................................................9

D. Plaintiffs' "0.1%" Argument Confuses the Volume of Production with the Significance of What Was Lost. ..............................................................12

E. Grange's Deletions Were Made with Intent to Deprive SkyWest of Access in This Litigation......................................................................................13

F. Price, Finley, and AFA Cannot Disclaim Responsibility for Grange's Deletions. ..........................................................................................14

G. SkyWest's Concern That Additional Information Was Deleted Is Grounded in the Record and Is Not Speculative..................................................16

H. Deletions by Non-Parties Support Spoliation Findings Against Plaintiffs. ...........18

II. THE RECORD ESTABLISHES INTENT TO DEPRIVE UNDER RULE 37(e)(2). ..................................................................................................21

A. SkyWest Need Only Show Intent by a Preponderance of the Evidence, Which May Be Circumstantial..................................................................21

B. Each Plaintiff Knew of Its Preservation Obligations, Yet Deleted Messages and Tolerated Deletion by Others. ......................................................21

C. Viewed Together, the Deletions Reveal a Deliberate Pattern Employed by Plaintiffs Collectively. ......................................................................24

D. Plaintiffs' Authorities Involved Negligence, Not Admitted Intent.......................26

E. The *Ehrenhaus* Factors Do Not Govern, and Would Favor Dismissal in Any Event. ....................26

III. SKYWEST OBJECTS TO PLAINTIFFS' SUPPORTING DECLARATIONS, WHICH SHOULD BE GIVEN NO WEIGHT BECAUSE PRICE'S AND GRANGE'S DECLARATIONS ARE INCONSISTENT WITH THEIR PRIOR TESTIMONY AND GAILEN DAVID'S AND ATTORNEY GRUNERT'S DECLARATIONS ARE INCONSISTENT WITH THE RECORD EVIDENCE. ...........28

IV. NO LESSER SANCTION WOULD BE ADEQUATE. ....................32

CONCLUSION ....................35

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Auer v. City of Minot*,
896 F.3d 854 (8th Cir. 2018) .......... 21

*Burlington N. & Santa Fe Ry. Co. v. Grant*,
505 F.3d 1013 (10th Cir. 2007) .......... 6, 22

*Consolidation Coal Co. v. United Mine Workers of Am., Loc. 1261*,
725 F.2d 1258 (10th Cir. 1984) .......... 16

*Convolve, Inc. v. Compaq Comput. Corp.*,
223 F.R.D. 162 (S.D.N.Y. 2004) .......... 20

*Emuveyan v. Ewing,*
No. 2:19-cv-00616, 2022 U.S. Dist. LEXIS 82443 (D. Utah May 5, 2022) .......... 27

*Franks v. Nimmo*,
796 F.2d 1230 (10th Cir. 1986) .......... 28, 30

*Freeman v. Nw. Acceptance Corp.*,
754 F.2d 553 (5th Cir. 1985) .......... 30

*Goodman v. Praxair Servs.,*
No. MJG-04-391*,* 632 F. Supp. 2d 494 (D. Md. 2009) .......... 16

*In re New Canyonlands by Night, LLC*,
415 F. Supp. 3d 1020 (D. Utah 2019) .......... 14

*Jones v. Riot Hosp. Grp. LLC*,
95 F.4th 730 (9th Cir. 2024) .......... 12

*Kelley as Tr. of BMO Litig. Tr. v. BMO Harris Bank N.A.*,
657 B.R. 475 (D. Minn. 2022) .......... 31

*Lakey v. Bryant*,
181 F.4th 1013 (10th Cir. 2026) .......... 26

*Middleton v. Stephenson*,
No. 2:11-CV-313 TS, 2012 U.S. Dist. LEXIS 83142 (D. Utah 2012) .......... 30

*Morris v. Union Pac. R.R.*,
373 F.3d 896 (8th Cir. 2004) .......... 31

*N. Am. Sci. Assocs., LLC v. Conforti*,
No. 24-cv-287 (JWB/ECW), 2024 U.S. Dist. LEXIS 215814 (D. Minn. Nov. 27, 2024) .......... 21

*Paisley Park Enters. v. Boxill*,
No. 17-cv-1212 (WMW/TNL), 330 F.R.D. 226 (D. Minn. 2019) .......... 21

*Philips Elecs. N. Am. Corp. v. BC Tech., Inc.*,
773 F. Supp. 2d 1149 (D. Utah 2010) .......... 20, 32

*Prescott v. Valdez*,
No. 1:21-cv-03252-CNS-SBP, 2026 U.S. Dist. LEXIS 71691 (D. Colo. Mar. 5, 2026) .......... 14, 22, 26, 30

*Ralston v. Smith & Nephew Richards, Inc.*,
275 F.3d 965 (10th Cir. 2001) .......... 28, 30

*Regan v. Mountain States Water Servs.*,
No. 21-CV-44-ABJ, 2023 U.S. Dist. LEXIS 254453 (D. Wyo. Jan. 4, 2023) .......... 19, 20

*Rios v. Bigler*,
67 F.3d 1543 (10th Cir. 1995) .......... 30

*SA Int'l, Inc. v. S.A. Int'l Israel Ltd.*,
No. 2:23-cv-00877-HCN-JCB, 2025 U.S. Dist. LEXIS 255419 (D. Utah July 2, 2025) .......... passim

*Silvestri v. Gen. Motors Corp.*,
271 F.3d 583 (4th Cir. 2001) .......... 15, 19, 20

*Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*,
75 F.4th 1290 (11th Cir. 2023) .......... 15, 20, 23

*Sky Jet M.G. Inc. v. VSE Aviation Servs., LLC*,
No. 23-2210-HLT-ADM, 2025 U.S. Dist. LEXIS 111834 (D. Kan. June 12, 2025) .......... 21

*Stevenson v. Union Pac. R.R. Co.*,
354 F.3d 739 (8th Cir. 2004) .......... 6

*TLM Operations, LLC v. Allied Universal Risk Advisory & Consulting Servs.*,
No. 2:23-cv-00788 DAK-DBP, 2025 U.S. Dist. LEXIS 194549 (D. Utah Sept. 30, 2025) .......... 6, 8, 22

*Ward v. Nesibo*,
No. 4:22-cv-00054-DN-PK, 2023 U.S. Dist. LEXIS 212935 (D. Utah Nov. 29, 2023) .......... 6

*Wright v. Schick*,
No. 1:18-cv-0118, 2020 U.S. Dist. LEXIS 39052 (W.D. Pa. Mar. 6, 2020) .......... 6

*Zbylski v. Douglas Cnty. Sch. Dist.*,
154 F. Supp. 3d 1146 (D. Colo. 2015) .......... 6

**RULES AND STATUTES**

Fed. R. Civ. P. 37 .......... passim

Defendant SkyWest Airlines, Inc. ("SkyWest") submits this Reply in support of its Motion for Terminating Sanctions for Plaintiffs' Spoliation (ECF No. 196) (the "Motion" or "Mot.") and in response to Plaintiffs' and Counterclaim Defendants' Opposition (ECF No. 205) (the "Opposition" or "Opp.").

**INTRODUCTION**

Plaintiffs' Opposition does not dispute the core facts. Plaintiffs concede that Tresa Grange deleted multiple WhatsApp messages the week after her termination and again after receiving SkyWest's September 22, 2023 preservation demand, that she activated WhatsApp's disappearing-messages setting in at least two chats while this case was pending (one of which Plaintiffs disclosed for the first time in their Opposition), that Shane Price and Brandon Finley each deleted messages after the Complaint was filed, and that no witness can say what any of the deleted messages said. Grange admits that she "regrets these deletions." What Plaintiffs offer in response is a recharacterization: the deletions were "sporadic," "inadvertent," "anodyne," and a "tiny fraction" of what was produced.

That recharacterization cannot be squared with Grange's sworn testimony. Asked why she set her messages to delete, Grange answered without qualification: [redacted] Ex. B,[1] Grange Dep. Vol. I, 302:11-14. [redacted] "eventually they would request them" referred to discovery in *this* case, and she [redacted] *Id.* at 299:17-300:16. Plaintiffs now ask the Court to replace that testimony with a declaration drafted after SkyWest filed this

---

[1] Unless otherwise indicated, Exhibits A-Z refer to exhibits attached to the Declaration of Jessica Ramirez In Support of SkyWest's Motion For Terminating Sanctions For Plaintiffs' Spoliation (ECF Nos. 194-195).

Motion, which asserts that Grange was worried only about an internal SkyWest "Review Board." But the review board process was merely SkyWest's own process for reviewing the very terminations Grange then challenged in this lawsuit. It did not have subpoena power or the ability to access her private messages. Hiding evidence from SkyWest about her termination, while suing SkyWest over that termination, is the intent to deprive that Rule 37(e)(2) describes. It does not excuse it.

The rest of the Opposition fares no better. Plaintiffs' threshold arguments ignore that they were represented by AFA counsel before the deletions began and that SkyWest expressly demanded preservation. Their assurances that nothing important was lost rest on the recollections of the same witnesses who admit they do not remember what they deleted. And their request that the Court disregard the remedy question because SkyWest supposedly "argued for no lesser sanction" misreads both the Motion and Rule 37(e)(2), which commits the choice of remedy to the Court once intent is found. The Court should therefore grant the Motion.

## ARGUMENT

### I. THE EVIDENCE SUPPORTS A FINDING OF SPOLIATION.

Courts find that a party's conduct meets Rule 37(e)(2)'s intent requirement "where the evidence shows or ***it is reasonable to infer*** . . . that the [ ] party purposefully destroyed evidence to avoid its litigation obligations." *SA Int'l, Inc. v. S.A. Int'l Israel Ltd.*, No. 2:23-cv-00877-HCN-JCB, 2025 U.S. Dist. LEXIS 255419, at *21 (D. Utah July 2, 2025) (internal citations and quotation marks omitted) (emphasis added). "Intent is generally found where the party's actions are responsible for the destruction of evidence, and the party ***fully appreciated the significance of the evidence to the anticipated litigation***." *Id.* (internal citations and quotation marks omitted)

(emphasis added). Intent may also be inferred where a party "is on notice that the evidence is potentially relevant and fails to take measures to preserve relevant evidence, or otherwise seeks to 'keep incriminating facts out of evidence,'" and courts may consider "the timing of the loss of evidence." *Id.* at *21–22 (internal citations omitted). Every one of these considerations points to a finding of intent.

**A. Grange's Review Board Explanation Confirms Intent to Deprive SkyWest.**

Plaintiffs' principal argument is that Grange deleted the March 2024 messages because she feared they would be "screenshot and leaked to the Review Board panel," not because of this litigation. Opp. 23-24 (citing Ex. 2,[2] Grange Decl. ¶ 16). That distinction between this litigation and the termination appeal[3] is unavailing and ignores the context of Grange's WhatsApp chat.

Grange and Price's Review Board submission included positions that underlie the claims in this lawsuit. The appeal itself is prominently featured in Grange and Price's litigation claims, as well as all Plaintiffs' theories that SIA is a SkyWest-conjured sham. Deleting evidence to keep it out of SkyWest's review board process is the equivalent of keeping it from SkyWest in the litigation. Grange's own message said she was concerned that SkyWest would "use some of our WhatsApp threads against me and Shane in our appeals" and that "there is [not] much else they can really use to prove we had any bad intentions." Ex. A at AFA012421; *see* Opp. 23. A litigant who deletes messages so that her adversary cannot use them against her has acted with "the intent to deprive another party of the information's use." Fed. R. Civ. P. 37(e)(2).

---

[2] Unless otherwise indicated, Exhibits 1-9 refer to exhibits attached to Plaintiffs' Opposition to SkyWest's Motion For Terminating Sanctions For Plaintiffs' Spoliation.

[3] Importantly, the review board did not consider extrinsic evidence, did not have subpoena power, and could not access her private messages.

Importantly, the review board process concerned Grange and Price's terminations, the very basis of this lawsuit, and the lawsuit was already pending when the appeals took place. Indeed, Plaintiffs concede that the review board proceedings went forward "[w]ith this litigation already pending," Opp. 4, and that "facts pertaining to the Review Board overlap with those relevant to this litigation." Opp. 24. That understates it. For example, Plaintiffs' second and third causes of action challenge Price's and Grange's terminations and SkyWest's review board process. Am. Compl. ¶¶ 69-75, ECF No. 68. [redacted] Ex. B, Grange Dep. Vol. I, 296:14-18, and the Opposition admits as much. Opp. 7, 23. Evidence about Grange's state of mind regarding her and Price's termination appeals is evidence in this case.

Grange's deposition testimony forecloses the litigation-free account in her declaration. On March 22, 2024, Kelly Frieders wrote that she had "been assuming eventually they would request them," that the messages were "[e]ncrypted, but I assume if they're subpoenaed they have to be turned over," and noted the auto-delete setting. Ex. A at AFA012421. Grange agreed that [redacted] Ex. B, Grange Dep. Vol. I, 299:17-22. [redacted] *Id.* at 300:1-16. [redacted] *Id.* at 302:11-14. The conversation itself was about whether encrypted messages could be obtained

in discovery.[4] Mot. 7-8; Ex. A at AFA012418-21. The "single quotation" Plaintiffs say was "shorn from its context," Opp. 1, is in fact the conclusion of a series of questions and answers that place the deletions in the context of this litigation.

Rule 37(e)(2) asks whether a party intended to deprive her opponent of evidence; it does not permit a spoliator to escape sanctions by naming one of several forums in which she hoped to keep the evidence from that opponent. Likewise, other litigants cannot knowingly stand idly by while the spoliation is occurring right before their eyes, and then hope to benefit from the absence of such evidence without consequence since they, individually, did not push delete or set up disappearing messages. Messages that could hurt Grange and Price as part of SkyWest's review board process could hurt them as part of this lawsuit challenging the same terminations, and they were deleted expressly for that reason.

**B. Plaintiffs Deleted Messages After They Knew Litigation Was Imminent.**

Plaintiffs do not dispute that every deletion and settings change by Grange, Price, and Finley after October 11, 2023, occurred while a duty to preserve existed. That includes the six March 2024 deletions, the July 2024 deletion, Finley's April 2, 2024 deletion, Price's August 19, 2024 deletion, and both October 2024 disappearing-messages activations. Mot. 27-28. Plaintiffs' timing argument is therefore limited to five Grange messages from September 14 and 19, 2023 and two Crossley messages from September 18, 2023. Opp. 15. Those deletions do not predate

---

[4] As established, Grange's deposition testimony leaves no doubt that the individuals were discussing the possibility of their WhatsApp messages being disclosed in discovery in this case. But, even if her testimony did not affirm this point, it is clear from the messages themselves. Frieders notes she assumed the messages would have "to be turned over if they were subpoenaed" and she and Grange discuss the use of auto-delete. Ex. A at AFA012421. This necessarily had to be regarding this litigation and not the review board because the review board, as SkyWest's internal review process, has no subpoena power.

Plaintiffs' duty to preserve evidence.

SkyWest's September 22, 2023 preservation letter is not the only trigger of Plaintiffs' duty to preserve evidence. The duty arises when litigation is reasonably anticipated, not when counsel issues a hold: "A demand letter, a request for evidence preservation, a threat of litigation, or a decision to pursue a claim will all trigger the duty to preserve evidence." *TLM Operations, LLC v. Allied Universal Risk Advisory & Consulting Servs.*, No. 2:23-cv-00788 DAK-DBP, 2025 U.S. Dist. LEXIS 194549, at *26 (D. Utah Sept. 30, 2025) (citation omitted); *see also Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007). Communicating with counsel and taking related action also support a finding that litigation is likely. *Ward v. Nesibo*, No. 4:22-cv-00054-DN-PK, 2023 U.S. Dist. LEXIS 212935, at *4 (D. Utah Nov. 29, 2023) ("Plaintiff knew—or at the very least, should have known—that litigation was imminent because Plaintiff hired counsel the day after the accident.").[5]

The record leaves no doubt Plaintiffs anticipated litigation no later than September 13, 2023, when AFA began communicating with legal counsel regarding Grange and Price's

[5] *Zbylski v. Douglas Cnty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1163 (D. Colo. 2015) ("In determining whether a party's duty to preserve has been triggered, courts evaluate facts such as the likelihood that a certain kind of incident will result in litigation; the knowledge of certain employees about threatened litigation based on their participation in the dispute; or notification received from a potential adversary.") (citing *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 748 (8th Cir. 2004)); *see also Wright v. Schick*, No. 1:18-cv-0118, 2020 U.S. Dist. LEXIS 39052, at *15 (W.D. Pa. Mar. 6, 2020) ("Prison records generated after Wright filed a grievance based upon the events of September 7, 2017, show that prison officials reviewed and relied upon the video when they denied his grievance and his appeal. Although Wright had not filed his lawsuit against the Defendants as of that time, prison personnel knew, or certainly should have known, that litigation was possible, if not probable, and that the video constituted relevant evidence. This knowledge triggered a duty to preserve the video.").

termination. Ex. AA,[6] 2025.08.11 Plaintiffs' Privilege Log, at 1. AFA's privilege log proves the September 13, 2026 conversation concerned this litigation. In the days that followed, AFA discussed their terminations further, including a discussion on September 19, 2023 of a "[d]emand letter and complaint draft" relating to the terminations of Price and Grange (*Id.* at 1-2), the same day that AFA sent SkyWest a letter on behalf of Grange and Price asking that they be reinstated (Ex. E, AFA011348). That same day, Grange also discussed with the AFA her "Termination Review Board Request." Ex. AA, 2025-08-11 Pls.' Priv. Log, at 2 (entries for Sept. 19, 2023). Price similarly asked for assistance with drafting his appeal on September 21, 2023. Ex. AA, 2025.08.11 Plaintiffs' Privilege Log, at 2.

On September 14, Grange deleted two messages in the AFA SKYWEST BASE ADVOCATE chat immediately after Gailen David wrote that "AFA Legal is dealing with this issue and it will most likely bring the entire SIA farce into the spotlight." Ex. G at AFA012865. Grange now admits that she deleted those messages following David's comment "in light of Shane [Price]'s message" (Ex. 2, Grange Decl. ¶ 12)—an admission that she deleted the messages in light of litigation and after she anticipated such litigation.

On September 15, 2023, David told AFA's Employee Assistance Program Director that "AFA Legal is dealing with the situation" of the two terminations. Ex. BB, AFA021662. That same day, AFA publicly announced that SkyWest had "illegally" fired Price and Grange in "retaliation" and that "[t]he AFA Legal Department is immediately addressing management's

---

[6] Unless otherwise indicated, Exhibits AA-ZZ refer to exhibits attached to the Declaration of Jessica Ramirez In Support of SkyWest's Reply In Support of SkyWest's Motion For Terminating Sanctions For Plaintiffs' Spoliation.

illegal actions"; and a press release the next day noted that enforcement "rests with the federal courts." Ex. X, AFA011266; Ex. Y, AFA011552. That evening, David also told the Double O chat, [redacted] Ex. CC, AFA012507 at AFA012561-62; Ex. DD, AFA023692-93. Four days later, on September 19, Grange deleted three more messages in the thread where AFA's demand letter threatening "all legal remedies" was being discussed. Ex. H at AFA012740-43; Ex. E at AFA011348.[7] A party who announces that she expects her communications to be produced, and then deletes messages in threads discussing her termination and AFA's demand letter, has supplied the inference of intent herself.

Plaintiffs' contention that SkyWest's preservation notice "necessarily took time to filter down to Grange," Opp. 15, concedes the point. Grange and Price were the people on whose behalf AFA was threatening suit. Irrespective of the preservation letter, "a threat of litigation," such as the one AFA made on behalf of Price and Grange, will "trigger the duty to preserve evidence." *TLM Operations, LLC*, 2025 U.S. Dist. LEXIS 194549, at *26.

That Grange says she did not receive formal preservation instructions until late September

---

[7] She deleted another on July 18, 2024, in a conversation about the criminal charges and about exposing confidential information through the election hack: the subject of SkyWest's counterclaims. Ex. I at AFA012297-99; Ex. 2, Grange Decl. ¶ 25. She also deleted six messages on March 21-22, 2024, in the conversation about her and Price's review board submissions. Ex. A at AFA012418-23. Plaintiffs say the Motion's March 2024 evidence cannot show intent for deletions months earlier or later. Opp. at 28. But intent is assessed on the whole record, and the pattern of deletion at each pivotal moment of the dispute is itself the evidence. *SA Int'l*, 2025 U.S. Dist. LEXIS 255419, at *22.

2023 does not help her. Nor does it help Price or the other AFA agents. By Grange's own account, she received those instructions before the Complaint was filed, yet went on to delete messages in March and July 2024 and activate disappearing messages in October 2024. Ex. 2, Grange Decl. ¶ 6; Ex. A at AFA012420-21; Ex. I at AFA012297-99; Ex. V at AFA012280.

This litigation was foreseeable no later than September 13, 2023.[8] Any other rule would let a would-be party delete harmful material (or intentionally permit the spoliation of such evidence by inaction) in the days before suing and then plead ignorance.[9]

**C. Grange's Activation of the Disappearing-Messages Setting Was Intentional.**

Plaintiffs also proffer a new excuse for Grange's use of disappearing messages to dispel

---

[8] As detailed further below, Crossley also knew she was at risk of litigation the day Price informed her he was terminated on September 13, 2023. However, even if she somehow was not on notice until September 18, when she asked if she was on the "radar" next, she was nevertheless aware of the potential for litigation by the time she deleted her message on September 18, 2023. *Supra* Part II(B).

[9] SkyWest maintains that Plaintiffs knew there was a high likelihood of litigation against SkyWest on this issue as early as February 2023. Mot. at 29. On March 9, 2023, David emailed Frieders, Price, Grange, and Crossley about "a response in the works using the info sent by AFA Legal." Ex. EE, KF000056; Ex. FF, Pls.' Privilege & Redaction Log (Oct. 31, 2025) ("Priv. Log") row 15 (logged as "Attorney-Client Communication"). The privilege log reflects a steady stream of logged attorney-client communications between David and AFA attorneys John Morse and Christian Rosas throughout the spring and summer of 2023 and into the days before the terminations. Ex. Ex. FF, Priv. Log rows 19-25 (Mar. 20-Apr. 7, 2023), 27-38 (July 21-Aug. 8, 2023), 43-59 (Sept. 2-8, 2023). It also logs redacted Double O WhatsApp and text communications among Price, Grange, Finley, Crossley, Frieders, and David during the week of the election. *Id*. rows 40-42 (Aug. 13, 16, and 17, 2023). And on August 15, 2023, the day the video was posted, [redacted] Ex. GG, at AFA023569. SkyWest does not contend that every consultation with a lawyer creates a permanent duty to preserve, but the communications here were not generic. They concerned whether it was lawful to obtain and use the very voter information that led to the terminations and to SkyWest's counterclaims. As a result, the duty to preserve likely arose earlier, but no later than September 13, 2023. The Court need not resolve the earlier date, however, because every deletion by a Plaintiff or Counterclaim Defendant at issue occurred on or after September 14, 2023.

any intent by arguing that she activated the setting "inadvertently" and enabled it in only two conversations.[10] Opp. at 25-26. Grange's feigned ignorance is unconvincing given the overwhelming evidence that she knew exactly what she was doing.[11]

*First*, activating disappearing messages is not something one does merely by accident. It requires deliberate steps: opening a specific chat, tapping the contact or chat name, selecting "Disappearing messages," choosing a timer (such as 24 hours, 7 days, or 90 days), and confirming, after which a system message appears in the chat announcing the change with the instruction "Tap to change." *See* ECF No. 194-28, Hartley Decl. ¶¶ 11-15, 18.

*Second*, Grange left the setting on in the Ekerberg chat for nearly five months, until March 3, 2025, despite being told by Price that she "should not turn on that setting" and claiming she felt "embarrassed and apologetic." Ex. V at AFA012280; Ex. 2, Grange Decl., ¶ 23.

*Third*, recently produced evidence shows that Grange turned on auto-delete in at least two separate chats on the same day, not just in her chat with Ekerberg: (i) in her chat with Price at 12:45 a.m. on October 14, 2024, Ex. 1 to Grunert Decl. at AFA029514, and (ii) in her chat with AFA employee Steve Ekerberg, Ex. V at AFA012280.

*Fourth*, Grange used the feature and admitted she did so to prevent correspondence from being used against her. In March 2024, after Frieders noted that "[t]here is a setting to automatically delete messages after x amt of time," Grange responded, "[y]es, I have set mine up to auto delete a few times." Ex. A at AFA012421. She specifically testified that [redacted]

---

[10] Plaintiffs misunderstand SkyWest's Motion. No part of SkyWest's Motion relies on an assumption that Grange was able to set up the disappearing-messages feature across all chats.

[11] It is exceptionally difficult to accept Price's "oops" excuse when she is a tech savvy individual with a degree in web design.

[redacted] Ex. B, Grange Dep. Vol. I, 301:11-302:14. Clearly, Grange knew exactly what she was doing when she enabled the disappearing-messages feature in October 2024. It was not "inadvertent," and she was not "mistaken" when she described using auto-delete in March 2024. Ex. 2, Grange Decl. ¶ 19.[12] These activations, like her deletions, occurred as material events in this dispute unfolded.

*Fifth*, Grange did not act alone. When she turned on disappearing messages in her chat with Price, the system notice appeared in Price's own account, and [redacted] Ex. HH, Price Dep. Vol. II, 420:4-421:14. Yet the setting remained on for two weeks, until October 28, 2024, and [redacted] *Id.* at 420:1-3, 422:9-25. The same notice appeared in the Ekerberg chat, where AFA's own employee let the setting run for nearly five months. Ex. V at AFA012280; ECF No. 194-28, Hartley Decl. ¶¶ 15, 20-22. And when Grange announced in March 2024 that she had set her messages "to auto delete a few times," no one in the chat, including Price, Finley, and

[12] The assertion that Price, Grange, and Ekerberg do not remember exchanging messages during the period when the disappearing-messages feature was turned on—and that SkyWest therefore cannot demonstrate harm—cannot be relied upon and misses the point. During this window, Price and Grange exchanged five WhatsApp calls, and Price conceded [redacted] Ex. HH, Price Dep. Vol. II 424:8-425:21; Ex. 1 to Grunert Decl. at AFA029515-18. Grange, meanwhile, [redacted] Ex. II, Grange Dep. Vol. II 475:13-19. And Ekerberg claims that "as far as [he] can recall, [he] had not received any messages from Tresa during the period when the setting was turned on," while also claiming that he did not open his conversation with Grange until March 3, 2025. Ex. 7, Decl. of S. Ekerberg ¶¶ 7-8. A witness who did not open the chat cannot know what disappeared from it. The only evidence that nothing was lost is the recollection of witnesses who either did not look or cannot remember, and the disappearing-messages setting ensured that no record exists to test that recollection.

AFA's Campaign Representative, objected or took any step to preserve what remained. Ex. A at AFA012421. Their silence while the spoliation occurred in front of them is part of the same record of intent. *Infra* Parts I.F, II.B.

Lastly, Plaintiffs' technical arguments about the setting miss the point. SkyWest does not dispute that the setting operates chat-by-chat and generates a system message. Opp. at 18-19, 25-27. Nor does the Motion depend on the precise mechanism Grange used before October 2024. Whether she removed messages by enabling a timer, by deleting them one at a time—as she indisputably did in the same thread the day before, Ex. A at AFA012420—or by [redacted] Ex. B, Grange Dep. Vol. I, 116:7-21, her admitted objective was the same: to ensure that her messages could not be used against her.

**D. Plaintiffs' "0.1%" Argument Confuses the Volume of Production with the Significance of What Was Lost.**

Plaintiffs repeatedly note that the identified deletions represent "less than 0.1%" of roughly 35,000 produced WhatsApp messages. Opp. 34-35. Spoliation is not measured by percentage. "[P]roduction of some evidence does not excuse destruction of other relevant evidence." *Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 736 (9th Cir. 2024). A party cannot offset the destruction of the messages it considered most damaging by producing thousands it considered harmless; selective deletion of the most damaging material is exactly what makes intentional spoliation serious.[13]

---

[13] Not only is the 0.1% argument not relevant, it is not accurate. Plaintiffs' production numbers are the combined productions of six different parties – AFA, Price, Finley, Grange, and Counterclaim Defendants David and Crossley. Thus, for example, the deleted messages are not allegedly 0.1% of Grange's production, but of the combined, and duplicative, productions of six different parties. Further, Plaintiffs' productions include significant duplications. Plaintiffs produced, as they must, duplicative WhatsApp messages from each of the custodians. Simply

Here, Grange testified that [redacted]" Ex. B, Grange Dep. Vol. I, 297:11-299:22. Her further testimony that, [redacted] *Id.* at 298:2-5, shows only discernment, not good faith. Plaintiffs' second and third claims, and SkyWest's defense to them, turn on whether Price and Grange acted as protected whistleblowers or with improper motives. Mot. 4-5, 22. Their contemporaneous statements about their intentions are therefore central evidence. Although Rule 37(e)(2) does not require a finding of prejudice once intent is found, Mot. 21, the prejudice here is real.

Furthermore, Plaintiffs' contention that SkyWest can reconstruct the deleted content from "context" and from other evidence, Opp. 25, 28, is inconsistent with their concession that no witness remembers what the messages said, Opp. 7. Surrounding messages show what the conversation was about; they do not show what Grange, Price, Finley, or David chose to remove from it. Self-serving testimony from the spoliators about what the messages "probably" said is not a substitute for the messages.

**E. Grange's Deletions Were Made with Intent to Deprive SkyWest of Access in This Litigation.**

Plaintiffs make light of Grange's deletions and admissions, characterizing those deletions as "[s]poradic" and harmless in "[c]ontext." Opp. at 27-29. But courts have found intent to deprive

because a lengthy WhatsApp message was produced multiple times does not lessen the significance of other deleted messages. The productions also include multiple documents that are irrelevant to the case – including Grange's personal vacation itinerary. While the production of these irrelevant documents is relatively harmless, it provides no basis for Plaintiffs to justify the deletion of relevant and on-point communications.

on far less than a party's sworn admission that she deleted material so it could not be "used against" her. *See, e.g.*, *Prescott v. Valdez*, No. 1:21-cv-03252-CNS-SBP, 2026 U.S. Dist. LEXIS 71691, at *46-55 (D. Colo. Mar. 5, 2026) (finding intent and bad faith where the party (1) had received a preservation notice, (2) offered explanations for the loss of text messages that shifted over time in inconsistent and self-serving ways, and (3) despite understanding the preservation requirement, took no steps to preserve the text messages and instead set in motion a process to delete them); *see id.* at *46 ("there is rarely direct evidence of intent, an intent to deprive may be found through circumstantial evidence").[14]

Plaintiffs' related argument that Grange would not have left her "bad intentions" message in place if she had meant to frustrate discovery, Opp. 24, proves nothing. Grange deleted the messages on either side of that message. Mot. 10; Ex. A at AFA012420-23. The surviving message describes her concern; the deleted messages were what she was concerned about. That one message survived does not show good faith as to the others. Nor does each Plaintiff's later participation in discovery, Opp. 22, undo deletions that were complete before any forensic collection began. Plaintiffs did not engage TransPerfect until May 2025, Opp. 5, more than a year after the March 2024 deletions.

### F. Price, Finley, and AFA Cannot Disclaim Responsibility for Grange's Deletions.

Price, Finley, and AFA cannot benefit from Grange's deletions merely because they did

[14] Nor do Plaintiffs' arguments prove that Grange did not act in bad faith. Notably, "[b]ad faith, or culpability, may not mean evil intent, but may simply signify responsibility and control." *In re New Canyonlands by Night, LLC*, 415 F. Supp. 3d 1020, 1025 (D. Utah 2019). Grange indisputably had both over her messages.

not personally press delete. Grange did not hide what she was doing or why. She told the Double O ITS TIME Agents chat, which Finley owned and in which Price and AFA's Campaign Representative participated, that she expected SkyWest to use "our WhatsApp threads against me and Shane" to prove "bad intentions," and that she had set her messages "to auto delete a few times." Ex. A at AFA012421; Ex. JJ, AFA023322. Every participant received a system notice each time a message was deleted or disappearing messages were activated. ECF No. 194-28 Hartley Decl. ¶¶ 15, 20-22. Knowing what Grange was doing and why, the other Plaintiffs kept communicating with her in the same threads. Any of them could have marked messages to be kept, turned off the setting, preserved the messages by screenshot or by forwarding them to counsel, insisted that Grange stop, or declined to keep communicating in a forum where messages were being destroyed. ECF No. 194-28 Hartley Decl. ¶ 18; Mot. 3-4, 12-13. None did. A party that knowingly continues to use a channel in which relevant evidence is being destroyed, and does nothing to preserve it, has not taken reasonable steps under Rule 37(e). *See Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591-92 (4th Cir. 2001); *Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1314 (11th Cir. 2023).

That is particularly true of Price. Grange's stated purpose was to keep the messages from being used against "me and Shane." Ex. A at AFA012421. The deletions were made for Price's benefit as much as her own, in conversations about the very appeals and terminations on which both of them now sue. Price cannot accept the benefit of that destruction and then disclaim it because he was not the one who pressed delete.

AFA is likewise bound. Gailen David and Steve Ekerberg were AFA employees who participated in the chats in their capacity as AFA organizers. Ex. 6, Decl. of Gailen David ¶ 2; Ex.

V at AFA012280. The flight attendants in the chats were organizing on AFA's behalf and at its direction, and they were counseled throughout by AFA's in-house lawyers. Ex. AA, Priv. Log rows 19-25, 27-38, 43-59. David led the effort: he told participants when they could post and when they could not ("I am currently working with legal on some parts of the letter . . . . Please don't post yet."), Ex. CC at AFA012561-62, and instructed supporters to [redacted] Ex. KK, AFA022837 at AFA022859. Grange's deletions were not hers alone; they occurred in AFA's organizing chats, administered by Plaintiffs and AFA, by individuals acting on AFA's behalf. *Consolidation Coal Co. v. United Mine Workers of Am., Loc. 1261*, 725 F.2d 1258, 1263 (10th Cir. 1984) (explaining a union is liable for conduct it "instigated, supported, ratified, or encouraged."); *see also Goodman v. Praxair Servs.,* No. MJG-04-391, 632 F. Supp. 2d 494, 522 (D. Md. 2009) ("A party may be held responsible for the spoliation of relevant evidence done by its agents."). AFA cannot direct the conversation and then disown what happened to it.

### G. SkyWest's Concern That Additional Information Was Deleted Is Grounded in the Record and Is Not Speculative.

A party willing to delete individual messages, enable auto-delete, and discuss deletion as a strategy provides the Court with ample reason to conclude that additional material was lost. Here, SkyWest's concern is grounded in Grange's [redacted] Ex. B, Grange Dep. Vol. I, 296:1-5, 303:14-304:2, 307:5-23; Ex. II, Grange Dep. Vol. II, 466:9-467:13, 477:6-478:5. She has [redacted] Ex. II, Grange Dep. Vol. II, 475:13-19. And Plaintiffs concede that "[t]he relevant witnesses do not recall precisely what the deleted messages said." Opp. at 7. A party who does not

know what she deleted, how much, or why, cannot credibly assure the Court that nothing else was lost.

Grange's August 15, 2023 text exchange with Debbie Burt illustrates the concern. It contains a message from Grange stating: [redacted] Ex. J at BURT000208. This message is absent from Grange's own production of the same thread. Ex. K at AFA013659.[15] Plaintiffs assert that the thread was a conventional text conversation rather than a WhatsApp chat and argue on that basis that there is no evidence of missing conversations. Opp. at 18. However, that distinction strengthens SkyWest's point rather than weakening it. It confirms that text messages can go missing from Plaintiffs' productions without any visible notation.

Discovery since the Motion was filed confirms the concern and responds directly to Plaintiffs' contention that it is speculative. Opp. at 18-19. Because these materials were produced or developed only after SkyWest filed its Motion, SkyWest could not have addressed them earlier. SkyWest requested Plaintiffs' WhatsApp communications in discovery well before the Motion was filed (Ex. LL, 2024-09-24 SkyWest's First Set of Disc. Req. to Pls.), yet Plaintiffs produced the materials discussed below only afterward, some of them, by Plaintiffs' own account, after having been "inadvertently withheld" from earlier productions. Grunert Decl. ¶ 9. And Plaintiffs themselves placed the reconvened deposition testimony before the Court, Opp. 22-26 (citing Exs.

[15] Plaintiffs also assert there is no evidence the Burt message was deleted purposefully, rather than lost through a technical error. Opp. at 17-18. Given the overwhelming evidence that Grange was willing to delete messages, and in fact did so, that theory is implausible. Grange's testimony that she did not delete it bears little credibility given that she purports not to remember what or when she deleted certain messages. Ex. 2, Grange Decl., ¶¶ 10-11.

2-3 to Grunert Decl.), so SkyWest is entitled to respond to it.

*First*, documents produced on the eve of Grange's reconvened deposition revealed additional messages that Grange deleted in her one-on-one chat with Price. Ex. II, Grange Dep. Vol. II, 466:5-467:13, 477:3-478:5. Grange could not say what any of them said, why she deleted them, or why they had not been produced earlier. *Id.* at 466:9-25, 477:19-478:17. Price, whose account the messages came from, fared no better: [redacted] Ex. HH, Price Dep. Vol. II, 414:3-415:8. Each new production has revealed further gaps, and nothing in the record suggests the gaps end where Plaintiffs' productions happen to stop.

*Second*, since SkyWest filed the Motion, Plaintiffs have produced additional documents with additional deleted messages. This includes at least two deleted by David,[16] seven deleted by Finley,[17] and two deleted by Grange.[18] SkyWest was right to be, and continues to be, concerned that additional information was deleted.

**H. Deletions by Non-Parties Support Spoliation Findings Against Plaintiffs.**

Plaintiffs devote several pages to the point that non-parties have no independent duty to

[16] *See* Ex. MM, AFA033262 ([redacted], and Ex. NN, AFA036000 at AFA036001 (deleting a message sent on April 4, 2024).

[17] *See* Ex. OO, AFA030281 at AFA030286-87 ([redacted]; Ex. PP, AFA30990 at AFA30991 [redacted]; Ex. QQ, AFA031238 at AFA031241 [redacted]; Ex. RR, AFA031939 ([redacted]; Ex. SS, AFA032599 [redacted], and Ex. TT, AFA032972 at AFA32978 [redacted].

[18] *See* Ex. UU, AFA031213 at AFA031216 [redacted]; Ex. VV, AFA032907 at AFA0032909 [redacted]).

preserve. Opp. 13-15. SkyWest does not seek sanctions against non-parties. The non-party deletions matter for a different reason: they show that deletion was common and visible in the chats Plaintiffs used to organize the conduct at issue, and that Plaintiffs, including AFA, whose employees Gailen David and Steve Ekerberg participated in the threads, did nothing about it. Mot. 12-15, 25-26; Hartley Decl. ¶¶ 15, 20-22. Rule 37(e) asks whether the information was lost "because a party failed to take reasonable steps to preserve it." A party that knows messages relevant to its claims are being deleted in real time, and keeps using that channel without preserving them, has not taken reasonable steps.[19]

Here, Plaintiffs were regular users of the chats containing deleted messages, and they were not passive bystanders to deletion; they talked about it. When Grange announced on September 15, 2023 that she had "gone dark," Frieders replied "[s]mart" and asked, "Would they not have access to this as well?" and Crossley answered, "Yes, but it would show that she wasn't engaging and spreading gossip." Ex. CC, AFA012507 at AFA012562. Minutes later, David deleted a message. *Id.* In January 2025, while discussing the criminal charges against Price and Grange in the OOIT Sidebar Chat, participants, including Price, discussed whether a message should be

[19] *See, e.g.*, *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591-92 (4th Cir. 2001) (although it was "true that [the plaintiff] did not own the vehicle, nor did he even control it in a legal sense after the accident because the vehicle belonged to his landlady's husband," and he did not personally destroy the vehicle, "the spoliation of evidence was imputable to Silvestri himself" because he knew the vehicle would be relevant to future litigation); *Regan v. Mountain States Water Servs.,* No. 21-CV-44-ABJ, 2023 U.S. Dist. LEXIS 254453, at *4-5 (D. Wyo. Jan. 4, 2023) (finding an insurance company's destruction of a vehicle imputable to the plaintiff where, although he did not own the van, "[c]onsidering the reality of Plaintiff's living situation, he had the ability to delay the disposition of the van. He may or may not have been able to call the insurance company himself to stop the disposition, however, he could have at least spoken to [the owner]. Nothing in the filings indicate there was any attempt to do so.").

deleted, and two messages were in fact deleted. Ex. Q at AFA012892-93 ("would you prefer this delete and kept off of a group?" S. Price: "I'm just giving facts about what has and hasn't happened. . . . Idk what are your thoughts?"); *id.* at AFA012895. Even crediting Price's account that the offer was made out of respect for privacy, Price Decl. ¶ 31, the exchange shows that deletion was an accepted practice in these chats more than a year after this litigation began.[20]

Given this awareness, Plaintiffs were obligated to take reasonable steps to ask participants not to delete, to discourage deletion, and to preserve what was being posted.[21] These are the most basic expectations[22] under Rule 37(e), not "heroic efforts," as Plaintiffs characterize them. Opp. at 14.[23] Yet Plaintiffs did the opposite. They agreed with, encouraged, and at the very least stayed silent when others deleted potentially relevant communications.[24]

---

[20] Plaintiffs caricature SkyWest's position as a demand for "constant screenshots." Opp. 14-15. SkyWest has asked for nothing of the kind. The reasonable steps here were simple: stop deleting; turn off disappearing messages, or decline to keep communicating in a chat where they had been turned on; use the "keep" function; and tell counsel. Mot. 26; Hartley Decl. ¶ 18.

[21] *Silvestri*, 271 F.3d at 591-92*; Regan v. Mountain States Water Servs.*, No. 21-CV-44-ABJ, 2023 U.S. Dist. LEXIS 254453, at *4-5 (D. Wyo. 2023).

[22] *Philips Elecs. N. Am. Corp. v. BC Tech., Inc.*, 773 F. Supp. 2d 1149, 1195 (D. Utah 2010) (the duty to preserve "means action must be taken to preserve evidence"); *Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1314 (11th Cir. 2023) ("failures to act can be just as harmful as affirmative acts of destruction").

[23] Plaintiffs' reliance on *Convolve, Inc. v. Compaq Comput. Corp.*, 223 F.R.D. 162, 177 (S.D.N.Y. 2004), actually supports SkyWest's position. The "heroic efforts" there concerned preservation of complex engineering systems data created by a separate engineer that the court labeled "ephemeral" and that "exists only until the tuning engineer makes the next adjustment." *Id.* The court differentiated this information from communications such as emails, "which have some semi-permanent existence. They are transmitted to others, stored in files, and are recoverable as active data until deleted, either deliberately or as a consequence of automatic purging." *Id.* WhatsApp messages fall squarely in this latter category, not the former.

[24] Plaintiffs cannot distance themselves from the chats. These were AFA's organizing chats administered by Plaintiffs and AFA. [redacted] *E.g.*, Ex. JJ, AFA023322. Crossley served as an administrator. Ex. N at

## II. THE RECORD ESTABLISHES INTENT TO DEPRIVE UNDER RULE 37(E)(2).

### A. SkyWest Need Only Show Intent by a Preponderance of the Evidence, Which May Be Circumstantial.

SkyWest "must establish the requisite elements of Rule 37(e), including whether [the spoliating party] acted with the intent to deprive [the movant] of the information, by a preponderance of the evidence." *SA Int'l*, 2025 U.S. Dist. LEXIS 255419, at *13 (citation omitted) (cleaned up). That standard requires only that the fact finder "believe that the existence of a fact is more probable than its nonexistence." *Id.* (citations omitted) (cleaned up). Because there is rarely direct evidence of intent, it "can be proved indirectly"—as in, a party does not need to find a "smoking gun" to prove intent to deprive. *Sky Jet M.G. Inc. v. VSE Aviation Servs., LLC*, No. 23-2210-HLT-ADM, 2025 U.S. Dist. LEXIS 111834, at *21 (D. Kan. June 12, 2025) (citing *Auer v. City of Minot*, 896 F.3d 854, 858 (8th Cir. 2018)). The Court "has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witness in a particular case, and other factors." *Paisley Park Enters. v. Boxill*, No. 17-cv-1212 (WMW/TNL), 330 F.R.D. 226, 236 (D. Minn. 2019); *N. Am. Sci. Assocs., LLC v. Conforti*, No. 24-cv-287 (JWB/ECW), 2024 U.S. Dist. LEXIS 215814, at *50-51 (D. Minn. Nov. 27, 2024) (quoting same).

### B. Each Plaintiff Knew of Its Preservation Obligations, Yet Deleted Messages and Tolerated Deletion by Others.

Rule 37(e)(2) asks whether "the party" acted with intent to deprive, and the record supports that finding as to each Plaintiff on its own conduct, not merely by imputation. Intent may be

---

AFA015649. And David, AFA's Campaign Representative, participated in every relevant chat. *See, e.g.*, Ex. A at AFA012418. Plaintiffs controlled these forums and bear responsibility for what was lost in them.

inferred where a party "is on notice that the evidence is potentially relevant and fails to take measures to preserve relevant evidence." *SA Int'l*, 2025 U.S. Dist. LEXIS 255419, at *21-22. Notice in this sense does not require proof that a party understood the legal contours of its preservation duty. The duty attaches when a party knows or should know that litigation is reasonably anticipated, *TLM Operations*, 2025 U.S. Dist. LEXIS 194549, at *26; *Burlington N.*, 505 F.3d at 1032, and it applies regardless of a party's "prior litigation experience," *SA Int'l*, 2025 U.S. Dist. LEXIS 255419, at *16. Plaintiffs themselves concede the test is objective. Opp. 16. A litigant, particularly a plaintiff who chose to bring suit, cannot excuse the destruction of evidence that may be used against her by professing not to know she was required to keep it. In any event, each Plaintiff was on notice:[25]

- Grange was put on notice in September 2023 before she and her counsel provided written demands to SkyWest. Ex. AA, 2025.08.11 Plaintiffs' Privilege Log, at 1-2.
- Price says he has been "generally aware of the document-retention obligations related to this litigation since September 2023." Ex. 3, Price Decl. ¶ 14.
- Crossley says counsel instructed her not to delete anything about the campaign in October 2023. Crossley Decl. ¶ 9.
- Finley owned the Double O ITS TIME Agents chat, Ex. JJ, AFA023322, was a named Plaintiff when the Complaint was filed on October 11, 2023, and deleted his own message on April 2, 2024, nearly six months later. Ex. M at AFA012441; Finley Decl. ¶ 9.
- AFA's Campaign Representative Gailen David was a party to the attorney-client communications on September 19, 2023 in which the demand letter and draft complaint were prepared. Ex. AA, 2025.08.11 Plaintiffs' Privilege Log, at 2. He was also the one who was immediately preparing for battle by engaging AFA counsel and told Grange and Price on September 14, 2023 to stand by because "AFA legal" was coming to the rescue. Ex. G at AFA012865.

Plaintiffs were aware of what was happening around them, yet took no steps when deletions occurred. *See Prescott*, 2026 U.S. Dist. LEXIS 71691, at *46-55 (finding intent where party

[25] Even Frieders, a non-party, understood that "our WhatsApp chats were likely to be subject to discovery." Frieders Decl. ¶ 10.

understood the preservation requirement, took no steps to preserve, and offered shifting explanations); *Skanska*, 75 F.4th at 1314. Every participant received the system notices when messages were deleted or disappearing messages were activated. ECF No. 194-28, Hartley Decl. ¶¶ 15, 20-22. Price and Finley deleted messages of their own. Ex. L at AFA012577; Ex. M at AFA012441. Crossley, as an administrator, deleted another participant's message and then her own. Ex. N at AFA015649-50. And AFA's Campaign Representative, Counterclaim Defendant Gailen David,[26] [redacted] Ex. DD, AFA023669 at AFA023672; AFA023693 (deleting a message minutes after Grange said she was "going dark"); Ex. WW, AFA023722 at AFA023741; Ex. XX, AFA015127 at AFA015138. No one objected, even when deletion was expressly discussed. *Supra* Part I.H.

Crossley's explanation for her deletions illustrates the problem. She claims the deleted message concerned a "private report shared in a chat with more than 60 participants" and that she deleted it and her own response "because they were better suited to more private conversations." Opp. at 31 (citing Ex. 5, Crossley Decl. ¶ 14). But the deletion occurred on September 18, 2023, days after Grange's and Price's terminations, and she cannot say with whom she had that "private conversation" or provide any additional details. That same day, she messaged Ivy Murphy about

[26] His declaration that AFA "never condoned, promoted, encouraged, or tolerated any destruction," as characterized by Plaintiffs, Opp. at 29, cannot be squared with his own deletions or his "edit" instruction. More specifically, in a May 31, 2024 message to the Visibility Hotline – SkyWest AFA WhatsApp chat, [redacted] Ex. KK, AFA022837 at AFA022859 ("Do me a favor and edit any conversations where you mention making a recording."). In other words, David had no issue with AFA supporters deleting information that could be seen as harmful to AFA's organizing efforts.

[redacted] Ex. YY, AFA023832 at AFA023844 (emphasis added). The timing supports the inference that Crossley, [redacted] was conscious that her communications about the terminations would be scrutinized when she deleted both her own message and another participant's.

More fundamentally, even if credited, Crossley's explanation would not excuse her. A party who decides a relevant message should not have been shared with a broad audience may move the conversation elsewhere, but she may not destroy the message. If privacy was the concern, she could have preserved the messages, by screenshot or by forwarding them to counsel, before removing them from the group. ECF No. 194-28 Hartley Decl. ¶ 18. The duty to preserve does not yield to a preference for a smaller audience, and destroying relevant evidence for a benign reason is still destroying relevant evidence. The same is true of every after-the-fact explanation Plaintiffs offer: whether a message was mistyped, posted in the wrong chat, or thought redundant, the obligation was to keep it.

### C. Viewed Together, the Deletions Reveal a Deliberate Pattern Employed by Plaintiffs Collectively.

Plaintiffs ask the Court to evaluate each deletion in isolation and to accept a benign, after-the-fact explanation for each: a mistyped message, a post in the wrong chat, a screenshot that made a message redundant, an incorrect link, a "pocket delete," a message better suited to a private conversation. Opp. 22, 28, 30-31. None of those explanations comes from a witness who remembers the deleted content. Grange testified [redacted] Ex. B, Grange Dep. Vol. I, 297:1-5, 302:15-305:2. [redacted]

[redacted] Ex. HH, Price Dep. Vol. II, 520:3-13. Finley does not remember the precise content of his deleted message, Opp. 31, and Crossley does not "recall the precise content" of hers, Ex. 5, Crossley Decl. ¶ 14. The Opposition acknowledges that "[t]he relevant witnesses do not recall precisely what the deleted messages said." Opp. 7. Explanations reconstructed from "context" by witnesses who cannot recall the content are speculation, and they are speculation by the parties responsible for the loss.

Considered together, as the Court must consider them, the deletions follow a pattern. Grange deleted messages the day after her termination, in a thread discussing the SIA website "exposure" and immediately after a message stating that "AFA Legal is dealing with this issue," Ex. G at AFA012864-65; on the day AFA sent its demand letter, Ex. H at AFA012740-44; on the eve of her review board appeal, Ex. A at AFA012418-21; and in July 2024, in a conversation about potential criminal exposure from the election hack, Ex. I at AFA012297-99. Mot. 9-11. In October 2024, while this case was pending, she activated disappearing messages in her chat with AFA employee Steve Ekerberg, which remained on until March 3, 2025, Ex. V at AFA012280, and, Plaintiffs now disclose, in her chat with co-Plaintiff Price, Opp. 7, 25. Grange's "I did not realize it was on" explanation for the Price chat, Opp. 26, does not address why she turned it on in two separate chats on the same day. Nor was Grange alone. Crossley deleted another participant's message and her own on September 18, 2023, days after the terminations. Ex. N at AFA015649-50. David deleted messages on September 15, 16, and 22, 2023, at the height of the post-termination strategizing. *Supra* Part II.B. Finley deleted a message on April 2, 2024, during a debate over whether SIA is a legitimate union, the premise of Plaintiffs' first claim. Ex. M at

AFA012441. And Price deleted a message on August 19, 2024, immediately after a participant complained that SkyWest was "[s]till lying about 'non-public' and 'hacking,'" the subject of SkyWest's counterclaims. Ex. L at AFA012577; Ex. HH, Price Dep. Vol. II, 518:20-519:8.

Every form of circumstantial evidence courts rely on is present here. *SA Int'l*, 2025 U.S. Dist. LEXIS 255419, at *21-22; *Prescott*, 2026 U.S. Dist. LEXIS 71691, at *46-47. Participants discussed how auto-delete works; Grange contemporaneously admitted using it; [redacted] Grange feared the messages would be used against her; Frieders knew they could be subpoenaed; no one objected to the deletions; and the deletions consistently occurred at pivotal moments. Ex. A at AFA012421; Ex. CC, AFA012507 at AFA012562; Ex. KK, AFA022837 at AFA022859.

### D. Plaintiffs' Authorities Involved Negligence, Not Admitted Intent.

Plaintiffs' authorities underscore the point. Opp. at 11, 32-34. SkyWest does not ask the Court to infer a guilty conscience "simply because evidence no longer exists." In *Lakey v. Bryant*, 181 F.4th 1013, 1037 (10th Cir. 2026), a sheriff discarded a phone without backing it up, and the district court credited his testimony that he had merely been negligent. That case did not involve a sworn admission that evidence was destroyed so it could not be used against the spoliator, contemporaneous discussion of auto-delete or subpoenas, an instruction to "edit" conversations, or targeted deletions at pivotal moments followed by shifting explanations. This record contains all of them.

### E. The *Ehrenhaus* Factors Do Not Govern, and Would Favor Dismissal in Any Event.

Plaintiffs cite the *Ehrenhaus* factors as the relevant standard on intent, but as SkyWest explained in its Motion, the *Ehrenhaus* factors no longer govern after Rule 37(e) was amended in

2015 to provide the exclusive framework for remedying spoliation of ESI. Mot. at 37-38 n.12. Contrary to Plaintiffs' claim, the language in *Emuveyan* is clear: "*Except with regard to destruction of ESI, which is governed by Rule 37(e),* the court applies the five factors enumerated in *Ehrenhaus* to determine whether dismissal is appropriate." *Emuveyan v. Ewing,* No. 2:19-cv-00616, 2022 U.S. Dist. LEXIS 82443, at *5 (D. Utah May 5, 2022) (emphasis added); *see also* Opp. at 21 n.8.

Plaintiffs further ignore the language of the advisory committee, which explains that Rule 37(e):

> [A]uthorizes and specifies measures a court may employ if information that should have been preserved is lost, and **specifies the findings necessary to justify these measures**. It therefore forecloses reliance on inherent authority or state law to determine when certain measures should be used.

Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment (emphasis added).

In other words, Rule 37(e) "specifies" the standard, and "[s]ubdivision (e)(2) does not include a requirement that the court find prejudice to the party deprived of the information." Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment; *accord SA Int'l*, 2025 U.S. Dist. LEXIS 255419, at *20. Applying the *Ehrenhaus* factors as a prejudice requirement would therefore run afoul of Rule 37(e)(2)'s plain language.

But even if the Court considers the *Ehrenhaus* factors, as Plaintiffs urge, Opp. at 20-21 & n.8, each favors dismissal. *Actual prejudice*: the deleted messages are Plaintiffs' own unguarded statements about motive and intent, the central question on both the claims and the counterclaims, and Plaintiffs' retained messages cannot substitute for the ones they chose to destroy. *Infra* Part IV. *Interference with the judicial process*: deletion and auto-delete at each pivotal moment, followed by shifting sworn explanations, has already required a reconvened deposition and months of motion practice. *Culpability*: Grange admitted she acted so her messages would not be "used

against" her. *Warning*: no warning was needed where [redacted] Ex. II, Grange Dep. Vol. II, 474. And *efficacy of lesser sanctions*: an adverse inference cannot recreate the content of admissions only Plaintiffs saw. *Infra* Part IV.

SkyWest has proven that Plaintiffs acted with intent to deprive SkyWest of the use of the deleted information to defend against Plaintiffs' claims and prosecute its counterclaims. *See supra* Part I; *infra* Parts III-IV.

## III. SKYWEST OBJECTS TO PLAINTIFFS' SUPPORTING DECLARATIONS, WHICH SHOULD BE GIVEN NO WEIGHT BECAUSE PRICE'S AND GRANGE'S DECLARATIONS ARE INCONSISTENT WITH THEIR PRIOR TESTIMONY AND GAILEN DAVID'S AND ATTORNEY GRUNERT'S DECLARATIONS ARE INCONSISTENT WITH THE RECORD EVIDENCE.

Plaintiffs' account depends on Grange's declaration and on testimony elicited by her own counsel at her reconvened deposition after this Motion was filed. *See* Opp. 22-24 (citing Ex. 2 Grange Decl. ¶¶ 8, 16-18; Ex. 2 to Grunert Decl. at 474, 478, 613). The declaration states that Grange "did not, at that point, appreciate that her WhatsApp messages would be subject to discovery." Opp. 24 (citing Ex. 2 Grange Decl. ¶ 18). That is the opposite of what she said under SkyWest's questioning: [redacted] Ex. B, Grange Dep. Vol. I, 299:17-300:16. A party cannot defeat a sanctions motion by submitting a declaration that contradicts her prior sworn testimony without explaining the contradiction. *See Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986); *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 973 (10th Cir. 2001). The Opposition offers no explanation other than that the earlier testimony was unhelpful.

Here, Grange's account of her auto-delete use has shifted repeatedly. In March 2024, she

wrote that she had set her messages "to auto delete a few times," and at her first deposition she [redacted] Ex. A at AFA012421; Ex. B, Grange Dep. Vol. I, 301:18-302:14. Earlier in the same deposition, however, she testified that [redacted] Ex. B, Grange Dep. Vol. I at 116:9-21, 121:7-23. Her declaration now says she was "mistaken" in March 2024, "had never actually used the setting as of March 2024," and first activated it, inadvertently, on October 14, 2024. Ex. 2, Grange Decl. ¶¶ 19-21. Of these three accounts, only the contemporaneous one was made without a litigation motive to shade it.

Likewise, at her deposition Grange repeatedly testified [redacted] *Supra* Part I.G. She could not remember [redacted] Ex. B, Grange Dep. Vol. I, 310:17-312:1. Her declaration, written "after refreshing [her] recollection," now supplies explanation after explanation: the messages were redundant to Price's; she posted in the wrong chat; she habitually deleted repetitive messages; and she and Ekerberg exchanged no messages during the relevant window. Ex. 2 Grange Decl. ¶¶ 9, 22, 25.

At his reconvened deposition, Price said [redacted] Ex. 3 to Grunert Decl., Ex. HH, Price Dep. Vol. II, 524:6-20. As for his own deletion, [redacted] Ex. HH, Price Dep. Vol. II, 521:3-11. But now in his declaration he speculates that he "may have accidentally sent an incorrect website link" and is

"certain" the message did not contain anything that could be construed as "an agreement with SkyWest and SIA's characterization of [his] conduct regarding the August 2023 SIA election as hacking." Ex. 3, Price Decl., at ¶ 25.

"[C]ourts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue." *Franks*, 796 F.2d at 1237. Courts consider whether "(1) the affiant was cross-examined during his earlier testimony; (2) the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain." *Ralston*, 275 F.3d at 973 (quoting *Rios v. Bigler*, 67 F.3d 1543, 1551 (10th Cir. 1995)). Timing is also relevant. *Id.* (disregarding declaration that came into existence "*only after*" counsel narrowed the case). Even where not disregarded, self-serving declarations receive little weight. *Middleton v. Stephenson*, No. 2:11-CV-313 TS, 2012 U.S. Dist. LEXIS 83142, at *11 (D. Utah 2012) (citing *Bair v. Peck*, 738 F. Supp. 1354, 1356 (D. Kan. 1990) (citing *Freeman v. Nw. Acceptance Corp.*, 754 F.2d 553, 556 (5th Cir. 1985))) ("objective indicia of intent are accorded far more weight than a party's self-serving statements of intent"); *see also Prescott v. Valdez*, No. 1:21-cv-03252-CNS-SBP, 2026 U.S. Dist. LEXIS 67946, at *6, *10-11 (D. Colo. Mar. 30, 2026) (considering "the testimony, status reports, and evidence—including [the spoliating party's] 'inconsistent and self-serving' explanations offered over the years to explain when he lost access to the messages at issue" before adopting the recommendation of an adverse inference, and noting that the magistrate judge considered "additional evidence beyond just [the defendant's] testimony at the evidentiary hearing, including the statements [the defendant] himself made to other Defendants leading up to and during the course of litigation," and "observ[ed] that [the

defendant's] 'account shifted' in the explanations he offered").

That is especially so on a Rule 37(e) motion, where the Court itself weighs credibility. *Conforti*, 2024 U.S. Dist. LEXIS 215814, at *50-51 ("[B]ecause intent 'rarely is proved by direct evidence,' a court imposing spoliation sanctions 'has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witness in a particular case, and other factors.'") (citing *Kelley as Tr. of BMO Litig. Tr. v. BMO Harris Bank N.A.*, 657 B.R. 475, 485 (D. Minn. 2022) (quoting *Morris v. Union Pac. R.R.*, 373 F.3d 896, 901 (8th Cir. 2004))).

In addition, Gailen David's and Attorney Grunert's declarations are inconsistent with record evidence and should be given no weight. David testified in his declaration that he has "never seen or heard anything that would suggest any of the current or former SkyWest Flight Attendants or anyone else involved in the AFA organizing campaign at SkyWest [intentionally deleted messages for the purposes of depriving SkyWest of evidence]." Ex. 6, David Decl. ¶ 5. And further that "AFA has not condoned, promoted, encouraged, or tolerated any destruction of messages that were pertinent to this litigation. To the contrary, AFA has repeatedly communicated the need to preserve information related to this lawsuit." *Id.* at ¶ 8. But this cannot be squared with David's [redacted] Ex. KK, AFA022837 at AFA022859. Nor can it be squared with David's own repeated deletion of messages. *See, e.g.*, Ex. CC, AFA012507 at AFA012562

Attorney Grunert's declaration is also improper and should not be afforded any weight [redacted] owever, Attorney Grunert's statement is

directly contradicted by the record evidence. On September 19, 2023, John Morse, AFA in-house counsel, and Jeff Bartos, Plaintiffs' outside counsel, emailed regarding a "complaint draft." Ex. AA, 2025.08.11 Plaintiffs' Privilege Log, at 2. Notably, this email exchange of a draft complaint was sent *prior to* SkyWest's September 22 response, directly contradicting Attorney Grunert's testimony that the Plaintiffs anticipated litigation *after* receiving SkyWest's response.

SkyWest objects to Plaintiffs' supporting declarations, which should be given no weight.

## IV. NO LESSER SANCTION WOULD BE ADEQUATE.

Plaintiffs' theory of the case is that Price and Grange were wrongfully and retaliatorily terminated for protected union activity. SkyWest's defense is that they engaged in misconduct, accessing voter codes and disclosing confidential employee data they knew to be confidential, that warranted termination, and that same misconduct is the basis of SkyWest's counterclaims for breach of confidentiality. Countercl. ¶¶ 46-55; Mot. at 5-7. As detailed in SkyWest's Motion, the deleted messages go to motive and intent, which are at the core of both the claims and the counterclaims. Grange herself described the messages as what could be used "to prove we had any bad intentions." Ex. A at AFA012421. When the spoliated evidence goes to the dispositive question, terminating sanctions fit the wrong. *See Philips Elecs.*, 773 F. Supp. 2d at 1212-13 ("One who anticipates that compliance with discovery rules and the resulting production of damning evidence will produce an adverse judgment, will not likely be deterred from destroying that decisive evidence by any sanction less than the adverse judgment [it] is tempted to thus evade." (citation omitted)).

The prejudice is not limited to the retaliation claims. Plaintiffs' first and third claims, which assert under the Railway Labor Act that SIA is a SkyWest-dominated sham and that SkyWest

failed to provide binding arbitration, turn on what the organizers said and believed about SIA, its elections, and its appeals and other internal processes, which are the very subjects of the threads in which messages were deleted. Finley deleted a message during a debate over whether to describe SIA as a real union that is badly run or as not a union at all. Ex. M at AFA012441; Opp. 31. Grange deleted messages immediately after Price wrote that "AFA Legal is dealing with this issue and it will most likely bring the entire SIA farce into the spotlight." Ex. G at AFA012865. Price deleted a message amid discussion of SIA's alleged collusion with SkyWest. Ex. L at AFA012577-79. Plaintiffs' attacks on the adequacy of SIA's elections and on a review board process they say lacks any neutral appeal likewise depend on the organizers' contemporaneous statements about the August 2023 election and the March 2024 appeals, precisely the moments at which messages vanished. Ex. A at AFA012418-23; Ex. H at AFA012740-44. And SkyWest's counterclaims depend on what Plaintiffs knew about the confidentiality of the voter information and what they intended to do with it, the subject of the July and August 2024 threads. Ex. I at AFA012297-99; Ex. L at AFA012577. Because no one can say what the deleted messages said, SkyWest cannot know whether they contained admissions that would defeat Plaintiffs' characterization of SIA, their whistleblower narrative, or their defenses to the counterclaims, and that uncertainty is itself the product of Plaintiffs' conduct.

Plaintiffs' second claim, which asserts under the Railway Labor Act that Price and Grange were wrongfully terminated due to anti-union animus designed to interfere with the AFA, Price, and Grange's unionizing efforts, turns on the reason for terminating Price and Grange, which SkyWest has maintained was due to Plaintiffs' unlawful access and download of confidential information. Yet Plaintiffs deleted messages directly speaking to their actions and "bad

intentions," which they hoped to conceal from SkyWest. In other words, Plaintiffs' deletions would likely show the extent of their unlawful conduct. Plaintiffs further argue that SkyWest "argued for no lesser sanction" and that any lesser sanction should be deemed waived. Opp. 34 & n.12. That misreads both the Motion and the rule. The Motion addressed lesser sanctions directly, explaining why an adverse-inference instruction or monetary sanctions would be inadequate and analyzing the efficacy of lesser sanctions as the fifth *Ehrenhaus* factor. Mot. 36-38 & n.12. More fundamentally, once the Court finds intent to deprive, Rule 37(e)(2) authorizes it to "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2). Choosing among those remedies is the Court's decision. It does not depend on which remedy the movant listed first, and a movant does not forfeit lesser remedies by seeking dismissal.

Finally, Plaintiffs accuse SkyWest, without any evidence, of filing this Motion to "evade" its own discovery responsibilities. That accusation is a distraction: SkyWest has diligently produced relevant documents, has not deleted evidence, and has not made sworn admissions that it destroyed material to prevent it from being "used against" it. Terminating sanctions are necessary.[27]

---

[27] Plaintiffs also argue briefly, in a footnote, that SkyWest waives any right to fees if the Court finds spoliation but declines to award terminating sanctions, because SkyWest sought only terminating sanctions. SkyWest's Motion is clear: it seeks attorneys' fees regardless of whether terminating sanctions are awarded. Mot. at 38-39. Plaintiffs' conduct amounts to spoliation and has caused SkyWest to incur substantial attorneys' fees and costs. Plaintiffs' contrary suggestion is unsupported by law; neither of the cases they cite addresses attorneys' fees.

**CONCLUSION**

For the foregoing reasons, and those stated in the Motion, the Court should grant SkyWest's Motion; dismiss Plaintiffs' claims against SkyWest with prejudice and enter default judgment on SkyWest's counterclaims; and award SkyWest its reasonable attorneys' fees and costs.

DATED this 30th day of October, 2026.

HOLLAND & HART LLP

*/s/ Tyson C. Horrocks*
Gregory M. Saylin
Tyson C. Horrocks
Emily T. Howe
Jessica A. Ramirez
*Attorneys for Defendant SkyWest Airlines, Inc.*

**CERTIFICATION OF WORD COUNT**

Pursuant to DUCivR 7-1(a)(6)(C), I, Tyson C. Horrocks, certify that this Reply contains 11,323 words and complies with DUCivR 7-1(a)(4).

*/s/ Tyson C. Horrocks*